UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Eniola Famuyide, | Civil No. 23-1127 (DWF/ECW) |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER |
| Chipotle Mexican Grill, Inc., and Chipotle Services, LLC, | |
| Defendants. | |

_____

Melissa Hodge, Esq., and Pamela Abbate-Dattilo, Esq., Fredrikson & Byron, P.A., counsel for Plaintiff.

Carli Pearson, Esq., Tina Syring-Petrocchi, Esq., Lewis Brisbois Bisgaard & Smith LLP; Elizabeth Bulat Turner, Esq., Matthew D. Treco, Esq., Martenson Hasbrouck & Simon LLP, counsel for Defendants.

_____

## INTRODUCTION

This matter is before the Court on Defendants Chipotle Mexican Grill, Inc., and Chipotle Services, LLC's (collectively, "Chipotle") motion to compel arbitration. (Doc. No. 7.) Plaintiff Eniola Famuyide opposes the motion. (Doc. Nos. 24, 35.) For the reasons set forth below, the Court denies Chipotle's motion.

## BACKGROUND

Famuyide alleges that, while working at Chipotle, she was sexually assaulted by another employee, Lionell Bailey. (Doc. No. 1 ("Compl.") ¶ 1.) In November 2021, Bailey coerced Famuyide into the men's bathroom and repeatedly raped her. (*Id.* ¶¶ 36-

39.) Bailey only stopped the assault "when he noticed a significant amount of blood coming from Famuyide." (*Id.* ¶ 39.)

Prior to the assault, Famuyide "dealt with repeated instances of sexual harassment" by Bailey. (*Id.* ¶ 22.) During work hours, Bailey asked Famuyide "how old she was, if she had a boyfriend, if she wanted to come to the hotel he was staying in, and if she wanted to have sex with him." (*Id.* ¶ 24.) Famuyide alleges that Chipotle managers observed this harassment and failed to intervene. (*Id.* ¶ 26.)

Following the assault, Famuyide made a report to Chipotle's Kitchen Manager and Store Manager. (*Id.* ¶¶ 44-45.) She then went to the hospital, and "nursing staff informed [her] that she had sustained injuries to her vagina and anus as a result of the assault." (*Id.* ¶ 46.) Shortly afterwards, Famuyide learned that Chipotle's Store Manager wanted to terminate both her and Bailey's employment. (*Id.* ¶ 49.) "Famuyide was told by the Kitchen Manager that the Kitchen Manager 'saved' Famuyide's job by pleading with upper management not to fire her." (*Id.*)

Famuyide alleges that no one at Chipotle conducted a formal investigation, asked her for information about the assault, or provided her with resources. (*Id.* ¶ 50.) Shortly after returning to work, Famuyide requested a leave of absence. (*Id.* ¶ 51.) On February 2, 2022, Famuyide sent Chipotle a letter, noting that she was investigating potential claims and requesting a copy of her personnel file. (*Id.* ¶ 52.) When Famuyide did not receive a response, she reached out again on February 15. (*Id.* ¶ 53.) Around that time, Famuyide also discovered that her employee portal had been cut off without warning, leading her to believe that she had been terminated. (*Id.*)

Famuyide reached out to Chipotle again on February 21. (*Id.* ¶ 54.) On March 1, Chipotle responded and "explained that Famuyide was terminated 'in error' on February 9, 2022" due to her leave of absence being entered into the system improperly. (*Id.* ¶ 55.) Chipotle "subsequently rescinded Famuyide's termination." (*Id.* ¶ 56.)

In July 2022, Famuyide brought claims against Chipotle in Olmsted County District Court. (Doc. No. 26 ("Abbate-Dattilo Decl.") ¶ 6.) On August 8, 2022, Chipotle notified Famuyide that she was bound by an arbitration agreement. (*Id.* ¶ 7.) According to Chipotle, Famuyide signed the arbitration agreement as part of the onboarding process on May 5, 2021. (Doc. No. 10 ("Simpson Decl.") ¶¶ 26-33.) The arbitration agreement provides that "any claim, dispute, and/or controversy" between Famuyide and Chipotle must be arbitrated. (*Id.* ¶ 26, Ex. 2.)

Famuyide voluntarily dismissed the state-court action without prejudice, and the parties attended mediation in April 2023. (Abbate-Dattilo Decl. ¶¶ 9-11.) Mediation was unsuccessful. (*Id.* ¶ 11.) Famuyide then brought this action based on diversity jurisdiction, asserting various claims under state law related to the sexual assault and harassment. Chipotle now moves to compel arbitration. (Doc. No. 7.) Famuyide opposes the motion. (Doc No. 24.)

## DISCUSSION

### I.     Legal Standard

A motion to compel arbitration is evaluated under the Federal Rules of Civil Procedure either as a Rule 12(b)(6) motion to dismiss or as a Rule 56 motion for summary judgment, depending on whether the Court considers matters outside of the

3

pleadings. *City of Benkelman v. Baseline Eng'g Corp.*, 867 F.3d 875, 881-82 (8th Cir. 2017). Documents "necessarily embraced by the complaint" are considered part of the pleadings. *Enervations, Inc. v. Minn. Mining & Mfg. Co.*, 380 F.3d 1066, 1069 (8th Cir. 2004).

In this case, Famuyide's employment documents, including the agreement to arbitrate, were not included or referenced in the complaint, so the motion to compel arbitration will be analyzed under the summary judgment standard. A motion for summary judgment should only be granted if "after viewing the evidence in the light most favorable to the non-movant and affording the non-movant all reasonable inferences, there is no genuine dispute as to any material fact and the [party moving to compel arbitration] is entitled to judgment as a matter of law." *Williamson v. Hartford Life & Acc. Ins. Co.*, 716 F.3d 1151, 1153 (8th Cir. 2013).

## II. Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act

Famuyide argues that her claims should not be arbitrated because the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 ("EFAA") applies to her case. Chipotle disagrees, asserting that Famuyide's claims accrued before the enactment of the EFAA and thus the statute is not applicable to this case.

President Biden signed the EFAA into law on March 3, 2022. Pub. L. No. 117-90, 136 Stat. 26 (codified at 9 U.S.C. §§ 401, 402). "The EFAA amends the Federal Arbitration Act by invalidating any pre-dispute mandatory arbitration clause as it applies to plaintiffs alleging claims of or related to workplace sexual harassment." *Hodgin v.*

4

*Intensive Care Consortium, Inc.*, No. 22-cv-81733, 2023 WL 2751443, at *1 (S.D. Fla. Mar. 31, 2023).

Famuyide's argument that the EFAA applies to her case is twofold.  First, she argues that the EFAA applies to all cases filed after the statute's enactment, irrespective of when the dispute arose or claims accrued.  Second, she argues that, even if the Court considered when her dispute or claims arose or accrued, her dispute with Chipotle arose after the enactment of the EFAA and thus the statute still applies to her case.  The Court considers each argument in turn below.

The Court begins "where all such inquiries must begin:  with the language of the statute itself."  *Caraco Pharms. Lab'ys, Ltd. v. Novo Nordisk A/S*, 566 U.S. 399, 412 (2012) (internal quotations and citation omitted).  The relevant provision of the EFAA, Section 402(a), provides:

> Notwithstanding any other provision of this title, at the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute, or the named representative of a class or in a collective action alleging such conduct, no predispute arbitration agreement or predispute joint-action waiver shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute.

9 U.S.C. § 402(a).

A statutory note clarifies the EFAA is "applicable with respect to any dispute or claim that arises or accrues on or after Mar. 3, 2022." Pub. L. 117-90, § 3.  "Codification of [a] provision as a statutory note is of no legal significance."  *Stadther v. Dep't of Homeland Sec.*, No. 11-cv-1297, 2012 WL 4372570, at *4 n.1 (D. Minn. Aug. 7, 2012).  "All provisions enacted by Congress must be given equal weight, regardless of their

placement by the codifier." *Id.* (citing *United States v. Welden*, 377 U.S. 95, 98 n.4 (1964)); *see also Ruiz-Perez v. Garland*, 49 F.4th 972, 975 n.1 (5th Cir. 2022) ("Statutory notes are binding law."). Thus, Famuyide's argument that the Court need not consider the statutory note is unavailing. The Court must read § 402(a) in conjunction with the statutory note, as both are binding law.

The EFAA only applies if Famuyide's claims accrued or a dispute arose on or after March 3, 2022. *See* Pub. L. 117-90, § 3. The parties disagree as to when their dispute arose. Because the words "dispute" and "arise" are not defined in the statute, the Court first considers their ordinary meanings. *FDIC v. Meyer*, 510 U.S. 471, 476 (1994). A "dispute" is defined as "[a] conflict or controversy, esp. one that has given rise to a particular lawsuit." *Dispute*, Black's Law Dictionary (11th ed. 2019). Similarly, a dispute is "an assertion of a right, claim, or demand on one side, met by contrary claims or allegations on the other," or "the subject of litigation." *Dispute*, Black's Law Dictionary (6th ed. 1990). A dispute "arises" when it "originate[s]" or "come[s] into being." *Arise*, Black's Law Dictionary (11th ed. 2019); *Arise*, Merriam Webster's Collegiate Dictionary (11th ed. 2003).

Thus, a dispute comes into being when a person asserts a right, claim, or demand and is met with disagreement on the other side. A dispute cannot arise until both sides have expressed their disagreement, either through words or actions. It is at that point, when the parties have taken opposing positions, that a dispute has arisen. This interpretation also makes sense in the broader context of arbitration litigation, as many agreements, including the agreement at hand, often include language indicating that any

"claim, dispute, and/or controversy" will be subject to arbitration. (Simpson Decl. ¶ 26, Ex. 2.) Thus, a "dispute," within the broader context of arbitration, is something resolvable by arbitration. Until there is some sort of conflict or disagreement, there is nothing to resolve in arbitration.[1]

Other courts have analyzed this language and similarly concluded that a dispute requires some sort of disagreement or "adversarial posture." *Hodgin*, 2023 WL 2751443, at *2; *Silverman v. DiscGenics, Inc.*, No. 22-cv-354, 2023 WL 2480054, at *2 (D. Utah Mar. 13, 2023) (concluding that the dispute concerning the plaintiffs' claims of sexual harassment "arose when they filed charges of discrimination in the UALD" as that was the point when "the plaintiffs formally accused [the defendant] of wrongdoing, and [the defendant] attempted to defend itself from these charges"). In this way, a dispute "is a broad term that encompasses [many] forums." *Hodgin*, 2023 WL 2751443, at *2. There are many ways in which a party may formally notify another of potential allegations, claims, or demands. For purposes of this order, the Court need not consider all of the many circumstances that could give rise to a dispute. In this case, while the conduct in dispute occurred earlier, the actual dispute between Famuyide and Chipotle—the moment

---

[1] Although Chipotle asserts that a dispute arose in November 2021, or potentially earlier when the alleged harassment occurred, Chipotle's actions suggest that there was no arbitrable dispute until July 2022, when Famuyide filed her state court action. It was not until then that Chipotle informed Famuyide that she was bound by an arbitration agreement.

when they took opposing positions—arose when Famuyide filed her complaint in state court.[2] This occurred on July 26, 2022, after the enactment of the EFAA.

Chipotle offers a different interpretation of "dispute." Chipotle asserts that a dispute arises on the date of the injury. This interpretation is based on *Barnes v. Festival Fun Parks, LLC*, where the court concluded that, under the EFAA, "[a] dispute arises when the conduct which constitutes the alleged sexual assault or sexual harassment occurs." No. 22-cv-165, 2023 WL 4209745, at *10 (W.D. Pa. June 27, 2023). The Court takes issue with this interpretation, as it conflates dispute with injury. "A dispute entails disagreement, not just the existence of an injury." *Hodgin*, 2023 WL 2751443 at *2. For example, while Famuyide alleges that she was sexually assaulted in November 2021, her disagreement (i.e., her dispute) with Chipotle related to this conduct occurred much later.

Famuyide also alleges sexual harassment. Much or all of the alleged harassment occurred before the November 2021 sexual assault. It is unclear whether or to what extent Chipotle was aware of the harassment at that time—and the Court imagines this will be a major point of contention between the parties as the case proceeds. If, as Chipotle argues, the sexual harassment dispute arose on the date of the alleged harassment, then the dispute potentially arose *before* Chipotle was even aware of the harassment and *before* Famuyide even made any allegations of harassment. Logically, this makes little sense.

---

[2] In February 2022, Famuyide informed Chipotle that she was "investigating potential claims" (Compl. ¶ 89), but there is no evidence that Chipotle responded to Famuyide's letter.

Moreover, Chipotle's interpretation improperly assumes that sexual assault or harassment will always be contested. But in certain situations, the conduct underlying a sexual harassment or assault claim might not be in dispute. Parties can, and often do, admit to certain conduct or facts. In other words, there can be an injury without a dispute. Were the Court to conclude that a dispute arises the moment the sexual assault or harassment occurs, the Court would be assuming the existence of a conflict that has not yet materialized. In reality, disputes may, and often do, arise after the disputed conduct or injury occurs.

The definitions within the EFAA also make clear that a dispute requires more than an injury. The EFAA defines a "sexual assault dispute" as "*a dispute* involving a nonconsensual act or sexual conduct," and it defines "sexual harassment dispute" as "*a dispute* relating to conduct that is alleged to constitute sexual harassment." 9 U.S.C. § 401 (emphasis added). If the underlying conduct alone—the sexual assault or harassment—automatically gave rise to a dispute, then the legislature's use of the word "dispute" within these two definitions would be superfluous. A "sexual assault dispute" would merely mean "a nonconsensual act or sexual conduct." And a "sexual harassment dispute" would mean "conduct that is alleged to constitute sexual harassment." This cannot be so. "[A] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Corley v. United States*, 556 U.S. 303, 314 (2009) (internal quotations and citation omitted).

In this case, the dispute between Chipotle and Famuyide arose when Famuyide filed her complaint against Chipotle in state court. Because the EFAA applies, the

9

arbitration agreement between the parties is unenforceable at Famuyide's election, and the Court therefore denies Chipotle's motion to compel arbitration.[3]

## CONCLUSION

For the reasons outlined above, the Court denies Chipotle's motion to compel arbitration.

## ORDER

Based upon the foregoing, and the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Chipotle's motion to compel arbitration and to dismiss or, in the alternative, stay these proceedings (Doc. No. [7]) is **DENIED**.

Dated:  August 31, 2023            s/Donovan W. Frank
                                   DONOVAN W. FRANK
                                   United States District Judge

---

[3] Because the Court concludes that the EFAA applies, the Court need not consider the remainder of the parties' arguments.