**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Eniola Famuyide,

                  Plaintiff,

    v.

Chipotle Mexican Grill, Inc., and
Chipotle Services, LLC,

                  Defendants.

Case No. 23-cv-01127 (DWF/ECW)

**ORDER**

---

This matter is before the Court on Plaintiff Eniola Famuyide's ("Famuyide" or "Plaintiff") Motion for Leave to Amend Complaint to Seek Punitive Damages (Dkt. 79) ("Motion to Amend"). For the reasons set forth below, the Motion to Amend is granted in part and denied in part.

## I.      BACKGROUND

Famuyide filed her Complaint in this matter on April 20, 2023. (Dkt. 1.) The Complaint alleges that Defendants Chipotle Mexican Grill, Inc. and Chipotle Services, LLC (collectively, "Chipotle" or "Defendants") hired a registered sex offender, Lionell Bailey, who sexually harassed and sexually assaulted[1] Plaintiff in the Chipotle restaurant where she worked. (*Id.* at 1.)[2] Famuyide filed her Motion to Amend on May 28, 2025.

---

[1]      On January 23, 2024, Bailey pleaded guilty to criminal sexual conduct in the third degree in violation of Minn. Stat. § 609.344, subd. 1(a) (use of coercion to accomplish sexual penetration) in connection with his conduct towards Plaintiff on November 23, 2021. (*See* Dkt. 133-5.)

[2]      Citations to page numbers are to the CM/ECF pagination unless otherwise indicated.

(Dkt. 79.)  The Complaint and proposed amended complaint are largely the same, except that the proposed amended complaint contains new allegations that (1) Chipotle had knowledge of and intentionally disregarded certain facts and by doing so showed deliberate disregard for the rights and safety of Famuyide and (2) that Chipotle, which Famuyide alleged in the Complaint is vicariously liable for Bailey's conduct, committed the acts giving rise to that vicarious liability with deliberate disregard for her rights and safety, and therefore she is entitled to punitive damages.  (*See*, *e.g.*, Dkt. 80-2 ¶¶ 33, 69, 79, 85, 92, 103, 115, 127, 135.)  As such, for the purposes of this Motion, the Court will address the allegations in the proposed amended complaint, which alleges the following:

Famuyide began her employment with the Rochester Chipotle in May 2021 at the age of 31.  (*Id.* ¶ 12.)  Famuyide has anxiety generalized disorder and attention deficit with hyperactivity disorder, and this was her first full-time job.  (*Id.*)

The Rochester Chipotle was poorly managed for the entirety of Famuyide's employment, which fostered an environment in which employees were permitted to mistreat each other.  (*Id.* ¶ 13.)  The Rochester Chipotle suffered from a "revolving door" of managers, and the lack of a consistent management presence, fostering an unpredictable, unprofessional, and sometimes frightening work environment, which often caused the store to run out of necessary items, and workers (including Famuyide) being regularly subjected to managers lashing out at them in anger, showing up to work late or hungover, and mishandling staff related issues.  (*Id.* ¶¶ 13-20.)  Famuyide did not feel safe at work and did not believe that her managers could be relied upon and generally felt that her managers hated her.  (*Id.* ¶ 21.)

Famuyide dealt with repeated instances of sexual harassment throughout her tenure at the Rochester Chipotle by Bailey, a co-worker, who is a registered sex offender. (*Id.* ¶ 22.) Bailey began sexually harassing Famuyide almost immediately after her employment began. (*Id.* ¶ 22.) Bailey made sexual advances towards Famuyide during the thirty-minute window when their shifts overlapped. (*Id.* ¶ 23.) Bailey would get very close to Famuyide and encroach on her personal space without permission, he would ask her things like how old she was, if she had a boyfriend, if she wanted to come to the hotel he was staying in, and if she wanted to have sex with him, among other inappropriate and offensive questions. (*Id.* ¶ 24.) Famuyide always said "no" to his advances and was uncomfortable with his persistent attempts to engage with her. (*Id.* ¶ 24.) These advances took place out in the open during working hours at the Rochester Chipotle. (*Id.* ¶ 25.) The line where Famuyide worked was only separated from the kitchen by a table, and it was not uncommon for managers to fill in along the line as needed throughout any given shift. (*Id.*) Due to the size and layout of the building, conversations could be heard throughout the restaurant. (*Id.*) Moreover, a Chipotle manager was assigned to work each shift and given the frequency and prevalence of Bailey's advances, managers must have observed the harassment on multiple occasions but failed to intervene. (*Id.* ¶ 26.) Bailey also regularly called other female employees at the Rochester Chipotle by inappropriate names and made unwanted sexual comments to them, which also went unaddressed by Chipotle management. (*Id.* ¶ 27.)

In addition, "managers were aware" of Baliey's violent tendencies based on an altercation Bailey had with another employee in which the other employee abruptly quit

3

his employment because of Bailey's threatening and aggressive behavior.  (*Id.* ¶ 28.) Other employees had similar issues with Bailey.  (*Id.*)

Bailey is a registered sex offender and his status as a registered sex offender is readily discoverable and publicly available.  (*Id.* ¶ 29.)  A standard background check would have disclosed this information, and therefore, Chipotle knew or should have known of Bailey's propensity for violence and the potential dangers he presented by being employed at the Rochester Chipotle, but chose to employ Bailey anyway and supervised his actions no differently than any other employee.  (*Id.* ¶ 30.)

Chipotle failed to take any action to prevent or stop Bailey's harassment of Famuyide and instead, through its managers in Rochester, fostered a culture of aggression and verbal abuse, which allowed Bailey to harass and abuse Famuyide.  (*Id.* ¶ 31.)  Nor did Famuyide receive sexual harassment training during her employment with Chipotle and was never informed of how to report concerns of harassment.  (*Id.* ¶ 32.)

Chipotle's failure to respond to known instances of harassment and violence, failure to train regarding harassment, and failure to perform background checks created a high probability of injury to the rights and safety of Famuyide and others.  (*Id.* ¶ 33.) Chipotle had knowledge of and intentionally disregarded these facts and by doing so showed deliberate disregard for the rights and safety of Famuyide.  (*Id.*)

Since managers were able to observe and hear the harassment, and did nothing to stop it, Famuyide thought Bailey's conduct was acceptable to Chipotle.  (*Id.* ¶ 34.)  Upon information and belief, Bailey did not receive sexual harassment training during his employment with Chipotle.  (*Id.* ¶ 35.)

4

On November 23, 2021, Bailey sexually assaulted Famuyide in the Chipotle bathroom. (*Id.* ¶¶ 36-40.) After the assault, Famuyide tried to clean herself up, exited the bathroom, and walked to the back of the Rochester Chipotle in shock and without saying anything. (*Id.* ¶¶ 41-42.) Because she appeared visibly shaken-up, Famuyide's managers and coworkers asked her what was wrong, but she was not able to express what had occurred and ultimately went home. (*Id.* ¶ 43.) Following her conversation with a friend regarding the assault, Famuyide contacted the Rochester Chipotle Kitchen Manager ("Kitchen Manager") by phone and told her about the incident. (*Id.* ¶ 45.) The Kitchen Manager called Famuyide back shortly after and had her tell the story again to the Rochester Chipotle Store Manager ("Store Manager"). (*Id.* ¶ 46.)

Famuyide then disclosed what happened to her father, who immediately took her to the emergency room for a sexual assault examination by a nurse. (*Id.* ¶ 47.) The nurse informed Famuyide that she had sustained injuries to her vagina and anus as a result of the assault. (*Id.* ¶ 47.)

Law enforcement was contacted and Bailey was charged with four counts of criminal sexual conduct. (*Id.* ¶ 48.) Bailey had also been convicted of several crimes for his role in a shooting outside of a gas station in Rochester, including attempted murder and assault with a dangerous weapon and was being held without bail pending sentencing. (*Id.* ¶ 49.)

Famuyide learned that after she contacted Chipotle's managers to report the assault, the Store Manager wanted to terminate Bailey's employment and her

employment as well.  (*Id.* ¶ 50.)  The Kitchen Manager claimed to have saved Famuyide's job by pleading with upper management not to fire her.  (*Id.*)

No one at Chipotle conducted a formal investigation, asked Famuyide for additional information about what she had endured, or offered her a single resource to deal with this traumatic incident.  (*Id.* ¶ 51.)  Instead, Chipotle asked her to return to work, which she attempted to but was emotionally unable to perform.  (*Id.* ¶ 51.)  Famuyide was on one occasion directed to clean the restroom where Bailey had assaulted her.  (*Id.* ¶ 52.)  Additionally, Bailey's cousin showed up at the restaurant during one of Famuyide's shifts and angrily demanded video proof of the incident.  (*Id.*)  Famuyide then requested a leave of absence, which she was initially granted, but her lawyer later discovered that Chipotle had since terminated her employment.  (*Id.* ¶¶ 2, 52.)  It was only after notice from her counsel that she was investigating potential claims that Chipotle claimed that Famuyide had been fired in error and had rescinded the termination.  (*Id.* ¶¶ 53-61.)  Famuyide has not been able to return to work since the assault.  (*Id.* ¶ 57.)

Chipotle has a demonstrable history of employing individuals who pose serious risks to their co-employees and failing to take appropriate action to prevent or address sexual harassment, resulting in EEOC consent decrees.  (*Id.* ¶¶ 62-65.)  Regardless of this, Chipotle does not require background checks of crew-level employees.  (*Id.* ¶ 66.)

Chipotle's failure to investigate the assault and its termination of Famuyide after the assault created a high probability of injury to the rights and safety of Famuyide.

Chipotle had knowledge of and intentionally disregarded these facts and by doing so showed deliberate disregard for the rights and safety of Famuyide. (*Id.* ¶ 69.)

Counts I and II of proposed amended complaint allege hostile work environment and reprisal claims under the Minnesota Human Rights Act ("MHRA"), Minn. Stat. § 363A.08, Minn. Stat. § 363A.15, arising out of Bailey's sexual harassment and assault of Famuyide, as well as Chipotle's failure to take prompt and appropriate action to prevent and/or correct the behavior; and retaliating against Famuyide for engaging in protected activity by, among other things: threatening to terminate her employment, actually terminating her employment, and departing from customary employment practices such as conducting an investigation and offering support/resources to Famuyide, the victim of sexual assault. (*Id.* ¶¶ 70-85.) Famuyide seeks to add punitive damages to both MHRA claims in the proposed amended complaint. (*Id.* ¶¶ 79, 85.)

Count III asserts a retaliation claim under the Minnesota Whistleblower Act, Minn. Stat. § 181.932 ("MWA"). Specifically, Famuyide alleges that after making a good-faith report to both the Kitchen Manager and Store Manager that she had been sexually assaulted by Bailey, she learned that the Store Manager wanted to terminate her as the result of the report, and when she attempted to return to work, she was asked to clean the bathroom in which she was assaulted. (*Id.* ¶¶ 87-90.) After Famuyide requested a leave of absence due to her treatment at Chipotle following her sexual assault and sent Chipotle a letter (through counsel) informing it that she was investigating potential claims, she learned that her access to Chipotle's employee portal had been cut off without notice or warning because she had been terminated (although her termination

7

was subsequently rescinded). (*Id.* ¶ 91.) The proposed amended complaint adds an allegation that "Chipotle committed the above acts with deliberate disregard for Famuyide's rights and safety. As a result, Famuyide is entitled to punitive damages." (*Id.* ¶ 92.)

Counts IV and V assert vicarious liability claims against Chipotle for the assault and battery committed by Bailey and the intentional infliction of emotional distress he caused arising out of the November 23, 2021 sexual assault. (*Id.* ¶¶ 95-118.) Plaintiff asserts that the sexual misconduct and/or unconsented, offensive, and damaging sexual contact between employees is a well-known and foreseeable hazard in the Chipotle organization, which Chipotle was aware of. (*Id.* ¶¶ 101-02, 113-14.) Plaintiff proposes to add an allegation that: "Chipotle committed the above acts with deliberate disregard for Famuyide's rights and safety. As a result, Famuyide is entitled to punitive damages" as to each of these Counts. (*Id.* ¶¶ 103, 115.)

Count VI alleges a Negligent Hiring, Retention, and Supervision claim. The claim alleges that Chipotle owes its employees a duty of care, and that includes hiring and supervising other employees. (*Id.* ¶ 122.) Chipotle also owes its employees a duty of care as it relates to providing consistent management so that employees are well-supervised and trained, since managers are the front line when it comes to preventing and addressing employee misconduct, including sexual harassment. (*Id.* ¶ 123.) Chipotle breached its duty to Famuyide by failing to conduct a background check as to Bailey that would have easily disclosed his violent history; failing to consistently staff the Rochester store with competent and professional managers who could ensure the safety of the work

8

environment; failing to take steps to ensure Famuyide's safety despite the fact that Chipotle knew or should have known of Bailey's ongoing harassment or alternatively, Chipotle failed to appropriately supervise Bailey and therefore was not fully aware of his violent propensities; failing to prevent or intervene to stop the assault during work hours in November 2021; and failing to appropriately respond to Famuyide's report of sexual assault, instead threatening to fire her, actually firing her, and directing her to clean the restroom where the assault occurred.  (*Id.* ¶ 124.)  The proposed amended complaint adds an allegation that: "Chipotle committed the above acts with deliberate disregard for Famuyide's rights and safety.  As a result, Famuyide is entitled to punitive damages." (*Id.* ¶ 127.)

The final count, Count VII, asserts a claim against Chipotle for a failure to provide a safe work environment.  The Count alleges that Chipotle owed Famuyide, as an employee, a duty to use ordinary care to provide a reasonably safe place to work, and that Chipotle breached its duty to Famuyide by failing to provide her with sexual harassment training during her employment with Chipotle, fostering an environment in which employees were permitted to mistreat each other, permitting Bailey to harass Famuyide and other female employees without reproach, and failing to adequately hire and supervise employees and managers.  (*Id.* ¶¶ 131-34.)  Famuyide seeks to add the following to the claim, "Chipotle committed the above acts with deliberate disregard for Famuyide's rights and safety.  As a result, Famuyide is entitled to punitive damages." (*Id.* ¶ 135.)

## II.    LEGAL STANDARD

Minnesota law prohibits a party from pleading a claim for punitive damages at the commencement of a lawsuit and provides a specific mechanism for amending the complaint. *See* Minn. Stat. § 549.191. "Courts in the District of Minnesota have historically applied the state statute, Minn. Stat. § 549.191, rather than Rule 15, to motions to amend to add a claim for punitive damages, in diversity actions." *Dolphin Kickboxing Co. v. Franchoice, Inc.*, 335 F.R.D. 393, 397 (D. Minn. 2020). However, as explained in *Dolphin Kickboxing*, "courts have recently taken another look at the practice . . . in view of the 2010 United States Supreme Court's decision in *Shady Grove Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010)." *Id.* at 397-98 (discussing caselaw beginning with *In re Bair Hugger Forced Air Warming Devices Prods. Liab. Litig.*, MDL No. 15-2666 (JNE/FLN), 2017 WL 5187832 (D. Minn. July 27, 2017)). This Court undertook an analysis of whether Minn. Stat. § 549.191 or Federal Rule of Civil Procedure 15 should apply in *Dolphin Kickboxing* and concluded that Rule 15 applies. 335 F.R.D. at 397-401; *see also Berk v. Choy*, 607 U.S. —, No. 24-440, 2026 WL 135974, at *3 (Jan. 20, 2026) ("The Rules of Decision Act directs federal courts to apply state substantive law, leaving federal law to cover the rest."). The Court therefore applies Rule 15 when deciding whether to grant leave to add a punitive damages claim to the state-law claims in the proposed amended complaint.

Rule 15 sets the general standard for amending pleadings in Federal court and provides that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The determination as to whether to grant leave to amend is entrusted to the

10

sound discretion of the trial court.  *See, e.g.*, *Niagara of Wisc. Paper Corp. v. Paper Indus. Union-Mgmt. Pension Fund*, 800 F.2d 742, 749 (8th Cir. 1986).  The Eighth Circuit has held that although amendment of a pleading "should be allowed liberally to ensure that a case is decided on its merits, there is no absolute right to amend."  *Ferguson v. Cape Girardeau County*, 88 F.3d 647, 650-51 (8th Cir. 1996) (citation omitted).

Denial of leave to amend may be justified by "undue delay, bad faith on the part of the moving party, futility of the amendment or unfair prejudice to the opposing party."  *Sanders v. Clemco Indus.*, 823 F.2d 214, 216 (8th Cir. 1987) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *see also Hillesheim v. Myron's Cards and Gifts, Inc.*, 897 F.3d 953, 955 (8th Cir. 2018) ("A district court's denial of leave to amend a complaint may be justified if the amendment would be futile." (citation modified)).  "Denial of a motion for leave to amend on the basis of futility means the district court has reached the legal conclusion that the amended complaint could not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure," which means that "in reviewing a denial of leave to amend [a court] ask[s] whether the proposed amended complaint states a cause of action under the *Twombly* pleading standard."  *Zutz v. Nelson*, 601 F.3d 842, 850-51 (8th Cir. 2010) (citation modified); *see also In re Senior Cottages of Am., LLC*, 482 F.3d 997, 1001 (8th Cir. 2007) ("[W]hen a court denies leave to amend on the ground of futility, it means that the court reached a legal conclusion that the amended complaint could not withstand a Rule 12 motion.").

On a motion to dismiss filed pursuant to Rule 12(b)(6), the Court must take the well-pleaded allegations of a claim as true, and construe the pleading, and all reasonable

inferences arising therefrom, most favorably to the pleader. *See Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). To survive a motion to dismiss, a claim "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Here, where the question is whether the proposed amended complaint sufficiently alleges an entitlement to punitive damages, the Court must "determine whether [the complaint] states a plausible claim for punitive damages in light of *substantive* Minnesota law." *Shank v. Carleton Coll.*, No. 16-CV-1154 (PJS/HB), 2018 WL 4961472, at *4 (D. Minn. Oct. 15, 2018), *aff'd*, 329 F.R.D. 610 (D. Minn. 2019). The relevant legal basis for punitive damages under Minnesota law, outside of vicarious liability, provides:

> (a) Punitive damages shall be allowed in civil actions only upon clear and convincing evidence that the acts of the defendant show deliberate disregard for the rights or safety of others.
>
> (b) A defendant has acted with deliberate disregard for the rights or safety of others if the defendant has knowledge of facts or intentionally disregards facts that create a high probability of injury to the rights or safety of others and:
>> (1) deliberately proceeds to act in conscious or intentional disregard of the high degree of probability of injury to the rights or safety of others; or
>>
>> (2) deliberately proceeds to act with indifference to the high probability of injury to the rights or safety of others.

Minn. Stat. § 549.20, subd. 1. Under these criteria, "[a] defendant operates with 'deliberate disregard' by acting with intent or indifference to threaten the rights or safety

12

of others." *Gamma-10 Plastics, Inc. v. Am. President Lines, Ltd.*, 32 F.3d 1244, 1255 (8th Cir. 1994). As such, "the mere existence of negligence or of gross negligence does not rise to the level of willful indifference so as to warrant a claim for punitive damages."[3] *Ulrich v. City of Crosby*, 848 F. Supp. 861, 868 (D. Minn. 1994); *see also Shank*, 2018 WL 4961472, at *7 (D. Minn. Oct. 15, 2018) (same); *Berczyk v. Emerson Tool Co.*, 291 F. Supp. 2d 1004, 1008 (D. Minn. 2003) ("A mere showing of negligence is not sufficient to sustain a claim of punitive damages." (citation modified)). Moreover, plaintiffs must allege that defendants were aware of a high probability that their conduct would cause injury to plaintiffs. *See In re McNeilus Mfg. Explosion Coordinated Litig.*, No. 17-CV-5237-PJS-KMM, 2019 WL 2387110, at *4 (D. Minn. June 6, 2019). Put another way, a court looks to whether the allegations in a proposed amended complaint plausibly allege a defendant knew of facts, or intentionally disregarded facts, that created a high probability that the defendant's actions would harm the rights or safety of a plaintiff.

The specific punitive damages provision in the MHRA displaces the requirements of Minn. Stat. § 549.191. *See* Minn. Stat. § 363A.29, subd. 4; *Zuniga Escamilla v. SMS Holdings Corp.,* No. CV 09-2120 (ADM/JSM), 2011 WL 13318238, at *13 (D. Minn. July 29, 2011), *aff'd*, 2011 WL 13318237 (D. Minn. Dec. 14, 2011). However, if the party moves to add punitive damages after the Complaint, Rule 15(a) applies. *Zuniga*

---

[3]   "Minnesota law defines gross negligence as 'without even scant care but not with such reckless disregard of probable consequences as is equivalent to a willful and intentional wrong.'" *Greer v. Walsh Constr. Co.*, No. CV 15-465 (PAM/JSM), 2016 WL 6892109, at *8 (D. Minn. Feb. 23, 2016) (quoting *State v. Chambers*, 589 N.W.2d 466, 478 (Minn. 1999)).

*Escamilla*, 2011 WL 13318238, at *13.  In determining whether a claim for punitive

damages under the MHRA is futile for the purposes of Rule 15(a), the Court must

ascertain whether Famuyide has adequately pled Chipotle deliberately disregarded her

rights or safety under the mandates of Minn. Stat. § 549.20.  *See* Minn. Stat. § 363A.29,

subd. 4(a); *Zuniga Escamilla*, 2011 WL 13318238, at *14; *Klyuch v. Freightmasters,

Inc.*, NO. CIV.03-6135 (PAM/RLE), 2005 WL 318786 at *1 (D. Minn. Feb. 09, 2005)

("Under the Minnesota Human Rights Act ('MHRA'), punitive damages requires 'clear

and convincing evidence that the acts of the defendants show deliberate disregard for the

rights or safety of others.'") (quoting Minn. Stat. § 549.20); *Ray v. Miller Meester

Advertising, Inc.*, 664 N.W.2d 355, 371 (Minn. Ct. App. 2003) ("Under the MHRA,

punitive damages . . . are awarded under section 549.20.") (citation modified).

### III.   ANALYSIS

As set forth above, Famuyide's proposed amended complaint is essentially the

same factually, but seeks leave to amend for the purpose of asserting claims for punitive

damages as to each Count.  Chipotle argues that the proposed amended complaint lacks

allegations demonstrating that Chipotle acted with deliberate disregard for Plaintiff's

rights or safety above a speculative level, and that the claims for punitive damages are

therefore futile.  (Dkt. 85 at 2, 6-12.)  Chipotle also argues that the Motion to Amend

should be denied because Plaintiff moved to amend her pleadings on the last day allowed

under the scheduling order, two years into the case, with discovery close to its end.  (*Id.*

at 13.)  According to Defendants, allowing amendment at this stage in the case would

prejudice them given that they have made a number of litigation decisions based on the

14

absence of a request for punitive damages in the case. (*Id.* at 14-15.) The Court will proceed with addressing the futility of the proposed amendments seeking to add punitive damages as to each claim, and then address undue delay and prejudice.

## A.   Counts I and II (MHRA) and Count III (MWA)

Counts I and II of the proposed amended complaint allege hostile work environment and reprisal claims under the MHRA, Minn. Stat. §§ 363A.08, 363A.15, arising out of: Bailey's sexual harassment and assault of Famuyide; Chipotle's failure to take prompt and appropriate action to prevent and/or correct the behavior; and Chipotle's retaliation against Famuyide for engaging in protected activity by, among other things, threatening to terminate her employment, actually terminating her employment, and departing from customary employment practices such as conducting an investigation and offering support/resources to Famuyide. (Dkt. 80-2 ¶¶ 70-85.)

Here, Famuyide alleges that Bailey began sexually harassing her almost immediately after her employment began. (*Id.* ¶ 22.) Bailey made sexual advances towards Famuyide during the thirty-minute window when their shifts overlapped. (*Id.* ¶ 23.) These advances took place out in the open during working hours at the Rochester Chipotle. (*Id.* ¶ 25.) The line where Famuyide worked was only separated from the kitchen by a table, and it was not uncommon for managers to fill in along the line as needed throughout any given shift. (*Id.*) Due to the size and layout of the building, conversations could be heard throughout the restaurant. (*Id.*) Moreover, a Chipotle manager was assigned to work each shift and given the frequency and prevalence of Bailey's advances, managers must have observed the harassment on multiple occasions

15

but failed to intervene.  (*Id.* ¶ 26.)  Bailey also regularly called other female employees at the Rochester Chipotle by inappropriate names and made unwanted sexual comments to them, which also went unaddressed by Chipotle management.  (*Id.* ¶ 27.)  Famuyide ultimately alleges that Chipotle knew or should have known about the sexual harassment and assault and failed to take prompt and appropriate action to prevent and/or correct the behavior.  (*Id.* ¶ 77.)  Given the allegations relating to Bailey's conduct to Famuyide and other female employees, knowledge of the harassment by Chipotle managers, Chipotle's failure to take any action in response to Bailey's conduct, and Bailey's sexual assault of Famuyide, along with Chipotle's treatment of Famuyide after she reported the sexual assault, the Court finds that Famuyide has plausibly alleged that the hostile work environment she was exposed to created a high probability of injury to her rights and safety, that Chipotle plausibly had knowledge of that risk, and that by doing nothing, Chipotle showed deliberate disregard for the rights and safety of Famuyide. Consequently, the Court finds that Famuyide's proposed amendment as to Count I is not futile.

Moreover, the Court finds that Plaintiff has adequately alleged a claim for punitive damages based on her MHRA reprisal claim in Count II.  The allegation that the Store Manager threatened to terminate Famuyide after she reported Bailey's sexual assault; that Famuyide was made to clean the bathroom where he assaulted her; and that Chipotle ultimately terminated her, and only rescinded that termination after learning from Famuyide's counsel that she was investigating litigation, plausibly alleges that Chipotle had knowledge of her protected conduct and acted with intent or indifference to her right

16

to report the sexual assault by engaging in such conduct.  As such, the Court finds the proposed amendment to add punitive damages as to Count II is not futile.

The Court also finds amendment of the MWA claim in Count III to seek punitive damages is not futile for the same reasons.  Employers such as Defendants have knowledge that it is unlawful under Minn. Stat. § 181.932 to terminate employees for reporting alleged unlawful activity, and "an employer's knowledge that an employee 'had a right to report a suspected violation of the law without fear of reprisal' can support a claim for punitive damages."  *Perez v. Axis Residential, LLC*, No. 24-CV-4310 (MJD/JFD), 2025 WL 1088165, at *4 (D. Minn. Apr. 11, 2025) (quoting *Sellner v. MAT Holdings, Inc.*, No. 13-CV-1289 (ADM/LIB), 2018 WL 784062, at *7 (D. Minn. Feb. 8, 2018)) (citation modified).  As with the MHRA reprisal claim, Famuyide's allegations that Chipotle threatened her with termination after her report of sexual assault, made her clean the bathroom in which Bailey assaulted her, and ultimately terminated her employment, only to rescind the termination in response to threatened litigation, constitutes deliberate disregard of an employee's right to be free from unlawful retaliatory conduct.  *Id.*.  Chipotle complains of a lack of specificity (Dkt. 85 at 8-9), however, the averments provide specific instances of retaliation by management after Famuyide reported that Bailey had sexually assaulted her in the Chipotle bathroom, including her termination.  The proposed amended complaint sufficiently alleges that Chipotle had sufficient knowledge of the retaliation, and the proposed amendment to add punitive damages is not futile.

17

**B.      Counts VI and VII—Negligent Hiring, Retention, and Supervision Claim and a Failure to Provide a Safe Work Environment**

Count VI alleges a negligent hiring, retention, and supervision claim and Count VII asserts a claim against Chipotle for a failure to provide a safe work environment. (Dkt. 80-2 ¶¶ 119-38.)  The focus of these claims include that Defendants: failed to conduct a background check as to Bailey; failed to consistently staff the Rochester Chipotle with competent and professional managers who could ensure the safety of the work environment; failed to provide Famuyide with sexual harassment training during her employment; knew or should have known of Bailey's ongoing harassment of Famuyide and failed to take steps to ensure Famuyide's safety; failed to appropriately supervise Bailey and therefore was not fully aware of his violent propensities; failed to prevent or intervene to stop the assault during work hours in November 2021; and failed to appropriately respond to Famuyide's report of sexual assault, instead threatening to fire her, actually firing her, and directing her to clean the restroom where the assault occurred.  (*Id.*)

As stated in Section III.A, Famuyide has adequately alleged that the hostile work environment she was exposed to due to Bailey's conduct created a high probability of injury to her rights and safety, which Chipotle plausibly had knowledge of, and by doing nothing with respect to retaining and supervising Bailey, Chipotle showed deliberate disregard for her rights and safety.  Defendants complain that the allegation that it failed to provide sexual harassment training to Famuyide amounts to at most negligence (Dkt. 85 at 11), this argument ignores the allegation that Chipotle entered into a three-year consent decree with the Equal Employment Opportunity Commission ("EEOC") 2019

18

requiring Chipotle to provide such training to its employees. (*See* Dkt. 80-2 ¶ 63). This, coupled with Chipotle's alleged knowledge of Bailey's harassment before he assaulted Famuyide, causes the Court to find that Famuyide has plausibly alleged a claim for punitive damages as to the negligent retention and supervision claim in Count VI, and the failure to provide a safe work environment set forth in Count VII.

The Court acknowledges Defendants' argument that it had no legal obligation to make an inquiry as to Bailey's criminal record as a prospective employee as alleged. (Dkt. 85 at 10.) Indeed, the Minnesota Supreme Court rejected the proposition that "as a matter of law, there exists a duty upon an employer to make an inquiry as to a prospective employee's criminal record." *Ponticas v. K.M.S. Invs.*, 331 N.W.2d 907, 913 (Minn. 1983).[4] However, negligent hiring and retention, while related, are distinct theories. *See Yunker v. Honeywell, Inc.*, 496 N.W.2d 419, 423 (Minn. Ct. App. 1993). The absence of a legal duty to inquire into Bailey's criminal record does not render futile a punitive damages claim based on Chipotle's retention of Bailey after the conduct leading up to his sexual assault of Famuyide as alleged in the proposed alleged complaint.

That said, to the extent that Famuyide asserts that Chipotle failed to appropriately respond to her report of sexual assault (Dkt. 80-2 ¶ 124), such a claim ignores a that "[a]n employee may assert a claim for negligent retention and supervision relating to alleged sexual harassment only when there is a threat of physical injury or actual injury resulting from the harassment." *Landy v. Upper Lakes Foods, Inc.*, No. C3-97-1670, 1998 WL

---

[4]     The Court does not decide whether, based on the facts alleged, Defendants should have performed a criminal background check on Bailey after he was employed.

19

219786, at *4 (Minn. Ct. App. May 5, 1998) (citing *Bruchas v. Preventive Care, Inc.*, 553 N.W.2d 440, 442-43 (Minn. Ct. App. 1996)). Here, there is no allegation that Bailey continued to be employed after Famuyide reported the sexual assault, or that she was subjected to threat of injury after the sexual assault.

For all of these reasons, Plaintiff's Motion to Amend is not futile as to Counts VI and VII, except insofar as she seeks to add punitive damages with respect to (1) the negligent hiring claim in Count VI, and (2) the negligent supervision claim in Count VI to the extent that Famuyide asserts she is entitled to punitive damages due to alleged negligent supervision of Bailey after she reported that he sexually assaulted her. Plaintiff may not seek punitive damages based on those two theories in Count VI.

## C.    Counts IV and V involving Vicarious Liability

Again, Counts IV and V allege vicarious liability claims against Chipotle for the assault and battery committed by Bailey and the intentional infliction of emotional distress he caused arising out of the November 23, 2021 sexual assault. (Dkt. 80-2 ¶¶ 95-118.)

While not addressed by any of the parties, "[w]hen a plaintiff seeks to impose vicarious liability for punitive damages of an employer for the acts of its employee, plaintiff must present evidence under Minnesota Statute § 549.20, subd. 2." *Allen v. Fid. Fin. Servs.*, No. Civ. 98-1725 (ADM/AJB), 1999 WL 33912315 at * 1 (D. Minn. Sept. 09, 1999).

Minn. Stat. § 549.20, subd. 2 provides:

**Subd. 2. Master and principal.** Punitive damages can properly be awarded against a master or principal because of an act done by an agent only if:

20

(1) the principal authorized the doing and the manner of the act;

(2) the agent was unfit and the principal deliberately disregarded a high probability that the agent was unfit;

(3) the agent was employed in a managerial capacity with authority to establish policy and make planning level decisions for the principal and was acting in the scope of that employment; **or**

(4) the principal or a managerial agent of the principal, described in clause (3), ratified or approved the act while knowing of its character and probable consequences.

Minn. Stat. § 549.20, subd. 2 (emphasis added).

The closest that Famuyide's allegations get to making a viable claim for punitive damages under § 549.20, subd. 2 is under subsection (2) based on an assertion that "the agent" (Bailey) was unfit and the principal (Chipotle) "deliberately disregarded a high probability that the agent was unfit" or under subsection (4), where the analysis of whether Chipotle ratified Bailey's conduct centers on whether Famuyide alleges sufficient facts to establish that Chipotle knew or should have known about Bailey's conduct and ratified or approved of the conduct, or failed to repudiate it as soon as Chipotle was fully informed of such conduct. *See Zuniga Escamilla,* 2011 WL 13318238, at *12; *see also Njema v. Wells Fargo Bank, N.A.*, No. CV 13-519 (PJS/JSM), 2014 WL 12648466, at *11-14 (D. Minn. Nov. 4, 2014) (a nonmanagerial agent's action can be imputed on an employer as an agent if the agent was unfit and the principal deliberately disregarded a high probability that the agent was unfit).

For the reasons stated forth in Sections III.A and III.B, the proposed amended complaint alleges sufficient facts that Chipotle deliberately disregarded a high probability

that Bailey was unfit.[5]  Therefore, the Motion to Amend to add claims for punitive

damages as to Counts IV and V is not futile.

**D.      Undue Delay and Prejudice**

The Court turns to Chipotle's arguments based on undue delay and prejudice.

This argument is based on Rule 15, as the Motion to Amend, filed on May 28, 2025 (Dkt.

79) is timely under the Pretrial Scheduling Order (*see* Dkt. 78 at 2 (setting May 28, 2025

deadline to amend the pleadings to seek punitive damages)).

Under Rule 15, denial of leave to amend may be justified by undue delay, bad

faith on the part of the moving party, or unfair prejudice to the opposing party.  *See*

*Sanders*, 823 F.2d at 216.  Absent prejudice to the non-moving party or bad faith, delay

alone is an insufficient justification to deny leave to amend.  *See Bell v. Allstate Life Ins.*

*Co.*, 160 F.3d 452, 454 (8th Cir. 1998); *see also Buder v. Merrill Lynch, Pierce, Fenner*

*& Smith*, Inc., 644 F.2d 690, 694-95 (8th Cir. 1981).  "Any prejudice to the nonmovant

must be weighed against the prejudice to the moving party by not allowing the

amendment." *See Bell*, 160 F.3d at 454.

Defendants cite to this Court's decision in *Babbitt v. Target Corp.*, No. 20-CV-490

(DWF/ECW), 2025 WL 71586 (D. Minn. Jan. 10, 2025), for the proposition that the

Motion should be denied because Famuyide waited until the eleventh hour under the

scheduling order to bring the Motion to Amend, resulting in Defendants being prejudiced

because had the claim for damages been brought earlier in the case, Defendants perhaps

---

[5]      Given the Court's finding as to subsection (2), the Court does not reach whether
Defendants ratified Bailey's conduct under subsection (4).

would have handled its defense differently.  (Dkt. 85 at 14.)  However, in *Babbit*, the plaintiffs waited several years to add state wage class claims to a case involving a conditional FLSA collective.  *See* 2025 WL 71586, at *6.  The present Motion to Amend only seeks to add a claim for punitive damages based on existing claims, and Defendants have not identified any additional discovery or avenue of defense they would have pursued had Famuyide asserted claims for punitive damages earlier in the case.  The Court finds no dilatory conduct on the part of Famuyide.  *See In re EpiPen Direct Purchaser Litig.*, No. 20CV00827ECTJFD, 2021 WL 4892231, at *4 (D. Minn. Oct. 20, 2021).  Indeed, it is the typical practice of this Court to allow later amendments as to claims for punitive damages, as opposed to other amendments, because discovery is necessary to ensure that parties have sufficient facts to support such a motion.  The Motion to Amend is timely under the Scheduling Order, Defendants offer no specifics on what additional discovery is necessary, and, notwithstanding Defendants' *ipse dixit* assertions in their brief that they made litigation-related decisions based on the absence of punitive damages, the Court cannot discern how their strategy would have changed, particularly when the underlying claims remain the same.  Defendants do not identify any decision they would have made differently, much less show prejudice from any such decision.  As such, the Court does not find any undue delay or prejudice to Defendants to warrant denying the Motion to Amend on this basis.

For all these reasons, the Court grants the Motion to Amend except insofar as it seeks to add punitive damages with respect to (1) the negligent hiring claim in Count VI, and (2) the negligent supervision claim in Count VI to the extent that Famuyide asserts

entitlement to punitive damages due to alleged negligent supervision of Bailey after she reported that he sexually assaulted her.

## IV.  ORDER

Based on the files, records, and proceedings herein, **IT IS ORDERED THAT**:

1.  Plaintiff Eniola Famuyide's Motion for Leave to Amend Its First Amended Complaint to Seek Punitive Damages (Dkt. 79) is **GRANTED IN PART** and **DENIED IN PART** as follows:

   a.  The Motion to Amend is **GRANTED** as to Plaintiff's claim for punitive damages with respect to Counts I, II, III, IV, V and VII; and

   b.  The Motion to Amend is **GRANTED** in part and **DENIED** in part as to Count VI consistent with this Order.

2.  Plaintiff shall file an Amended Complaint consistent with this Order on **April 2, 2026**, unless an appeal of this Order is sought.

3.  Defendants shall respond to the Amended Complaint in a manner consistent with the Federal Rules of Civil Procedure.

DATED:  March 18, 2026

_s/Elizabeth Cowan Wright_
ELIZABETH COWAN WRIGHT
United States Magistrate Judge

24