**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Eniola Famuyide,

               Plaintiff,

   v.

Chipotle Mexican Grill, Inc., and
Chipotle Services, LLC,

               Defendants.

Case No. 23-cv-01127 (DWF/ECW)

**ORDER**

---

This matter is before the Court on Defendant Chipotle Services, LLC's Motion for

Leave to Extend Plaintiff's Deposition (Dkt. 92) and Plaintiff's Motion to Compel

Discovery (Dkt. 100).  For the reasons set forth below, the Court denies Defendant

Chipotle Services, LLC's Motion for Leave to Extend Plaintiff's Deposition and grants in

part Plaintiff's Motion to Compel Discovery.

## I.      MOTION TO EXTEND PLAINTIFF'S DEPOSITION

**A.     Factual Background**

Plaintiff Eniola Famuyide ("Famuyide" or "Plaintiff") filed the Complaint in this

matter on April 20, 2023 alleging that Defendants Chipotle Mexican Grill, Inc. and

Chipotle Services, LLC (collectively, "Defendants" or "Chipotle") hired a registered sex

offender, Lionell Bailey, who sexually harassed and sexually assaulted Famuyide in the

Chipotle restaurant where she worked ("Ear of Corn Chipotle Restaurant").  (Dkt. 1 at

1.)[1]  Defendant Chipotle Services, LLC ("Chipotle Services") seeks an order from this

---

[1]     Unless otherwise indicated, page number citations are to the CM/ECF pagination.

Court allowing it to depose Famuyide for an additional two hours, despite the fact that Chipotle Services has already deposed her for seven hours on the record, on the following basis:

> Defense counsel was unable to complete Plaintiff's deposition, due to her repeated attempts to avoid answering the questions presented or unreasonable delays in answering the questions presented. Throughout the deposition, Plaintiff's pauses between answers—which were often between fifteen to thirty seconds, and sometimes longer—hindered counsel's ability to elicit her complete testimony within the standard seven hours allotted for depositions. Compounding the delay of her examination, counsel often had to ask questions at least twice which naturally slowed the process, and on many occasions, counsel never obtained a responsive answer to the question.

(Dkt. 94 at 1-2.)  Chipotle Services provides instances of this purported conduct in the deposition transcript from Famuyide's deposition.  (*See id.* at 2-3 n.2.)

Famuyide counters that Chipotle Services should not be given any additional time because, despite the fact that Chipotle Services had the detailed account that she gave police on the day Bailey sexually assaulted her, and despite Bailey's guilty plea to criminal sexual conduct in the third degree in violation of Minn. Stat. § 609.344, subd. 1(a) (use of coercion to accomplish sexual penetration) in connection with his conduct towards Famuyide on November 23, 2021 (*see* Dkt. 133-5), Chipotle Services chose to spend a significant amount of time forcing her to recount the assault, challenging whether the assault was consensual, and challenging whether she could have done more to stop the assault (Dkt. 106 at 3-9).  Plaintiff also argues that Chipotle Services wasted their deposition time asking Famuyide questions about her sexual orientation, sexual history, what her parents thought about her sexual orientation, her ACT score, and what grade she received in classes she took in college; reading and discussing details of the essays she

2

wrote for her college application; asking who takes care of her family dog; asking why she referred to herself as a "vulnerable adult" in the Complaint; and trying to extract an admission from Famuyide that she went into the Ear of Corn Chipotle Restaurant's back office to review and accept documents as part of her onboarding, when Famuyide insisted that she had not.  (*Id.* at 9-12.)

**B.      Legal Standard**

Rule 30 of the Federal Rules of Civil Procedure governs oral depositions.  Absent a stipulation or court order, depositions are "limited to one day of 7 hours."  Fed. R. Civ. P. 30(d)(1).  Nonetheless, "[t]he court must allow additional time consistent with Rule 26(b)(1) and (2) if needed to fairly examine the deponent or if the deponent, another person, or any other circumstance impedes or delays the examination."  *Id.*  "Trial courts have 'broad discretion to decide discovery motions.'"  *Zuniga Escamilla v. SMS Holdings Corp.*, No. 09-cv-2120 (ADM/JSM), 2011 WL 5025254, at *6, (D. Minn. Oct. 21, 2011) (quoting *Pavlik v. Cargil, Inc.*, 9 F.3d 710, 714 (8th Cir. 1993)).  "The availability of a second deposition is left to the discretion of the trial court."  *Id.* at *6 (citation modified).

**C.      Analysis**

The Court has reviewed the transcript (Dkt. 95) and the video of Famuyide's deposition (Dkt. 112).  Based on that review, the Court finds that Famuyide's pauses before answering, a "subset" of which Chipotle Services claims totaled approximately eleven minutes (Dkt. 94 at 3), were not excessive or improper, especially in light of the topics and the length of time between the relevant events and the date of the deposition. Nor does the Court find that Famuyide was evasive in her answers.  Chipotle Services

asserts that the lost time is not limited to the 11 minutes attributable to those pauses and 16 minutes attributable to what Chipotle Services characterizes as evasive answers, but that "Plaintiff's severely pregnant pauses, and drawn-out cadence" resulted in an opportunity cost because it impeded their counsel from asking questions at a more rapid pace. (*Id.* at 4-5.) However, the Court's review of the deposition video does not support this conclusion. Indeed, while Chipotle Services threatened to contact the Court about other issues during the deposition (*see, e.g.*, Dkt. 95 at 143:23-144:3)[2], Chipotle Services did not identify any portion of the deposition where it raised concerns about Famuyide's pacing or the consequences of her alleged non-responsiveness until only nine minutes remained on the clock (*see id.* at 278:17-280:17). Chipotle Services is responsible for how it conducted the deposition, including the pacing, and if Chipotle Services had concerns about Famuyide's pauses or responsiveness, counsel should have raised them with Famuyide's counsel and, if necessary, sought relief from the Court earlier in the deposition.

The Court also notes that Chipotle Services spent a significant amount of time examining Famuyide about her time in college, including her grades, college essays, and ACT score (Dkt. 95 at 48:3-63:4); as well as Famuyide's mental health and ability to live independently, her family's reaction to her sexuality, her interest in the reason why a coworker quit, how she searched for responsive documents, and exploring more areas of discovery with respect to social media (*id.* at 235:4-263:10). Counsel are routinely required to make strategic choices about which topics to prioritize during a deposition

---

[2]     Transcripts are cited in page:line format.

and to adjust and re-prioritize topics based on how the deposition proceeds.  Here, when Chipotle Services chose to focus on those topics, it ran the risk of not being able to cover other topics (such as Famuyide's damages, harm, and "identities of the bad actors she claims are responsible") (*see* Dkt. 94 at 2) within its seven hours on the record.  Chipotle Services' strategic decisions during Famuyide's deposition are not reason to grant leave for additional deposition time.

For all of these reasons, the Court denies Chipotle Services' Motion to Extend Plaintiff's Deposition.

## II.  PLAINTIFF'S MOTION TO COMPEL

Famuyide has filed a motion seeking to compel production of three categories of documents and information from Chipotle.  This includes seeking an order requiring Chipotle to collect and produce work-related communications on employees' phones, including text messages and communications from an internet-based messaging application called GroupMe.  (Dkt. 105 at 12-21.)  Famuyide also seeks information and documents relating to other instances of sexual assault and sexual harassment at the Ear of Corn Chipotle Restaurant and other Chipotle locations, as well as documents relating to consent decrees between Chipotle and the Equal Employment Opportunity Commission ("EEOC") and its responses to such decrees.  (*Id.* at 23-29.)  Famuyide further takes issue with discovery responses she asserts are deficient because in many instances they fail to clearly explain whether Chipotle is withholding documents subject to its stated objections.  (*Id.* at 21-23.)  Finally, she takes issue with Chipotle's alleged lack of production as to its background check policies.  (*Id.* at 29.)

Prior to the hearing on the Motion to Compel, Famuyide filed a motion to supplement the record (Dkt. 114) related to the Motion to Compel, which the Court granted at the hearing on the Motion to Compel (Dkt. 119).  The Court also ordered supplemental briefing by Famuyide and Chipotle (*see id.*), which is now complete (*see* Dkts. 122, 149), making the Motion to Compel ripe for decision.

## A.    Legal Standard

Rule 26 of the Federal Rules of Civil Procedure governs the scope of discovery. *See* Fed. R. Civ. P. 26.  That Rule states that:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

While Rule 26 contemplates a liberal scope of discovery, this Court "possess[es] considerable discretion in determining the need for, and form of, discovery." *In re Nat'l Hockey League Players' Concussion Injury Litig.*, 120 F. Supp. 3d 942, 949 (D. Minn. 2015).

As stated in Rule 26, information sought in discovery must be relevant.  The Eighth Circuit has held that the party seeking discovery has the burden of showing relevance before the requested information is produced.  *See Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992).  "[T]he standard of relevance in the context of discovery is broader than in the context of admissibility (Rule 26(b) clearly states that

6

inadmissibility is no grounds for objection to discovery).” *Id.*  However, this common

legal principle “should not be misapplied so as to allow fishing expeditions in discovery.

Some threshold showing of relevance must be made before parties are required to open

wide the doors of discovery and to produce a variety of information which does not

reasonably bear upon the issues in the case.” *Id.*

Further, information sought in discovery must be “proportional to the needs of the

case.” Fed. R. Civ. P. 26(b)(1).  In determining proportionality, courts consider

numerous factors, including “the importance of the issues at stake in the action, the

amount in controversy, the parties’ relative access to the relevant information, the parties’

resources, and importance of the discovery in resolving the issues, and whether the

burden or expense of the proposed discovery outweighs its likely benefit.” *Beseke v.*

*Equifax Info. Servs., LLC*, No. 17-cv-4971-DWF-KMM, 2018 WL 6040016, at *3 (D.

Minn. Oct. 18, 2018) (quoting Fed. R. Civ. P. 26(b)(1)).  To this end, a court on a motion

or on its own “must” limit discovery when it is “unreasonably cumulative or duplicative,

or can be obtained from some other source that is more convenient, less burdensome, or

less expensive,” if “the party seeking discovery has had ample opportunity to obtain the

information by discovery in the action,” or if the discovery is outside of the scope of Rule

26(b)(1). *See* Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii).

In accordance with Federal Rule of Civil Procedure 37, “[o]n notice to other

parties and all affected persons, a party may move for an order compelling disclosure or

discovery.” Fed. R. Civ. P. 37(a)(1).  And “[a] party seeking discovery may move for an

order compelling an answer, designation, production, or inspection."  Fed. R. Civ. P. 37(a)(3)(B).

**B.      Preservation, Collection, and Production of GroupMe Messages and Text Messages from Managers**

Famuyide seeks an order compelling Chipotle to produce communications from its managers' personal devices and GroupMe chats that are responsive to her discovery requests.  (Dkt. 105 at 20.)  Before turning to the parties' arguments, the Court summarizes the relevant testimony below.

**1.  Relevant Testimony**

First, Isaac Straitiff, the General Manager of the Ear of Corn Chipotle Restaurant during Famuyide's employment, testified that when he started at the Ear of Corn Chipotle Restaurant, the Field Leader he reported to[3] gave him administrative access to that location's GroupMe group (also referred to as a "chat"), but that he had not received anything official from the company directing him to use GroupMe.  (Dkt. 104-12 at 38:13-14, 203:14-204:11; *see also id.* at 78:2-20 (referring to groups and chats).)  Straitiff testified that he thought the email he used to log in to GroupMe was his Chipotle email, but he was not sure.  (*Id.* at 203:12-16.)  Straitiff also testified that employees used the GroupMe app to discuss shift schedules, swap work shifts, and discuss issues regarding daily operations of the Ear of Corn Chipotle Restaurant.  (Dkt. 104-12 at 204:14-205:1.)  Straitiff testified that he first downloaded the GroupMe app when he started at the

---

[3]      Based on Straitiff's testimony, a Field Leader (also referred to as a Regional Manager) has responsibility for overseeing a number of Chipotle restaurants.  (*See* Dkt. 114-12 at 38:13-18.)

Chipotle Cottage Grove location, before he started working at the Ear of Corn Chipotle Restaurant, because his manager at the Cottage Grove location told him to download the application. (*Id.* at 205:6-12; Dkt. 111-1 at 25:5-14.) By the time he became General Manager of the Ear of Corn Chipotle Restaurant, Straitiff had an understanding that GroupMe was the primary form of communication given his experience at the Cottage Grove location. (Dkt. 111-1 at 55:13-24.) Straitiff could not recall whether he or another manager before him set up the GroupMe group for the Ear of Corn Chipotle Restaurant. (*Id.* at 52:18-25.) Straitiff testified that when he was the General Manager of the Ear of Corn Chipotle Restaurant, he had administrator rights for "the GroupMe," and could add or remove people. (*Id.* at 53:1-11.) Straitiff believed that his GroupMe account was through Chipotle, not a personal account. (*Id.* at 54:23-55:9.)

Straitiff also testified that when a new employee started at the Ear of Corn Chipotle Restaurant, he told them that GroupMe was "our way of communicating as a team, as a store, so that any kind of broad messages that need to get to everybody at a certain period of time, could get to everybody without having to text everybody individually." (*Id.* at 53:20-54:1.) When his employment with Chipotle ended, someone took him off the GroupMe account for the Ear of Corn Chipotle Restaurant. (*Id.* at 80:17-24.) Straitiff testified that he had access to two GroupMe groups, one for the Ear of Corn Chipotle Restaurant and one created by a Field Leader for the General Managers and Apprentices[4] of each store under that Field Leader to communicate. (*Id.* at 78:2-15,

---

[4]    Straitiff testified that an Apprentice "is basically an assistant manager to the general manager." (Dkt. 104-12 at 25:2-4.)

79:20-24.)  Straitiff was added to that second group by his Field Leader.  (*Id.* at 79:18-19.)

As to other forms of communication, Straitiff also testified that he communicated with other managers (including Kitchen Manager Jacari Miller and Service Manager Alleigha Shapiro)[5] at the Ear of Corn Chipotle Restaurant via phone and text.  (*Id.* at 81:7-21.)  Straitiff further testified that the primary manner by which he communicated with his Field Leader was via phone and text messages using his personal phone.  (*Id.* at 51:20-25.)  Straitiff also testified that he did not use GroupMe to communicate with Field Leaders, Chipotle corporate, or any other Chipotle management.  (*Id.* at 77:11-17.)

Similar to Straitiff, Famuyide testified that the platform she used to communicate with coworkers and managers at Chipotle was GroupMe, and that after her employment ended, she lost access to the group chat.  (Dkt. 104-13 at 131:8-132:7.)  However, Famuyide also testified that she was able to find messages on the GroupMe account between her and other Chipotle employees, which she gave to her lawyer.  (*Id.* at 132:8-18.)

Also relevant is the testimony of Matthew Whiting, Chipotle's Manager of Respectful Workplace Hotline.  (Dkt. 114-1 at 10:16-20.)  Whiting testified that as part of an investigation into a claim of sexual harassment, Chipotle would "talk to witnesses and reporters or even implicated, we ask if they have any physical evidence, whether that be

---

[5]     Jacari Miller is referred to as both a Kitchen Leader and Kitchen Manager in the briefing and discovery responses.  (*E.g.*, Dkt. 104-5 at 4; Dkt. 104-12 at 71:1-6, 95:13-21.)  Alleigha Shapiro is referred to as a Service Manager (*e.g.*, Dkt. 104-12 at 67:1-3), but the Court notes that Chipotle has also used the term Service Leader in its discovery responses (*e.g.*, Dkt. 104-5 at 11).

phone call records, text messages, e-mails, even social media, anything that could, I guess, prove their allegations or disprove their allegations"; if a manager refused to provide communications because they were on their personal device, they could be disciplined given Chipotle's anti-harassment policy; and he was aware of cases where Chipotle had required employees to turn over their personal phones for imaging.  (Dkt. 114-1 at 55:6-56:6.)  Whiting testified that he had collected "a lot of different types of messages that [were] group messages" as part of his investigations, but could not "say 100 percent that the specific app was GroupMe."  (*Id.* at 56:19-23.)  Whitting also testified that Chipotle employees were free to delete information on their personal cell phones, Chipotle had no control over employees' personal devices, and to the extent messages were obtained, it was due to a request and compliance was voluntary.  (*Id.* at 224:13-225:10.)

### 2.  Discussion

Famuyide argues that Chipotle has control over work-related communications on its employees' phones for purposes of Rule 34 of the Federal Rules of Civil Procedure, and therefore an obligation to preserve and collect those communications.  (Dkt. 105 at 16-17.)  Famuyide relies on Straitiff's testimony as well as her own to support this argument.  (*Id.* at 13-14.)  She also relies on Whiting's testimony in her supplemental brief.  (Dkt. 122 at 3-5.)

Chipotle claims that it does not possess or control communications sought by Famuyide on employees' personal devices, as store-level managers are not issued company phones or company email addresses, and Chipotle does not endorse, license,

11

authorize, or otherwise encourage its restaurant employees to use GroupMe or any other third-party messaging application for work-related communications. (Dkt. 110 at 6-7.) In other words, Chipotle takes the position that it does not possess or control Chipotle employees' personal mobile devices or communications for the purposes of Rule 34. (*Id.* at 7-10.) Chipotle argues that it does not have the "legal right" to obtain such messages. (Dkt. 149 at 1-5.) Chipotle also contends that Famuyide "still has not offered competent evidence supporting the claim that relevant communications on such identified employees' phones ever existed." (*Id.* at 5.)

Under Rule 34, a party may request any other party to produce and permit the requesting party or its representative to inspect, copy, test, or sample "designated documents or electronically stored information" that are "in the responding party's possession, custody, or control" and "within the scope of Rule 26(b)." Fed. R. Civ. P. 34(a)(1). "[C]ontrol is defined as the legal right, authority, or ability to obtain upon demand documents in the possession of another." *Prokosch v. Catalina Lighting, Inc.*, 193 F.R.D. 633, 636 (D. Minn. 2000) (citation modified). That said, the majority of courts within this District have also concluded that under Rule 34, "'control' does not require that the party have legal ownership or actual physical possession of the documents at issue; rather, documents are considered to be under a party's control when that party has the right, authority, **or practical ability**, to obtain the documents from a non-party to the action." *Id.* (citation modified) (emphasis added); *see also Ecolab, Inc. v. IBA, Inc.*, No. 22-CV-479 (ECT/DTS), 2024 WL 2382548, at *6-7 (D. Minn. Mar. 12, 2024), *objections sustained in part and overruled in part*, No. 22-CV-479 (ECT/DTS),

2024 WL 3440198 (D. Minn. July 17, 2024) ("Parties may have 'control' over documents in the possession of non-parties if they have the 'practical ability' to obtain them."); *Evenson v. Johnson Bros. Liquor Co.*, No. 18-CV-3188 (JRT/LIB), 2020 WL 12948540, at \*8 (D. Minn. May 19, 2020) ("Control, as that word is used in Rule 34, 'does not require that the party have legal ownership or actual physical possession of the documents and other tangible objects at issue; rather, documents and other tangible objects are considered to be under a party's control when that party has the right, authority, or practical ability to obtain the documents and other tangible objects from a non-party to the action." (citation modified)) (quoting *Shim-Larkin v. City of New York*, No. 16-cv-6099 (AJN/KNF), 2019 WL 5198792, at \*10 (S.D.N.Y. Sept. 16, 2019)); *Damgaard v. Avera Health*, No. CV 13-2192 (RHK/JSM), 2014 WL 12599853, at \*2 (D. Minn. June 9, 2014) ("Courts in this jurisdiction and other jurisdictions subscribe to the proposition that control not only encompasses actual physical possession of the documents, but also the legal right or practical ability to demand the documents from a third party."); *Afremov v. Sulloway & Hollis, P.L.LC.*, Case No. 09-cv-03678 (PSJ/JSM), 2011 WL 13199154, at \*2 (D. Minn. Dec. 2, 2011) ("'Control' encompasses actual physical possession of the documents, but also the legal right or practical ability to demand the documents from a third party.") (collecting cases).

Chipotle cites to *In re Pork Antitrust Litigation*, No. 18-CV-1776 (JRT/HB), 2022 WL 972401 (D. Minn. Mar. 31, 2022), for the proposition that under Rule 34, the only reliable approach that defines control is the "legal right" to obtain and produce

13

documents and ESI on demand.  (*See* Dkt. 110 at 8.)  The court in *In re Pork Antitrust Litigation* noted in dicta that:

> [T]he Eighth Circuit has never decided whether the "legal right" or "practical ability" standard should govern, and other circuits are split on the issue. *See generally*, The Sedona Conference, Commentary on Rule 34 and Rule 45 "Possession, Custody, or Control," 17 Sedona Conf. J. 467, 482-92 (2016) (collecting cases). Indeed, in part because of that variability, the Sedona Conference has urged adoption of a consistent, "reliable, objective approach" that defines control "as the legal right to obtain and produce the Documents and ESI on demand." *Id.* at 528. The Sedona Conference has criticized the "practical ability" standard on several grounds, including that its imprecision "has resulted in inconsistent and, at times, inequitable results in many contexts." *Id.* It describes the standard as "inherently vague," "unevenly applied," having the potential to lead to "disparate results," and potentially leading to inequitable or even "futile" results. To that last point, the commentary cites by way of example one court's observation that even if it were to order a party employer to collect and turn over personal emails of its employees, the moving party had not identified any authority under which the employer could *force* the employees to turn them over. *Id.* at 542 n. 126, citing *Matthew Enter., Inc. v. Chrysler Grp. LLC*, Case No. 13-cv-04236-BLF, 2015 WL 84982256 (N.D. Cal. Dec. 10, 2015).

2022 WL 972401, at *4.  But the *In re Pork Antitrust Litigation* court did not ultimately decide which standard applied, as it found that the party seeking discovery had not established control under either standard.[6]  *Id.*

The Court follows the majority of courts in this District finding that both a legal right or practical ability to obtain documents suffices for purposes of finding control under Rule 34.  To find otherwise would allow employers to require employees to use personal phones for business purposes, in part, to impede the ability of employees to bring claims against their employers in court.  *See United States v. Cameron-Ehlen Grp.,*

---

[6]      In any event, the *In re Pork Antitrust Litigation* decision is not binding on this Court.

*Inc.*, No. 13-CV-3003 (WMW/DTS), 2020 WL 9209366, at *12 (D. Minn. July 10, 2020)

(finding that the defendants could not use a "bring-your-own-device" policy "to shield

themselves from an obligation to preserve relevant information on their employees'

personal devices"), *aff'd in part, rev'd in part sub nom. United States ex rel. Fesenmaier*

*v. Cameron-Ehlen Grp., Inc.*, No. 13-CV-3003 (WMW/DTS), 2021 WL 101193 (D.

Minn. Jan. 12, 2021).  The guidance of the Sedona Conference is not binding on this

Court, and the Court finds that the Sedona Conference's criticisms of the "practical

ability" test do not outweigh the benefits of that test and reality of litigation, including the

fact that many employers have a "bring-your-own device" policy and relying on a "legal

right" test could well result in employers intentionally encouraging employees to use

their personal devices for work-related purposes, benefiting from the employees doing so,

and yet shielding themselves from discovery if a "legal right" were required.  Concerns

around disparate outcomes and potential "futility" do not outweigh these considerations.

The Court turns to the "practical ability" test as described by the *In re Pork*

*Antitrust Litigation* court:

> In assessing whether a party has the practical ability to obtain documents
> from a non-party, courts have focused on the "mutuality" of the responding
> party's relationship with the document owner, including whether the
> documents sought are considered records which the party is apt to request
> and obtain in the normal course of business, or whether the prior history of
> the case demonstrates cooperation by the non-party, including the production
> of documents and other assistance in conducting discovery, and the non-party
> has a financial interest in the outcome of the litigation.  *See Afremov*, 2011
> WL 13199154, at *2 (D. Minn. Dec. 2, 2011) (collecting cases).

2022 WL 972401, at *4.

Famuyide argues that "Chipotle has never disputed that it has the practical ability to obtain work-related communications on its managers' cell phones" and could not do so because Chipotle's "policies and practices, along with significant caselaw, readily establish that an employer has the practical ability to obtain evidence in its employees' possession—including evidence on employees' personal devices." (Dkt. 122 at 2.) Famuyide also argues that Chipotle has legal control over its employees' personal devices by virtue of three sections of the Chipotle Employee Handbook effective as of April 2021: the Technology and Information section, the Searches and Inspections section, and the Equal Opportunity Policies section. (Dkt. 122 at 2-3; *see also* Dkt. 104-15 at 12 (Equal Opportunity Policies), 52 (Searches and Inspections), 55 (Technology and Information).)

The Court finds that Chipotle has the practical ability to access work-related communications on its employees' personal devices. The Equal Opportunity Policies section of the Employee Handbook states that all complaints of unlawful harassment reported to management will be investigated, "Chipotle prohibits employees from refusing to cooperate with internal investigations and the internal complaint process," and "**Violation of this policy will subject an employee to disciplinary action, up to and including immediate termination.**" (Dkt. 104-15 at 15.) Moreover, Whiting testified that Chipotle, when investigating claims of sexual harassment, would request "phone call records, text messages, emails, even social media, anything that could, I guess, prove their allegations or disprove their allegations," a manager's refusal to turn over such evidence because it was on a personal phone could result in discipline, and he was aware

16

of cases where Chipotle had "required the employee to turn over their personal phone for imaging." (Dkt. 114-1 at 55:6-56:6.)  He further testified that "we actually have as part of our sexual harassment policy or antiharassment policy that managers are required to participate in the investigation so we would – we would do everything we could to get that" when asked about whether Chipotle takes action to require employees to provide documentation when communications are on their personal phones.  (*Id.* at 55:13-56:1.)

It is clear from the Employee Handbook and this testimony that Chipotle is "apt to request and obtain in the normal course of business" communications on employees' personal phones as part of an investigation into sexual harassment.  *See In re Pork Antitrust Litig.*, 2022 WL 972401, at *4.  It is also clear that a Chipotle employee has a financial interest in the outcome of a lawsuit against Chipotle and has an interest in cooperating with Chipotle (or face discipline).  While Chipotle cannot forcibly seize an employee's personal phone, Chipotle has the practical ability to request work-related communications from an employee's personal phone and request the phone for purposes of imaging—and has done so in the past.  The Court has no question that Chipotle had the practical ability to obtain work-related communications from its employees' personal phones during the relevant time period for this case and, given that there is no evidence Chipotle's policies and practices in that regard have changed, still has that practical ability.[7]  As to Chipotle's argument that Famuyide has not shown relevant

---

[7]     Having found Chipotle had and has "control" for Rule 34 purposes due to its practical ability to obtain work-related communications on its employees' personal devices, the Court does not reach whether Chipotle had the "legal right" to obtain these communications.

communications existed, based on the testimony about how Ear of Corn Chipotle Restaurant employees used text messages and GroupMe to communicate about daily operations and other work-related matters, the Court finds sufficient basis to believe that responsive information may be found in those communications.

Accordingly, the Motion to Compel is granted as follows. Chipotle is ordered to produce all information and communications responsive to Famuyide's discovery requests obtained from any employee, including from their personal electronic devices, including with respect to the investigations conducted related to Famuyide and any complaints about Bailey's conduct. If Chipotle has not yet requested such responsive information and communications, it is ordered to make that request to its current employees. To the extent that Chipotle has no responsive information, it must state so in its supplemental discovery responses. Moreover, as set forth in the Order on Plaintiff's Motion to Compel and for Sanctions, Chipotle must present a witness on Topics 11, 12, 21, and 22, and Chipotle's preparation of that witness must include preparation as the facts establishing whether and when Chipotle obtained and preserved communications (including text messages and GroupMe messages) and other responsive information on its employees' personal devices.

## C.    Whether Chipotle's Responses to Requests for Production of Documents Properly Identify Withheld Documents

Famuyide argues that Chipotle's Responses to her Requests for Production of Documents are deficient because in many instances they fail to clearly explain whether Chipotle is withholding documents subject to its stated objections. (Dkt. 105 at 21-22.) The basis for this argument is that Chipotle supplemented a request for production by

18

identifying specific documents, leaving Famuyide "guessing as to whether additional documents, beyond those specifically identified by bates number, are being withheld subject to the litany of objections Chipotle asserted and then reaffirmed in its Supplemental Responses." (*Id.* at 21.)  Famuyide asserts that Rule 34 requires that Chipotle be ordered to supplement its written responses to Request Nos. 5, 6, 7, 9, 10, 11, 12, 13, 14, 16, 17, 18, 20, 21, 24, 28, 32, 33, 34, and 36 to state whether any documents are being withheld based on any objection. (*Id.* at 23.)

Chipotle contends that "Chipotle complied with its obligations.  Chipotle clearly states in both its original and supplemental responses where Chipotle is withholding information and timely produced a privilege log identifying the same." (Dkt. 110 at 20.)  It is true that Chipotle does state in some of its discovery responses that documents being withheld on privilege or work product grounds are identified on Chipotle's privilege log. (*See*, *e.g.*, Dkt. 104-4 at 22-23 (Request No. 16), at 25-26 (Request No. 18), at 26-27 (Request No. 19).)  But there is no instance that the Court can identify, nor has Chipotle pointed the Court any such instance, where Chipotle has stated that documents are being withheld for reasons other than privilege or work product protection (e.g., withheld due to objections based on relevancy, proportionality, burden, ambiguity, etc.).

Rule 34(b)(2)(C) provides that "[a]n objection **must** state whether any responsive materials are being withheld on the basis of that objection." Fed. R. Civ. P. 34(b)(2)(C) (emphasis added).  Further, the parties were reminded of their obligations under this Rule in the Pretrial Scheduling Order. (*See* Dkt. 72 at 3 ("Objections to document requests must meet the requirements of amended Rule 34(b)(2)(B)-(C).").)  Consistent with the

19

Rule, courts have concluded that parties must explain whether they were withholding documents on the basis of their objections. *See Smartmatic USA Corp. v. Lindell*, No. 22-CV-98 (WMW/JFD), 2023 WL 4882865, at *6 (D. Minn. Aug. 1, 2023) ("Smartmatic's motion is granted with respect to RFPs 3, 4, 5, 6, 9, 11, 12, 13, 14, 15, 16, 18, and 28, because Defendants did not explain whether they were withholding documents on the basis of their objections nor did Defendants provide an explanation sufficient to 'facilitate an informed discussion of the objection.' Therefore, Defendants shall provide a supplemental signed response to these RFPs providing such an explanation."); *Patterson Dental Supply, Inc. v. Pace*, No. 19-CV-1940 (JNE/LIB), 2020 WL 13032915, at *19 (D. Minn. Dec. 21, 2020) ("In response to each of the discovery requests presently at issue Plaintiff raised at least one objection. (*See*, Plf.'s Resps. to Defendant Henry Schein's RFP [Docket No. 265-13]). Consequently, a supplemental signed response to each request for production now at issue is required to affirmatively state whether or not Plaintiff is withholding any responsive material on the basis of any objection it raised to the respective request for production.") (footnote omitted).

In sum, Chipotle's obligations under Rule 34(b)(2)(C) and the Pretrial Scheduling Order are clear. Chipotle could have avoided this issue by simply stating that it was not withholding documents on grounds other than privilege and work product, and since Chipotle has not done so, it appears that Chipotle is in fact withholding documents on other grounds. Accordingly, the Court orders Chipotle to serve supplemental responses to Request Nos. 5, 6, 7, 9, 10, 11, 12, 13, 14, 16, 17, 18, 20, 21, 24, 28, 32, 33, 34, and 36 that state whether any documents are being withheld based on any objection (to the extent

Chipotle has not already done so) or state that no documents are being withheld as to any objections. Chipotle is reminded that: "An objection must state whether any responsive materials are being withheld on the basis of that objection. An objection to part of a request must specify the part and permit inspection of the rest." Fed. R. Civ. P. 34(b)(2)(C).

**D.      Scope of Discovery**

Famuyide served several discovery requests seeking information and documents relating to previous instances of sexual harassment, sexual assault, threats, and violence at Chipotle locations. As to company-wide requests, Famuyide requested documents and information reflecting prior EEOC findings against Chipotle related to sexual assault, sexual harassment, and/or workplace violence in Request for Documents No. 21 and Interrogatory Nos. 19 and 21; she requested documents and information relating to sexual assaults that have occurred or were alleged to have occurred at any Chipotle location from 2014 to present in Request for Documents No. 32 and Interrogatory No. 16; she requested information regarding lawsuits or arbitration in which Chipotle was accused of liability for sexual harassment or sexual assault in Interrogatory No. 20; and she requested identification of every registered sex offender Chipotle has hired from 2019 to present and what steps were taken to protect or inform other employees in Interrogatory No. 17. (*See* Dkt. 105 at 25.) As to the Ear of Corn Chipotle Restaurant, Famuyide requested documents relating to all acts of sexual harassment and acts or threats of violence or self-harm at the Rochester Chipotle from 2014 to present in Request for Documents Nos. 33 and 34; and information regarding complaints or concerns raised

21

with Chipotle regarding any managers who worked at the Rochester Chipotle during the period of Famuyide's employment in Interrogatory No. 18. (*See id.*)

Famuyide has since agreed to limit the scope of time and subject matter of the requests as follows: (1) company-wide requests are limited to instances of sexual assault and documents relating to EEOC consent decrees from 2011 through 2021 and (2) Ear of Corn Chipotle Restaurant requests are limited to sexual harassment, sexual assault, and workplace violence from 2016 through 2021. (*See* Dkt. 105 at 26 & n.8.) Famuyide argues that this discovery is not only relevant to her Minnesota Human Rights Act ("MHRA") and vicarious liability claims, but is also relevant to her claims against Chipotle for negligent hiring, retention, and supervision, and failure to provide a safe work environment, involving Chipotle's alleged failure to provide sexual harassment training to Famuyide, Bailey, and even some of the Ear of Corn Chipotle Restaurant managers, despite repeated EEOC consent decrees arising out of sexual harassment and retaliation lawsuits brought by former Chipotle employees who were sexually harassed and sexually assaulted in the workplace. (*Id*. at 24-26.) Famuyide claims that her sexual harassment and sexual assault at Chipotle follow this same pattern of supervisor neglect, failure to train, and failure to adequately supervise employees, and the discovery she seeks is relevant to the foreseeability of the harm. (*Id.* at 26-27; *see also* Dkt. 122 at 6.)

Chipotle counters that Famuyide fails to show that her company-wide requests for discovery relating to sexual assault and sexual harassment—"which span over 3,500 locations and six countries where Chipotle operates implicat[ing] hundreds of thousands or more employees over a ten-year period"—are relevant to her claim that Chipotle knew

or should have known "that Bailey would engage in the conduct that *he* is alleged to have engaged in." (Dkt. 110 at 20-21, 23.) Chipotle asserts that discovery of information related to prior claims of discrimination is properly limited to the employment practices at issue in the particular case, the facility and people implicated in the allegations, and a reasonable time period around the alleged discriminatory action; and that company-wide discovery is the exception and not the rule, and not proportional to the needs of the present case, including as to Famuyide's harassment claims, because Chipotle is no longer asserting an *Ellerth-Faragher* defense.[8] (*Id.*; *see also* Dkt. 149 at 7.)

As to the EEOC consent decrees, Chipotle asserts that they do not prove that unlawful employment practices occurred and should not be produced because they are inadmissible under Rule 408 of the Federal Rules of Evidence.[9] (Dkt. 110 at 22.) With respect to requests specific to the Ear of Corn Chipotle Restaurant, which also includes

---

[8]   The *Ellerth-Faragher* defense refers to the decisions by the United States Supreme Court, *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998), and *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998). This affirmative defense to a claim of supervisor sexual harassment "consists of two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior and (b) that the plaintiff employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise." *Fuller v. Fiber Glass Sys., LP*, 618 F.3d 858, 864 (8th Cir. 2010) (citation modified).

[9]   Chipotle has not explained why such evidence would be inadmissible in the present case given that "Rule 408 only prohibits admitting compromise evidence relating to a 'claim' that was disputed when the settlement negotiations or offer to compromise took place." *Heimerl v. Tech Elec. of Minn., Inc.*, No. 12-CV-612 SRN/SER, 2013 WL 3353930, at *4 (D. Minn. July 3, 2013). Here, the evidence at issue are orders entered by a court that are binding on Chipotle in terms of its workplace, which are not meant to prove or disprove the validity of the claims settled by the consent judgments. *See Weems v. Tyson Foods, Inc.*, 665 F .3d 958, 966 (8th Cir. 2011).

23

requests for documents relating to acts or threats of violence or self-harm at that location, Chipotle asserts that it produced documentation responsive to these requests—specifically, documents regarding a threat to a manager and an employee's act of self-harm at the Ear of Corn Restaurant—and that Famuyide's "subjective belief that more documentation should exist and that Chipotle's production is 'minimal' is not a valid basis to compel discovery."[10]  (*Id.* at 24.)

"[E]vidence of sexual harassment directed at employees other than the plaintiff is relevant to show a hostile work environment."  *Hall v. Gus Const. Co., Inc.*, 842 F.2d 1010, 1015 (8th Cir. 1988).  Further, "background evidence of an employer's discriminatory policies or practices may be critical for the jury's assessment of whether a given employer was more likely than not to have acted from an unlawful motive."  *McPheeters v. Black & Veatch Corp.,* 427 F.3d 1095, 1101 (8th Cir. 2005) (citation modified).  However, "[c]ourts have often limited the discovery of company records to the local facility, at which the Plaintiff was employed, in the absence of a showing of particularized need for regional or nationwide discovery."  *Onwuka v. Fed. Express Corp.*, 178 F.R.D. 508, 517 (D. Minn. 1997); *see also Sallis v. Univ. of Minn.*, 408 F.3d 470, 478 (8th Cir. 2005) ("Courts have also limited the discovery of company records to the local facility where plaintiff was employed, where there is no showing of the need for regional or nationwide discovery."); *Zuniga Escamilla v. SMS Holdings Corp.*, No. CV 09-2120 (ADM/JSM), 2011 WL 13243580, at *16 (D. Minn. June 28, 2011) ("Generally,

---

[10]   It is unclear whether Chipotle produced all documents responsive to these requests.  Chipotle must supplement its discovery responses and production consistent with this Order.

24

nationwide discovery of a corporation's records is not allowed in employment cases 'absent a showing of a particular need for the requested information.'") (quoting *Semple v. Fed. Express Corp.*, 566 F.3d 788, 794 (8th Cir. 2009)), *aff'd*, 2011 WL 5025254 (D. Minn. Oct. 21, 2011).

Plaintiff relies heavily on *Zuniga Escamilla v. SMS Holdings Corp.*, 2011 WL 13243580, for the proposition that nationwide discovery is necessary and appropriate with respect to complaints of sexual harassment because she has presented evidence that Chipotle's centralized Respectful Workplace department received and investigated all employee hotline calls and other calls.  (Dkt. 122 at 6.)  In *Zuniga Escamilla*, the court permitted nationwide discovery on the following basis:

> In this case, the Court finds that nationwide discovery is necessary and appropriate with respect to complaints of sexual harassment, so as to allow Zuniga to investigate and respond to SMS's reliance on the *Ellerth/Faragher* affirmative defense. Zuniga has presented evidence, which SMS has not contested, that SMS's Human Resources Department in Nashville, Tennessee handles all calls into the employee hotline regarding reports of harassment and conducts the investigations of these complaints. In addition, SMS represented at the hearing that if a supervisor receives a complaint, that complaint is routed to the Human Resources Department in Nashville for investigation and handling. Even assuming that the final decision regarding whether to discipline an employee based on a complaint may fall on an employee's local supervisor or manager, the fact that the intake and investigation of complaints are handled by SMS nationally dictates that SMS cannot limit its response only to the Ridgedale Mall or the region in which the Ridgedale Mall is located. To do so would deprive Zuniga of potentially relevant information as to whether SMS's intake, investigation and handling of the complaints was sufficient to find that its policies were reasonable and enforced, and by extension, whether SMS's reliance on the *Ellerth/Faragher* defense is appropriate. In short, SMS cannot on the one hand tout that it takes reasonable steps to prevent and correct promptly any sexually harassing behavior – a process in which in large part occurs at the national level of SMS – and at the same time, deprive Zuniga of the right to conduct her own investigation of the veracity of this claim.

25

2011 WL 13243580, at \*17.  As noted above, Chipotle represented to the Court that it is no longer pursuing the *Ellerth-Faragher* defense and has moved to amend the Answer to remove the affirmative defense.  (*See* Dkt. 136.)

Famuyide does not oppose the striking of the affirmative defense, but asserts that this does not save Chipotle from company-wide discovery, because in a coworker harassment case, Famuyide has the burden to show that after reporting the harassment and assault, Chipotle failed to respond in a prompt and effective manner.  (Dkt. 122 at 7 (citing *Kpou v. Supervalu, Inc.*, 556 F. Supp. 3d 940, 956 (D. Minn. 2021).)  In order to establish a prima facie case of discriminatory harassment under the MHRA, Famuyide will need show:

> (1) membership in a protected class; (2) the occurrence of unwelcome harassment; (3) a causal nexus between the harassment and their protected class; and (4) that the harassment affected a term, condition, or privilege of employment. *Anderson v. Durham D&M, LLC*, 606 F.3d 513, 518 (8th Cir. 2010). Where a plaintiff's claim stems from coworker harassment, the plaintiff must show a fifth element, that the employer "knew or should have known about the harassment and failed to respond in a prompt and effective manner." *Id.*; *Carter v. Atrium Hosp.*, 997 F.3d 803, 811 (8th Cir. 2021); *see also Vance v. Ball State Univ.*, 570 U.S. 421, 424, 133 S.Ct. 2434, 186 L.Ed.2d 565 (2013) (holding that an employer is liable for a harassing coworker if the employer is negligent in controlling the working conditions).

*Kpou*, 556 F. Supp. 3d at 956.

Here, Whiting, who is Chipotle's Manager of Respectful Workplace Hotline, testified that all reported harassment complaints from Chipotle's employee hotline, as well as reports from other employees, such as Field Leaders or Managers, are funneled into one centralized department at Chipotle, which handles investigating the

complaints.[11] (Dkt. 114-1 at 30:16-36:3.) During the relevant time period, communication regarding and management of complaints, including a summary of findings and corrective actions issued, were handled and contained using Ethicspoint, a centralized software management system. (*Id.* at 31:16-34:9, 58:3-13.) Chipotle used Ethicspoint to provide its board with a quarterly report summarizing information regarding employee complaints. (*Id.* at 58:17-59:19.) The information can be categorized by type of complaint and Chipotle's determination of whether a complaint was substantiated. (*Id.* at 58:17-59:19, 195:10-13.) Chipotle's use of Ethicspoint evidences a national approach to dealing with workplace issues, including sexual harassment and sexual assault.

Given that Famuyide will need to show that Chipotle knew or should have known about problems with sexual harassment and sexual assault in the Chipotle restaurant workplace and failed to respond in a prompt and effective manner (including negligently controlling the working conditions), similar to SMS in *Zuniga Escamilla*, Chipotle cannot on the one hand tout that it takes reasonable steps to prevent and promptly correct any sexually harassing behavior—a process which in large part appears to occur at the national level given the EEOC consent decrees, the use of Ethicspoint as a centralized and nationalized complaint intake and management system, and the regular updates given to the board based on Ethicspoint reports regarding employee complaints—and at the same time, deprive Famuyide of the right to conduct her own investigation of the veracity

---

[11]    The "Respectful Workplace" department was previously called the "Restaurant People Experience" Department. (*See* Dkt. 114-1 at 30:16-22.)

27

of Chipotle's description of those steps, where such investigation is critical to the merits of her hostile work environment claim with respect to coworker sexual harassment.

As set forth above, Famuyide proposed to limit certain discovery requests as follows: (1) company-wide instances of sexual assault and documents relating to EEOC consent decrees from 2011 through 2021 and (2) Ear of Corn Chipotle Restaurant requests are limited to sexual harassment, sexual assault, and workplace violence from 2016 through 2021. (*See* Dkt. 105 at 26 & n.8.)  The Court grants the Motion to Compel as to Request for Documents Nos. 21 and 32 and Interrogatory Nos. 16, 19, 20, and 21 as follows.[12]

As to EEOC consent decrees, Chipotle must produce documents in response to Request No. 21 reflecting prior EEOC findings against Chipotle and corrective actions taken by Chipotle to the extent those findings relate to sexual assault and/or sexual harassment. (*See* Dkt. 104-3 at 5.)  However, Chipotle is not required to produce responsive documents to the extent any such EEOC consent decrees relate only to workplace violence.  Chipotle must also answer Interrogatory Nos. 19 and 21 (Dkt. 104-2 at 8-9) as limited by Famuyide's narrowing agreement (*see* Dkt. 105 at 26 & n.8).

As to sexual assaults, Chipotle must respond to Request No. 32 by producing all documents referring or relating to all sexual assaults that have occurred at any Chipotle location. (*See* Dkt. 104-3 at 6.)  Chipotle must also respond to Interrogatory No. 16, which seeks a description of every threat or instance of sexual assault that has occurred, or was alleged to have occurred, at any Chipotle store in the United States from 2014 to

---

[12]   The Court addresses Interrogatory No. 17 in Section II.E.

28

the present and Interrogatory No. 20, which sought identification of every lawsuit or arbitration, from 2014 to the present in the United States, in which Chipotle was accused of direct or vicarious liability for sexual harassment or sexual assault, which the Court now understands is limited to instances where Chipotle was accused of liability for sexual assault.  (*See* Dkt. 104-2 at 8-9; *see also* Dkt. 105 at 26 n.8.)

Any assertions of burden or disproportionality as to Request for Production Nos. 21 and 32 and Interrogatory Nos. 16, 19, 20, and 21 are alleviated by the following. First, as to Request No. 32 and Interrogatory No. 16, Chipotle must only produce national nonprivileged information regarding sexual assaults contained within Ethicspoint (or a similar centralized software management system).  This, and the fact that Whiting testified that he personally only handled approximately 10 complaints of sexual assaults over a 6.5-year period (*see* Dkt. 114-1 at 78:2-13), leads the Court to conclude that it will not be overly burdensome for Chipotle to produce information relating to sexual assaults on a nationwide basis.  Similarly, the Court has no information from Chipotle suggesting that it would not have a centralized means to find all relevant EEOC consent decrees, and information regarding remedial measures taken in response.  It would be surprising if it was unduly burdensome for Chipotle to find this information, given that it could be held accountable by the EEOC for failure to comply.  The same is true for lawsuits and arbitration in which Chipotle was accused of direct or vicarious liability for sexual assault.  Chipotle has not set forth any evidence showing that or explained why obtaining this information about the EEOC consent decrees, lawsuits, and arbitrations would be unduly burdensome or disproportionate to the needs of the case.  *See Vallejo v. Amgen,*

*Inc.*, 903 F.3d 733, 743 (8th Cir. 2018) (finding that party seeking to limit discovery must "establish grounds for not providing the discovery that are specific and factual; the party cannot meet its burden by making conclusory allegations as to undue burden.") (citation modified).

The Court next addresses the temporal scope for Request for Production Nos. 21 and 32 and Interrogatory Nos. 16, 19, 20, and 21. Courts in this District have concluded that in cases involving sexual harassment and employment discrimination, a request for 9 years of personnel files for approximately 9 months of employment is not proportional to the needs of the case. *See Brinkman v. Sprinkler Fitters Loc. #417*, No. 19-CV-2981 (KMM/TNL), 2022 WL 420881, at *19 (D. Minn. Feb. 11, 2022); *see also Raddatz v. Standard Reg. Co.*, 177 F.R.D. 446, 448 (D. Minn. 1997) ("Moreover, we are troubled by the expansive time parameters of the Plaintiff's requested discovery which, if granted, would require the Defendant to produce documents and information which span more than ten years. We agree with those Courts that, in employment discrimination cases, have placed reasonable limits upon the time periods for which discovery responses must be produced."). "Courts have frequently tailored discovery requests, as to historic company records, to encompass a 'reasonable time period,' both before and after the discriminatory event being alleged." *Sallis*, 408 F.3d at 478 (quoting *Onwuka*, 178 F.R.D. at 517). However, no bright-line rule exists in terms of a proportional time period for discovery in employment cases. *See Dahl v. Wells Fargo Advisors, LLC*, No. CIV. 10-4696 ADM/FLN, 2012 WL 124986, at *3 (D. Minn. Jan. 17, 2012). Here given the lack of burden in terms of producing the responsive information as set forth above, and

the relevancy to Famuyide's claims, the Court orders Chipotle to produce responsive documents and information to Request for Production Nos. 21 and 32 and Interrogatory Nos. 16, 19, 20, and 21 for a slightly different period than the 2011 to 2021 proposed by Famuyide, and instead orders Chipotle to produce responsive documents and information from 2015 to the present.[13]  This temporal scope is tailored to issues of foreseeability as well as feasibility of subsequent measures potentially implemented by Chipotle after 2021.

The Court turns to the discovery specific to the Ear of Corn Chipotle Restaurant, namely Request for Production Nos. 33 and 34 and Interrogatory No. 18.  The discovery at issue is reproduced below:

> **REQUEST NO. 33**: Documents referring or relating to all acts of violence, or threats of violence or self-harm, at the Rochester Chipotle from 2014 to the present.
>
> **REQUEST NO. 34**: Documents referring or relating to all acts of sexual harassment at the Rochester Chipotle from 2014 to the present.
>
> * * *
>
> **INTERROGATORY NO. 18:** Describe all complaints or concerns raised with Chipotle about any of the managers identified in your Answer to Interrogatory No. 8.

(Dkt. 104-2 at 8; Dkt. 104-3 at 6.)

---

[13]    This temporal scope is consistent with the scope permitted as to Topic 23 (relating to EEOC consent decrees) by the Order on Plaintiff's Motion to Compel and for Sanctions.  As to Topic 18 (sexual assaults), this temporal scope is somewhat narrower in terms of historic information but broader insofar as it seeks information after 2021.  The Court finds these differences in temporal scope do not render either scope ordered by the Court disproportionate to the needs of the case, particularly given the minimal showing of burden.

31

Interrogatory No. 8, referenced in Interrogatory No. 18, sought identification of "every manager of the Rochester Chipotle from January 1, 2021 through December 31, 2021," along with additional information.  (Dkt. 104-2 at 7.)

Beginning with the Requests for Production, Defendants' responses to Request for Production Nos. 33 and 34 refer back to their response to Request for Production No. 14, which seeks "Records of all instances of harassment, self-harm, and/or workplace violence (whether actual or alleged) at the Rochester Chipotle from 2014 to the present," for which Chipotle identified responsive documents.  (Dkt. 104-6 at 6-7.)  It is unclear whether Chipotle has documents that are responsive to Request for Production Nos. 33 and 34 that are not responsive to No. 14.  To make Chipotle's obligations clear, Chipotle is ordered to produce documents in response to Request for Production Nos. 33 and 34 to the extent they have not already been produced in response to Request for Production No. 14.  Moreover, as discussed above, Chipotle must supplement its discovery responses to state that there are no additional documents to produce, that additional documents are being produced, or that documents are being withheld based on objections, consistent with this Order.  Insofar as Request for Production No. 33 seeks documents referring or relating to all acts of violence, or threats of violence, the Court finds such documents relevant to the claims in this case based on Famuyide's allegations of Bailey's sexual harassment, sexual assault, "threatening and aggressive behavior," "increasingly aggressive" behavior, and "violent tendencies."  (*E.g.*, Dkt. 1 ¶¶ 1, 28, 36, 71, 73-74.)  As to temporal scope, Famuyide agreed to limit these requests to 2016 to 2021.  (Dkt. 122 at

32

26 & n.8.)  The Court finds that temporal scope reasonable given that the information sought pertains to one Chipotle location (the Ear of Corn Chipotle Restaurant).[14]

As to Interrogatory No. 18, Defendants' concerns focused on what types of complaints were encompassed by the interrogatory and the temporal scope of January 1, 2021 through December 31, 2021 identified in Interrogatory No. 8 given that Plaintiff was hired in May 2021.  (*See* Dkt. 104-5 at 13-14, 25-26.)  The Court finds that information about complaints made relating to sexual harassment, sexual assault, and workplace violence at the Ear of Corn Chipotle Restaurant for a 12-month period of time is proportionate to the needs of the case given Famuyide's claims in this case, including her allegation that "managers were aware of Bailey's violent tendencies" due to an altercation he had with another employee and other similar allegations relating to Bailey.[15]  (*E.g.*, Dkt. 1 ¶¶ 1, 28, 36, 71, 73-74.)

## E.    Discovery Related to Criminal Background Checks

As of the date of this Order, Famuyide argues that she is entitled to an order requiring Chipotle to supplement its responses to the following discovery:

> Int. No. 8 (identify all employees at Ear of Corn who were subject to a criminal background check), Int. No. 17 (identify every registered sex

---

[14]    The Court recognizes that its Order on Plaintiff's Motion to Compel and for Sanctions requires Chipotle to present a witness on Topic 17 to testify about Chipotle's knowledge of workplace violence, self-harm, threats, and harassment in the Rochester Chipotle location from 2015 through 2021.  The Court considered permitting discovery in response to Request for Production No. 33 and 34 for the same time frame, but adopts the slightly narrower 2016 through 2021 scope proposed by Famuyide.

[15]    The Court recognizes that Topic 19, which seeks some related information, has a time frame from January 2020 to December 2021.  Here, Interrogatory No. 18 seeks only information from January 1, 2021 to December 31, 2021, so that is what the Court has ordered.

offender Chipotle has hired), Doc. Req. No. 9 (documents about background check policies); and Doc. Req. No. 24 (documents reflecting reasons managers are no longer employed).

(Dkt. 122 at 11.)

Famuyide's argument is based on part on the testimony of Chipotle employee Faith Sorenson, one of her coworkers at the Ear of Corn Chipotle Restaurant during the relevant time period, who testified that Sorenson's now-husband was hired as an Apprentice at the Ear of Corn Chipotle Restaurant right after Famuyide's assault, to replace Straitiff, who had checked himself into rehab for alcoholism days after the assault, but that Chipotle terminated Sorenson's husband's employment in December 2021 (maybe January 2022) after his employment began after running a criminal background check on him. (Dkt. 114-2 at 88:22-89:22, 90:7-8.) Sorenson testified that her husband has a conviction for criminal sexual conduct. (*Id.* at 90:17-19.) Sorenson also testified that her husband was rehired as a non-manager crew member at a different Chipotle restaurant but then was terminated for a second time after he had started because of the results of a background check. (*Id.* at 95:14-96:14.) It is unclear whether Chipotle conducted a second background check or if Sorenson's husband's termination was related to the previous background check, although Sorenson's testimony with respect to her husband's termination as a non-manager crew member suggests she believes Chipotle did run a second background check. (*See id.* at 95:21-23.)

Famuyide argues that Interrogatory Nos. 8 and 17 and Request for Production Nos. 9 and 24 seek information relevant to whether Chipotle should have conducted a background check on crew members when Chipotle conducts them on Kitchen Leaders;

34

whether Chipotle should, at a minimum, review sex offender status before hiring; whether Chipotle had constructive knowledge of Bailey's criminal background; whether Bailey's conduct was foreseeable; and whether Chipotle "failed to respond in a prompt and effective manner" to Famuyide's report of harassment on November 23, 2021.  (Dkt. 122 at 8-9.)  Chipotle counters that Famuyide is not entitled to this discovery as "her negligent hiring claim rests on the unsupported premise that Chipotle had a duty as a matter of law to conduct criminal background checks of entry-level employees with no supervisory or managerial authority over any other employee."  (Dkt. 149 at 10.) Chipotle also asserts that such background checks are disfavored under Minnesota law. (*Id.* (citing Minn. Stat. § 364.021).)[16]  The Court addresses Interrogatory Nos. 8 and 17 and Request for Production Nos. 9 and 24 below.

Beginning with Request for Production No. 9, in her initial memorandum, Famuyide sought background check policies from Chipotle from 2014 through the present in response to this request.  (Dkt. 105 at 29.)  Chipotle refused to produce responsive documents.  (Dkt. 104-4 at 12-14.)  However, Chipotle at some point produced the Employee Handbook (effective April 2021), which states: "Chipotle

---

[16]    The Court notes that Minnesota does allow background checks to occur before employment as follows:

> A public or private employer may not inquire into or consider or require disclosure of the criminal record or criminal history of an applicant for employment **until** the applicant has been selected for an interview by the employer or, if there is not an interview, before a conditional offer of employment is made to the applicant.

Minn. Stat. § 364.021(a) (emphasis added).

reserves the right to conduct background screening on all of its employees.  Should you

have any questions regarding Chipotle's background screening policy, please contact

your PEP if you are in the RSC, or the RPE Team if you are in a restaurant."  (Dkt. 104-

15 at 51.)

In addition, Chipotle answered Interrogatory No. 6, which sought a description of

"Chipotle's policies and practices with respect to conducting background checks for its

employees, from 2014 to the present," in part as follows:

> C-Services instituted a criminal background check policy requiring that the
> following restaurant employees be subject to criminal background checks—
> whether they were hired or promoted into the role: Kitchen Leader, Service
> Leader, Apprentice, and General Manager. Crew Members and Cashiers
> were not subject to this policy. These requirements remained the same during
> Famuyide's employment with C-Services.

(Dkt. 104-5 at 11.)[17]  That said, Chipotle refused to provide information regarding

background check policies in place after Famuyide's employment ended, asserting that

they would be inadmissible under Rule 407 of the Federal Rules of Evidence.  (*Id.*)

Beginning with relevance, as pleaded in her Complaint, Famuyide alleges that her

negligent hiring, retention, and supervision claim is based on the following:

> Here, Chipotle breached its duty to Famuyide in multiple respects. First,
> Chipotle failed to conduct a simple background check as to Bailey that would
> have easily disclosed his violent history. Second, Chipotle failed to
> consistently staff the Rochester store with competent and professional
> managers who could ensure the safety of the work environment. Third,
> Chipotle knew or should have known of Bailey's ongoing harassment of
> Famuyide and failed to take steps to ensure Famuyide's safety. Alternatively,
> Chipotle failed to appropriately supervise Bailey and therefore was not fully
> aware of his violent propensities. Fourth, Chipotle failed to prevent or
> intervene to stop the assault in November 2021, leaving Famuyide vulnerable
> to a violent assault during work hours. Fifth, Chipotle failed to appropriately

---

[17]    "C-Services" refers to Defendant Chipotle Services, LLC.  (Dkt. 104-5 at 1.)

respond to Famuyide's report of sexual assault, instead threatening to fire her, actually firing her, and directing her to clean the restroom where the assault occurred.

(Dkt. 1 ¶ 119.)

Chipotle is correct that as alleged, Chipotle had no legal obligation to make an inquiry as to Bailey's criminal record as a prospective employee. Indeed, the Minnesota Supreme Court rejected the proposition that "as a matter of law, there exists a duty upon an employer to make an inquiry as to a prospective employee's criminal record." *Ponticas v. K.M.S. Invs.*, 331 N.W.2d 907, 913 (Minn. 1983). However, whether an employer conducted a background check prior to hiring an employee may be relevant where the employer has information that the potential hire was a risk. *See Hines v. Aandahl Const. Co., LLC*, No. A05-1634, 2006 WL 2598031, at *2 (Minn. Ct. App. Sept. 12, 2006) ("Patterson knew that Cain would enter private residences to paint; he was aware of Cain's chemical dependency and criminal history, in particular of Cain's recent theft of another client's laptop. Yet Patterson failed to inquire into Cain's suitability by conducting a background check or investigating Cain's chemical dependency issues. The evidence supports the jury's determination that Metropolitan breached its duty by not taking reasonable care in hiring Cain."). Moreover, as noted above, an employer is liable for a harassing coworker if the employer is negligent in controlling the working conditions, which is assessed through a totality of the circumstances. *See Vance*, 570 U.S. at 424; *Small v. Garland*, No. 18-CV-5659 (BCM), 2021 WL 1226979, at *15 (S.D.N.Y. Mar. 31, 2021).

37

Further, while a failure to conduct a background check on employees might not on its own constitute sufficient evidence of Chipotle's negligence in controlling the work environment, such a failure combined with other evidence (such as EEOC consent decrees requiring Chipotle to take remedial actions) may be relevant to Famuyide's hostile work environment, negligent supervision, and negligent retention claims. Regardless, the Court will not permit Chipotle to characterize its criminal background check policies in its answer to Interrogatory No. 6 (*see* Dkt. 104-5 at 11) while denying Famuyide the opportunity to review those policies to test Chipotle's characterization and interrogatory answer.  The Court further notes that Chipotle's response to Interrogatory No. 6 stating crew members and cashiers are not subject to background checks is (at least) somewhat inconsistent with the Employee Handbook, which states that "Chipotle reserves the right to conduct background screening on all of its employees."  (*See* Dkt. 104-15 at 51.)  This inconsistency suggests that testing Chipotle's response to Interrogatory No. 6 is necessary and appropriate.

That said, the Court will only require Chipotle to produce background check policies in response to Request No. 9 that were in effect when Bailey was hired and through the present.  While the Court acknowledges that Rule 407 prohibits the admission of subsequent remedial measures to prove culpability or negligence, *see* Fed. R. Civ. P. 407, and that institution of a background check policy for crew members after Famuyide's employment with Chipotle ended could constitute such a remedial measure, this discovery could lead to admissible evidence as to other matters, such as the feasibility of requiring background checks for crew members and cashiers.

38

Turning to a related issue, it appears that Famuyide now seeks identification of all employees at the Ear of Corn Chipotle Restaurant who were subject to a criminal background check in response to Interrogatory No. 8. (*See* Dkt. 122 at 11.) Interrogatory No. 8 asks Chipotle to:

> Identify every manager of the Rochester Chipotle from January 1, 2021 through December 31, 2021 and for each such manager, please state (even if you claim to represent them): (1) full name; (2) last known address; (3) last known email address; (4) dates of employment; (5) positions held with Chipotle; and (6) the last time You had contact with such employee or former employee. In your Answer, you should include all managers with oversight of the Rochester Chipotle, including area managers, district managers, store managers, line managers and kitchen managers (by way of example).

(Dkt. 104-2 at 7.) After making several objections, Chipotle identified several people, as well as documents by Bates number, in its response. (Dkt. 104-4 at 13-15.) The Court denies the Motion to Compel insofar as it seeks identification of all Ear of Corn Chipotle Restaurant employees subject to a criminal background check, as that information is not sought by Interrogatory No. 8. (*See* Dkt. 104-5 at 13.)

Interrogatory No. 17 asks Chipotle to: "Identify every registered sex offender Chipotle has hired from 2019 to the present and describe what steps were taken to inform/protect employees who would be working with such offenders." (Dk. 104-5 at 24-25.) Chipotle made a number of objections including based on scope and relevance. (*Id.*) The Court finds there is some merit to the scope objection to the extent it is based on "non-restaurant employees." (*Id.* at 25.) As such, the Court will limit this request to restaurant employees given the issues in this case. Further, the Court will not require Chipotle to individually search each and every of its 3000-plus restaurants for responsive information, but instead will require Chipotle respond with the information available

from Ethicspoint or, to the extent Chipotle has other centralized software systems, records, or databases that would contain responsive information to this interrogatory, from such sources.  If Chipotle does not have any additional such systems, records, or databases that would contain responsive information, Chipotle must state as much in the response.  As to relevance, this information relating to registered sex offenders hired by Chipotle beginning in 2019 and continuing to the present, along with any steps Chipotle took to inform and protect its other employees, is plainly relevant in a case where Famuyide brings claims based on Chipotle's hiring of a registered sex offender who sexually assaulted her in a Chipotle bathroom.  The Court finds the request, as limited by this Order, is proportionate to the needs of the case.

Request for Production No. 24 seeks "[d]ocuments reflecting or pertaining to the reasons any of the managers identified in response to Interrogatory No. 8 are no longer employed by Chipotle."[18]  (Dkt. 104-4 at 32.)  Again, Interrogatory No. 8 sought identification of every manager of the Ear of Corn Chipotle Restaurant in 2021.  (Dkt. 104-2 at 7.)  It appears that Chipotle produced some documents in response to this Request.  (*Id.* at 34.)  However, Plaintiff expresses doubts that Chipotle's document production was adequate given that Sorenson's husband was hired as an Apprentice to

---

[18]    Chipotle objected to Interrogatory No. 18 as ambiguous as to "managers" because "It is unclear whether this term is restricted to General Managers or also includes Kitchen Leaders, Service Leaders, and/or Apprentices."  (Dkt. 104-5 at 21.)  But as to Interrogatory No. 8, which seeks information about "managers," Chipotle identified Jacari Miller (*id.* at 15), who was a Kitchen Leader (*id.* at 4).  For avoidance of doubt, the term "manager" in Interrogatory No. 8, and other discovery referring to that interrogatory, includes Kitchen Leaders, Service Leaders, and Apprentices, as well as General Managers and other titles including the word "manager."

replace a General Manager, lost that position in December 2021 or January 2022 due to a criminal background check, and then lost a crew member position at a Chipotle restaurant due to a criminal background check, yet it appears no responsive documents relating to his terminations were produced. (*See* Dkt. 122 at 11 ("Famuyide served several discovery requests [including Request for Production No. 24] which—had they been answered properly—would have revealed the facts about [Sorenson's husband].").) The Court agrees with Plaintiff's concerns about the adequacy of Chipotle's document production. Accordingly, Chipotle is ordered to produce documents in response to Request for Production No. 24 as to anyone who had the title of manager (e.g., Store Manager, General Manager, Line Manager, Service Manager, or Kitchen Manager), was hired as an Apprentice, or was hired as a Kitchen Leader or Service Leader that worked at the Ear of Corn Chipotle Restaurant from January 1, 2021 through December 31, 2021 and is no longer employed by Chipotle. If Chipotle has no further responsive documents in its possession, custody or control, Chipotle must state that fact in its supplemental response.

### III.   ORDER

Based on the files, records, and proceedings herein, **IT IS ORDERED THAT**:

1.   Defendant Chipotle Services, LLC's Motion for Leave to Extend Plaintiff's Deposition (Dkt. 92) is **DENIED**, and

2.   Plaintiff's Motion to Compel Discovery (Dkt. 100) is **GRANTED** in part and **DENIED** in part consistent with this Order.

3.   Defendants shall produce to Plaintiff all discovery ordered by the Court on

or before **April 2, 2026**, unless a timely objection to this Order is filed.

DATED: March 18, 2026                    *s/Elizabeth Cowan Wright*
                                          ELIZABETH COWAN WRIGHT
                                          United States Magistrate Judge