**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Eniola Famuyide,

Plaintiff,

v.

Chipotle Mexican Grill, Inc., and
Chipotle Services, LLC,

Defendants.

Case No. 23-cv-01127 (DFW/ECW)

**ORDER**

---

This matter came before the Court on Defendant Chipotle Services, LLC's Motion for Protective Order (Dkt. 124) and Plaintiff's Motion to Compel and for Sanctions (Dkt. 158). The Court held a hearing on the Motions on September 30, 2025, at which Pamela Abbate Dattilo, Lukas Boehning, and Bailey Stubbe of Eckland & Blando, LLP appeared on behalf of Plaintiff and Matthew Treco and Colyer Montgomery of Martenson, Hasbrouck, & Simon LLP appeared on behalf of Defendants.[1]  (Dkt. 169.)  For the reasons stated below, the Court denies the Motion for Protective Order, and grants Plaintiff's Motion to Compel and for Sanctions except insofar as it seeks evidentiary sanctions.

## I.    BACKGROUND

Plaintiff Eniola Famuyide filed the Complaint in this matter on April 20, 2023, alleging that Defendants hired a registered sex offender, Lionell Bailey, who sexually

---

[1]    A court reporter was present at the September 30, 2025 hearing, but no party has ordered the transcript.

harassed and sexually assaulted[2] Plaintiff in the Chipotle restaurant ("Ear of Corn Chipotle Restaurant") where she worked.  (Dkt. 1 at 1.)[3]  The Court subsequently issued a scheduling order which required fact discovery to be complete by April 15, 2025.  (Dkt. 72 at 3.)  However, on April 9, 2025, the parties jointly moved to amend the scheduling order.  (Dkt. 76.)  The Court granted the motion and issued a new scheduling order, extending the deadline to complete fact discovery to July 29, 2025.  (Dkt. 78 at 2.)

On May 30, 2025, Plaintiff noticed a Rule 30(b)(6) deposition of Defendants for June 20, 2025.  (Dkt. 160-1.)  The notice identified 23 topics.  (*Id.*)  On June 6, 2025, Defendants responded with objections to all but three topics (Topics 1, 9, and 20), and said that it would not be possible to designate and prepare a witness by June 20, 2025.  (Dkt. 160-2.)  Defendants also objected to the deposition taking place in Minneapolis.  (*Id.* at 4.)

The parties met and conferred regarding Defendants' objections on June 26, 2025, and on June 27, 2025, Plaintiff served an amended deposition notice on Defendants.  (Dkt. 160 ¶ 2; Dkt. 160-3.)  The amended notice revised many of the topics based on Defendants' objections and the subsequent meet-and-confer process and added one additional topic.  (Dkt. 160 ¶ 2.)  It also withdrew Topic 2, which sought "Chipotle's factual basis for your defense that Chipotle Mexican Grill, Inc. is not a proper defendant

---

[2]    On January 23, 2024, Bailey pleaded guilty to criminal sexual conduct in the third degree in violation of Minn. Stat. § 609.344, subd. 1(a) (use of coercion to accomplish sexual penetration) in connection with his conduct towards Plaintiff on November 23, 2021.  (*See* Dkt. 133-5.)

[3]    Unless otherwise indicated, page number citations are to the CM/ECF pagination.

in this case," and stated Plaintiff would instead issue a separate Rule 30(b)(6) notice as to Defendant Chipotle Mexican Grill, Inc.  (Dkt. 160-3 at 3.)  Plaintiff also amended the date and time of the noticed deposition to August 12, 2025 in Newport Beach, California, to accommodate Defendants' request.  (Dkt. 160 ¶ 3; Dkt. 160-3 at 1.)  Although the August 12, 2025 date fell after the fact discovery deadline, Defendants requested that date and Plaintiff agreed so that Defendants would have adequate time to prepare their corporate representative.  (Dkt. 160 ¶ 3.)

On July 7, 2025, Defendants sent a letter to Plaintiff, signed by their attorney Matthew Treco, withdrawing their objections to five topics (Topics 5, 6, 8, 14, and 15) based on Plaintiff's amendments.  (Dkt. 160-4 at 1.)  This, in conjunction with Defendants' previously stated lack of objections to Topics 1, 9, and 20, meant that as of July 7, 2025, Defendants had no objections to eight of the remaining 22 noticed topics.  (*See* Dkts. 160-2, 160-4.)  On July 28, 2025, Defendants contacted the Court to request an informal discovery conference related to the 30(b)(6) deposition topics, which took place in person on July 30, 2025, after the Court heard argument on several other motions.  (*See* Dkt. 119.)  At the hearing, the Court suggested that, because there was insufficient time for the Court to hear a formal motion before the deposition, the deposition should proceed, counsel should try to resolve the issues and "get through the deposition," and if they could not, leave the deposition open pending a subsequent motion to resolve outstanding issues.  (Dkt. 160-6 at 79:14-80:3.)[4]  Plaintiff's counsel agreed, and when the

---

[4]      Transcripts are cited in page:line format.

Court asked counsel for Defendants whether that worked for them, Mr. Treco responded "I certainly have had that experience before.  I'm trying to envision how that works.  It would be the plaintiff who would be the movant if there are issues with the testimony?" (*Id.* at 80:9-15.)  The Court confirmed that was how the parties should proceed.  (*Id.*)  In the minute entry for the July 30, 2025 conference, the Court gave the parties the following direction regarding the deposition:

> Plaintiff may file a motion to compel with respect to the Rule 30(b)(6) deposition of Chipotle no later than August 26, 2025. Defendants' response will be due on September 2, 2025.  The Court will make itself available to the parties to resolve any disputes that arise during the August 12, 2025 Rule 30(b)(6) deposition.  The parties shall provide the Court via Chambers email with any portion of the transcript they wish the Court to consider and a brief explanation of the dispute in advance of any call with the Court.

(Dkt. 119 at 1-2.)  At no point during the hearing did Defendants indicate that they had any other questions about how to proceed or concerns about this approach.

On August 11, 2025, Plaintiff's counsel flew to California for the August 12, 2025 deposition.  (Dkt. 160 ¶ 4.)  At 9:01 p.m. Central Daylight Time on August 11, 2025, Defendant Chipotle Services, LLC filed a Motion for Protective Order seeking an order that Chipotle's corporate designee not be required to provide testimony on Topic Nos. 3-8, 10-19,[5] and 21-24.[6]  (Dkt. 124 at 2.)  Plaintiff's counsel did not receive the motion

---

[5]    While the range of topics for which Defendants seek relief in their Motion for Protective Order includes Topic 14, Defendants make no argument about Topic 14 in their memorandum.  (*See* Dkt. 126.)

[6]    For Topics 16, 17, and 18, Defendants' brief makes arguments based on an earlier (or non-existent) version of the topic rather than the revised version of topic in the operative deposition notice.  (*Compare* Dkt. 126 at 27-33, *with* Dkt. 160-1 at 4, *and* Dkt.

4

until the following morning and did not have time to review it before the deposition. (Dkt. 160 ¶ 6.)  At the beginning of the deposition, Defendants' counsel Betsy Bulat stated that the witness (Tammy Simpson) was only being produced as to the topics not included in their Motion for Protective Order, later identifying those as Topics 1, 5, 9, 14, and 20.[7]  (Dkt. 160-8 at 11:11-12:13.)  This meant Defendants had withdrawn their agreement as to Topics 6, 8, and 15.  (*See id.* at 12:14-20; Dkt. 160-4 at 1 (July 7, 2025 letter withdrawing objections to Topics 5, 6, 8, 14, and 15).)  Plaintiff's counsel raised the fact that Mr. Treco's July 7, 2025 letter said Defendants had no objections to Topics 6, 8, 15, and Ms. Bulat responded "I don't know what document you're referring to, but, no, the witness is just being presented on the topics I just listed."  (Dkt. 160-8 at 12:14-20.)  As to the preparation, the witness testified that she had only started preparing for the deposition on August 8, 2012, and had spent a total of three or four hours preparing.  (*Id.* at 13:12-21.)  At the end of the deposition, Plaintiff's counsel stated that the deposition was "not in any way, shape, or form concluded."  (*Id.* at 228:5-7.)

On August 27, 2025, Plaintiff brought a Motion to Compel and for Sanctions, seeking an order compelling Defendants to present a corporate representative at a second Rule 30(b)(6) deposition and sanctioning Defendants for failing to comply with the

---

160-3 at 8-9.)  Further, for Topics 15 and 19, Defendants quote the operative revised topic but make arguments that seem to be responding to the original topic rather than the revised topic.  (*Compare* Dkt. 126 at 25-27, 33-35, *with* Dkt. 160-3 at 8-9.)

[7]    Defendant Chipotle Services, LLC's Motion for Protective Order sought relief as to Topics 3-8, 10-19, and 21-24.  (Dkt. 124 at 2.)  However, at the deposition, Defendants' counsel stated they were producing a witness on two of those topics: Topics 5 and 14.  (*See* Dkt. 160-8 at 12:11-13.)

August 12, 2025 deposition notice.  (Dkt. 158 at 1.)  Defendants filed a "combined

memorandum" in support of their Motion for Protective Order and in opposition to the

Motion to Compel and for Sanctions on September 11, 2025, which, to the extent it made

additional arguments in support of their Motion for Protective Order, was a reply brief.

(Dkt. 167; *see also* Dkt. 126 (Defendants' opening brief); Dkt. 159 (Plaintiff's opposition

brief).)  However, Local Rule 7.1(b)(3) precludes a party from filing a reply in support of

a nondispositive motion without leave of court, *see* D. Minn. LR 7.1(b)(3), so the Court

only considers the September 11, 2025 brief insofar as it makes arguments in opposition

to the Motion to Compel and for Sanctions, and not insofar as it makes arguments in

reply to Plaintiff's opposition to Defendants' Motion for Protective Order.[8]

## II.   LEGAL STANDARDS

### A.   Rule 30(b)(6)

Rule 30(b)(6) of the Federal Rules of Civil Procedure states that:

> In its notice or subpoena, a party may name as the deponent a public or
> private corporation, a partnership, an association, a governmental agency, or
> other entity and must describe with reasonable particularity the matters for
> examination. The named organization must designate one or more officers,
> directors, or managing agents, or designate other persons who consent to
> testify on its behalf; and it may set out the matters on which each person
> designated will testify. Before or promptly after the notice or subpoena is
> served, the serving party and the organization must confer in good faith about
> the matters for examination. A subpoena must advise a nonparty organization
> of its duty to confer with the serving party and to designate each person who

---

[8]   The Court informed Defendants' counsel of their violation of this Rule and the
consequences during the September 30, 2025 hearing.

will testify. The persons designated must testify about information known or reasonably available to the organization.

Fed. R. Civ. P. 30(b)(6). "Once notified as to the reasonably particularized areas of inquiry, the corporation then must not only produce such number of persons as will satisfy the request, but more importantly, prepare them so that they may give complete, knowledgeable and binding answers on behalf of the corporation." *Prokosch v. Catalina Lighting, Inc.*, 193 F.R.D. 633, 638 (D. Minn. 2000) (citation modified). Such preparation must include making "a conscientious good-faith endeavor to designate the persons having knowledge of the matters sought by [the noticing party] and to prepare those persons in order that they can answer fully, completely, unevasively, the questions posed . . . as to the relevant subject matters." *Id.* (citations modified). While the witness "is not expected to be clairvoyant," *Arctic Cat, Inc. v. Injection Research Specialists, Inc.*, 210 F.R.D. 680, 686 (D. Minn. 2002), the fact that adequately preparing a witness may be onerous does not render a topic not reasonably particular, *see Prokosch*, 193 F.R.D. at 639.

Rule 30(d)(2) permits a court to "impose an appropriate sanction—including the reasonable expenses and attorney's fees incurred by any party—on a person who impedes, delays, or frustrates the fair examination of the deponent." Fed. R. Civ. P. 30(d)(2).

**B.    Rule 26**

Rule 26 of the Federal Rules of Civil Procedure sets forth the scope of discovery (unless otherwise limited by court order) as follows:

7

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

As to a protective order, Rule 26(b)(2)(C) of the Federal Rules of Civil Procedure states that:

> A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending—or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken. The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:
>
> > (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
> >
> > (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
> >
> > (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C).

## C.      Rule 37

Rule 37 of the Federal Rules of Civil Procedure permits parties to move for an order compelling discovery, including when "a corporation or other entity fails to make a designation under Rule 30(b)(6)."  Fed. R. Civ. P. 37(a)(3)(ii).  Further,

If a party or a party's officer, director, or managing agent—or a witness designated under Rule 30(b)(6) or 31(a)(4)—fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may include the following:

(i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

(ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

(iii) striking pleadings in whole or in part;

(iv) staying further proceedings until the order is obeyed;

(v) dismissing the action or proceeding in whole or in part;

(vi) rendering a default judgment against the disobedient party; or

(vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A). Additionally, the Court may order sanctions if "a person designated under Rule 30(b)(6) . . . fails, after being served with proper notice, to appear for that person's deposition." Fed. R. Civ. P. 37(d)(1)(A)(i). Such sanctions may include

any of the orders listed in Rule 37(b)(2)(A)(i)-(vi). Instead of or in addition to these sanctions, the court must require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(d)(3). Failure to produce a witness for a 30(b)(6) deposition "is not excused on the ground that the discovery sought was objectionable, unless the party failing to act has a pending motion for a protective order under Rule 26(c)." Fed. R. Civ. P. 37(d)(2).

9

Finally, if a court grants a motion to compel, "the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A). A court must not order this payment, however, if the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; the opposing party's nondisclosure, response, or objection was substantially justified; or other circumstances make an award of expenses unjust. *Id.*

**D.    Local Rules**

Local Rule 1.3 states: "If an attorney, law firm, or party violates these rules or is responsible for a rule violation, the court may impose appropriate sanctions as needed to protect the parties and the interests of justice." D. Minn. LR 1.3. Such sanctions may "include, among other things, excluding evidence, preventing a witness from testifying, striking pleadings or papers, refusing oral argument, or imposing attorney's fees." *Id.*

Local Rule 7.1(a) requires a party filing a motion other than a motion for a temporary restraining order or motion under Rule 56 to, "if possible, meet and confer with the opposing party in a good-faith effort to resolve the issues raised by the motion." D. Minn. LR 7.1(a). The meet-and-confer session need not be in person. *Id.*

## III.   ANALYSIS

There are two motions relating to the Rule 30(b)(6) deposition before the Court: (1) the Motion for Protective Order filed by Defendants; and (2) the Motion to Compel and for Sanctions filed by Plaintiff.

In the Motion for Protective Order, Defendants seek a protective order as to Topics 3-8, 10-19, and 21-24 of the Amended Notice of 30(b)(6) Deposition.  (Dkt. 124.) They argue that many of the topics "are overly broad, pertain to information that is irrelevant to the claims and defenses in this matter, and fail comply [sic] with Rule 30(b)(6)'s reasonable particularity requirement."  (*Id.* at 1.)

In the Motion to Compel and for Sanctions, Plaintiff asks the Court to compel Defendants to present a corporate representative to provide testimony at a second deposition pursuant to Rule 30(b)(6) and also seeks sanctions under Rule 30 and Rule 37, including evidentiary and monetary sanctions, for Defendants' failure to comply with a properly noticed Rule 30(b)(6) deposition on August 12, 2025.  (Dkt. 158.)  Specifically, Plaintiff asks the Court to issue evidentiary sanctions as to the topics that Defendants had previously agreed to but then refused to produce a prepared witness and the topics on which Defendants agreed to produce a witness, but then produced an inadequately prepared witness.  (Dkt. 159 at 2.)  Plaintiff also seeks sanctions as to Topic 23 and asks the Court to "issue an order finding that all of Chipotle's objections to producing documents and testimony regarding its EEOC Consent Decrees are waived" based on arguments that Defendants misrepresented the scope of an Equal Employment Opportunity Commission ("EEOC") consent decree to Plaintiff and the Court.[9]  (*Id.* at 28-34.)  Finally, she asks the Court to order Defendants to produce a corporate representative for a second Rule 30(b)(6) deposition in Minneapolis on all remaining

---

[9]     The Court addresses this in Section III.B.2.

topics and award Plaintiff the fees and costs incurred in connection with her Motion.  (*Id.* at 3.)

The Court begins with Plaintiff's request for evidentiary sanctions and issues related to Topics 5, 6, 8, 14, and 15, which are the topics for which Defendants sought a protective order on August 11, 2025 notwithstanding their July 7, 2025 statement that they withdrew their objections as to those topics.  The Court then turns to the parties' requests for relief as to the remaining topics.

## A.     Evidentiary Sanctions and Topics 5, 6, 8, 14, and 15

The Court first considers whether Defendants' Motion for Protective Order shields them from evidentiary sanctions relating to the Rule 30(b)(6) deposition.  Under Rule 37(d)(3), sanctions for failure to appear at a deposition may include any of the sanctions that could be imposed for a violation of a court order on discovery, including evidentiary sanctions.  *See* Fed. R. Civ. P. 37(d)(1)(A)(i), d(3), b(2)(A)(i-ii).  However, failure to appear can be excused if "the party failing to act has a pending motion for a protective order under Rule 26(c)."  *See* Fed. R. Civ. P. 37(d)(2).  According to Plaintiff, evidentiary sanctions are warranted for Defendants' reversal of their position as to certain topics (Topics 6, 8, and 15) and for topics for which their witness was inadequately prepared (Topics 4 and 14).  (Dkt. 159 at 2, 13-14, 18-28.)

Citing Rule 37(d), Defendants argue that their Motion for Protective Order precludes sanctions as to Topics 6, 8, and 15.  (Dkt. 167 at 16-18.)  Plaintiff, for her part, argues that "Chipotle's belatedly-filed motion for protective order does not rescue it, as the motion was filed 73-days after the original notice was served and at 9:00 p.m. the

night before the deposition." (Dkt. 159 at 20.)  Plaintiff cites *ProDox, LLC v. Pro. Document Servs., Inc.,* 341 F.R.D. 679, 683–84 (D. Nev. 2022), *objections overruled*, No. 220CV02035JADNJK, 2022 WL 2275185 (D. Nev. June 22, 2022), for the proposition that failure to appear at a deposition following a late-night protective order is sanctionable conduct.  (Dkt. 159 at 20.)  The Court agrees with the sentiment expressed in *ProDox*, that such conduct is "dredged up from the cesspool of 'Rambo' litigation [that] cannot be countenanced."  341 F.R.D. at 683-84.  However, *Prodox* is distinguishable as to the remedy because the court in that case denied the protective order as untimely before the deposition was noticed to begin, and the defendant and their counsel failed to appear at all despite the fact that there was no pending motion for a protective order at the time of the deposition.  *Id.* at 682-83.  Here, although Defendants filed their Motion for Protective Order at a time that did the opposite of "secur[ing] the just, speedy, and inexpensive determination" of this action, *see* Fed. R. Civ. P. 1, they did file the Motion before the Rule 30(b)(6) deposition began.  The Court finds that this timing precludes sanctions under Rule 37(d)(2) for failure to appear.  *See* Fed. R. Civ. P. 37(d)(2).  However, Rule 37(d)(2) says nothing about sanctions based on violations of other Rules.  The Court addresses the appropriate remedies and sanctions for Defendants' conduct relating to their Motion for Protective Order and the Rule 30(b)(6) deposition under Rule 37(a)(5) and other Federal and Local Rules in Section III.C of this Order.

The Court turns to Plaintiff's argument that Defendants waived their objections to the Rule 30(b)(6) notice because they failed to meet and confer before filing the Motion for Protective Order.  (Dkt. 159 at 34-38.)  The Court agrees with Plaintiff as to Topics 5,

6, 8, 14, and 15—the topics for which Defendants withdrew their objections on July 7, 2025 and then backtracked on August 11, 2025.  A motion for a protective order under Rule 26(c) "must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action."  Fed. R. Civ. P. 26(c)(1).  Similarly, Local Rule 7.1(a) requires a moving party to, "if possible, meet and confer with the opposing party in a good-faith effort to resolve the issues raised by the motion."  D. Minn. LR 7.1(a).  Defendants' Meet-and-Confer Statement filed with their Motion for Protective Order states that "Counsel for the parties conferred via extensive written correspondence dated June 6 and July 7, and via a two-hour telephone conference on June 26, 2025, regarding Chipotle Services, LLC's Motion for Protective Order."  (Dkt. 128 at 1.)  This Statement ignores the fact that Defendants withdrew their objections to Topics 5, 6, 8, 14, and 15 in a letter dated July 7, 2025 after Plaintiff amended the topics as a result of that correspondence and conference. (*See* Dkt. 160-4 at 1.)  It also ignores that Defendants failed to inform Plaintiff they had reversed their withdrawal of objections before filing the Motion for Protective Order seeking relief as to multiple topics, including Topics 5, 6, 8, 14, and 15.  The Court finds Defendants failed to meet and confer in good faith with Plaintiff as to Topics 5, 6, 8, 14, and 15 before they filed the Motion for Protective Order.

Because Defendants' last-minute reversal as to Topics 5, 6, 8, 14, and 15 was so inconsistent with counsel's obligations under Rule 1 and what the Court expects of practitioners who appear before it, the Court questioned Defendants' counsel Mr. Treco at the September 30, 2025 hearing to try to understand what happened.  That discussion

can be summarized as follows: Defendants' counsel had an internal "miscommunication" about their July 7, 2025 agreement to produce a witness on Topics 5, 6, 8, 14, and 15, and counsel had "forgotten" that Defendants had withdrawn their objections to those topics when they filed their Motion for Protective Order five weeks later.[10]  Defendants'

---

[10]    That rough transcript of that discussion is reproduced below:

THE COURT:  Second, based on my review of the papers, as of July 7th, 2025, Chipotle had agreed to produce a witness as to topics, 1, 5, 6, 8, 9, 14, 15, and 20.  Do you disagree with that?

MR. TRECO:  No, I don't disagree with that.

THE COURT:  Okay.  So why did Chipotle go back on its agreement on those topics?

MR. TRECO:  On 1 -- the only thing I can think of is that there -- like I say, think of, the only thing that I have be able to ascertain that it was a miscommunication and that's all I can say.

THE COURT:  Between whom?

MR. TRECO:  I think it was a miscommunication both internally on our side, again I don't want to get into privileged conversations, and, that's all I'm able to say at this point.

THE COURT:  Okay.  So when you filed -- or when your colleague filed the motion for protective order on August 11th, your colleague was unaware that Chipotle had agreed to produce a witness on these topics?

MR. TRECO:  No, Your Honor.  I'll be candid.  I drafted the motion and I filed it and in -- with a lot of what was going on in this case, it was forgotten by me that there was that reference made in correspondence to plaintiff's counsel.  And that's on me.

THE COURT:  Okay.  And when did Chipotle -- I mean you made a decision at some point presumably, or did you not make a decision to withdraw your agreement on those topics?

15

internal miscommunication and forgetfulness do not excuse their failure to meet and confer after they reversed their position as to Topics 5, 6, 8, 14, and 15.

Defendants also made an unsupported assertion in their brief that Plaintiff "was advised by counsel" at the July 30, 2025 hearing of their intent to bring a motion for protective order. (Dkt. 167 at 4.) At the September 30, 2025 hearing, the Court asked about this assertion, as the Court did not recall any such advisement at the July 30, 2025 hearing, and was unable to identify any corresponding statement in the transcript. Mr. Treco also could not identify a supporting statement during the September 30, 2025 hearing. Then, in a letter filed on October 6, 2025, Defendants identified the following portion of the transcript as supporting this assertion:

> THE COURT: Okay. All right. I think I understand where you're coming from. And maybe I'll just ask you about a 30(b)(6). Is there still a dispute over the 30(b)(6) topics?
>
> MR. TRECO: Yes, Your Honor.
>
> THE COURT: All right. And you want a formal motion on that as well?
>
> MR. TRECO: I certainly don't want to make the Court's job harder, but the -- the breadth of some of these objections, the number of topics that are being objected to, I think it would become extremely unwieldy to handle it informally.
>
> THE COURT: I'm fine with a formal motion. I think it's more just -- timing-wise, you're not going to have a decision before the deposition.
>
> MR. TRECO: I understand that. I guess we'll have to proceed accordingly.

---

MR. TRECO: No. There was -- there was a decision. I don't think it was fully fleshed out internally and perhaps the letter that was sent was sent prematurely. But, again, it's hard for me to explain this fully without revealing privileged conversations.

16

(Dkt. 170 (citing Dkt. 160-6 at 75:22-76:13).)

The problem with Defendants' reliance on this discussion is that later during the same hearing, the Court issued specific instructions with respect to the Rule 30(b)(6) deposition:

> As to the 30(b)(6), this may seem novel, but given the fact that we all acknowledge that there's going to be a formal motion and that the deposition is going to proceed,  nevertheless, even though there's no way I can have it heard by the time of the deposition, what I would suggest is you try to see if you can work it out and get through the deposition. And if you need to leave it open because you plan on filing a motion, you can do that.
>
> **But I don't see much point in a motion being filed in the next few days when the deposition hasn't taken place.** And I'm hopeful, perhaps, you can get through the topics and save yourself some time and expense.

(Dkt. 160-6 at 79:14-25 (emphasis added).)

Then, in response to a question from Mr. Treco about which party would have to seek relief after the deposition, the Court specified that Plaintiff should be the party to bring a motion.  (*Id.* at 80:10-14, 81:11-15.)  Mr. Treco agreed to that plan.  (*Id.* at 81:16.)  He did not say that Defendants still intended to file a motion for a protective order, or anything else from which the Court understood that Defendants intended to or thought they needed to file such a motion.  Defendants' post-hearing letter did not explain why, if they thought at the end of the July 30, 2025 hearing that they still needed to file a motion for protective order, they did not say so at the time.  The Court rejects the idea that Defendants advised Plaintiff (or the Court) at the July 30, 2025 hearing that they intended to file a motion for protective order, as well as any argument that anything said

by Defendants' counsel during that hearing satisfied the meet-and-confer requirement as to Topics 5, 6, 8, 14, and 15.

The Court also notes the tension between the claim that Defendants anticipated filing a motion for protective order as of July 30, 2025 and the fact that they waited almost two weeks before filing it on August 11, 2025.  Defendants did not meet and confer with Plaintiff regarding the Rule 30(b)(6) deposition between July 30 and August 11, 2025, so there does not appear to be any good reason for this delay.  They also have not argued that it was impossible for them to meet and confer with Plaintiff before filing the Motion for Protective Order on August 11, 2025.  *See* D. Minn. LR 7.1(a) (excusing meet-and-confer requirement if doing so is not "possible").

Because Defendants reversed their position as to Topics 5, 6, 8, 14, and 15 and sought a protective order as to those topics the night before the Rule 30(b)(6) deposition, without meeting and conferring regarding their reversal, the Court finds that Defendants have fallen far short of their obligation to meet and confer in good faith as to those topics. Accordingly, the Motion for a Protective Order is denied with respect to Topics 5, 6, 8, 14, and 15.  *See Yang v. Robert Half Int'l, Inc.*, No. 19-CV-2669 (NEB/DTS), 2020 WL 5366771, at *2 (D. Minn. Sept. 8, 2020)  ("A court may deny a motion when the parties fail to meet and confer in good faith prior to filing the motion.") (citation omitted), *aff'd*, 79 F.4th 949 (8th Cir. 2023), and *aff'd*, 79 F.4th 949 (8th Cir. 2023) .

**B.    Remaining Topics**

The Court turns to the remaining topics at issue based on the Motion for Protective Order and Motion to Compel and for Sanctions.  Of the topics included in Plaintiff's

Amended 30(b)(6) Deposition Notice, Plaintiff obtained satisfactory testimony as to

Topics 1, 9, and 20 (*see* Dkt. 159 at 9-11), and withdrew her requests for relief as to

Topics 3, 7, and 10 at the September 30, 2025 hearing.  Seventeen disputed topics

remain: Topics 4-6, 8, 11-19, and 21-24.  (*See id.* at 15-17.)  The Court will first address

several arguments that Defendants repeat as to multiple topics, as well as their argument

that there are too many topics, and then resolve the parties' specific disputes as to each

topic.

### 1.  Defendants' General Arguments

First, Defendants argue that many of the topics are not reasonably particular

because they require the witness to testify about "all facts" related to a set of

circumstances.[11]  (*See* Dkt. 126 at 8 (Topic 4), 14 (Topic 7), 18 (Topic 10), 19 (Topic

11), 22 (Topic 12), 23-24 (Topic 13), 29 (Topic 17), 32 (Topic 18), and 37-38 (Topic

23).)  Defendants cite two cases, *Willy v. Sherwin-Williams Co.*, No. 3:21-CV-00054-AR,

2022 WL 1553703 (D. Or. May 17, 2022), and *Johnson v. Charps Welding &*

*Fabricating, Inc.*, No. 14-CV-2081 (RHK/LIB), 2016 WL 11268315, at *7 (D. Minn.

Apr. 19, 2016), to suggest that there is a general rule that a topic that seeks "all facts"

---

[11]     Defendants make this argument as to several topics even though Plaintiff amended many of them to remove the "all facts" language in response to Defendants' objections to the original Rule 30(b)(6) notice or even though the topic does not contain the words "all facts."  (*See, e.g.*, Dkt. 126 at 8 (asserting Plaintiff sought "all facts" as to Topic 4 notwithstanding Plaintiff's amendment removed the phrase "all facts"); Dkt. 160-3 at 6 (amended Topic 4); *see also, e.g.*, Dkt. 126 at 12 (asserting Plaintiff sought "all facts" as to Topic 6 notwithstanding Plaintiff's amendment removed the phrase "all facts"); Dkt. 160-3 at 6-7 (amended Topic 6); *see also, e.g.*, Dkt. 126 at 16-17 ("understanding" Topic 8 to seek "all facts" although it does not use that phrase); *id.* at 19-23 (same as to Topics 11 and 12).)

related to a particular circumstance will fall short of the specificity requirement of Rule 30(b)(6).  (*E.g.*, Dkt. 126 at 8 ("Topics that require a witness to testify about 'all facts' related to a set of circumstances fall short of the 'painstaking specificity' required by Rule 30(b)(6).").)

The Court rejects this suggestion of a wholesale prohibition on the use of "all facts" in a Rule 30(b)(6) topic for two reasons.  First, *Willy* and *Johnson* are not binding on this Court.  Second, those cases set forth no such blanket rule.  In *Willy*, the court concluded that a particular topic that involved "all facts, witnesses, and documents" on which the defendant based "each of its affirmative defenses" was inadequately specific. 2022 WL 1553703, at *4.  Likewise in *Johnson*, the court concluded that "because the Topics seek testimony concerning all facts that support the allegations in Count I and Count IV, regarding which Plaintiffs have not yet been able to conduct discovery, Plaintiffs are unable to identify a deponent to testify regarding the Topics, meaning the Topics are also not described with reasonable particularity."  2016 WL 11268315, at *7. Neither case held that the use of "all facts" in a Rule 30(b)(6) topic renders the topic inherently not reasonably particular.  Further, none of the disputed topics seek "all facts" as to something as broad as an affirmative defense or all allegations supporting a claim; they seek all facts as to narrower categories of information.  Because there is no general rule that a topic seeking "all facts" is not reasonably particular, and further because *Willy* and *Johnson* are distinguishable on other grounds, the Court declines to find as a general matter that the use of "all facts" (or language that Defendants read as seeking all facts) means a topic does not meet the reasonable particularity standard.  Instead, the Court

makes an individualized determination with respect to each topic's reasonable particularity.

Second, Defendants argue that the word "including," which appears in several of the disputed topics, renders those topics insufficiently particular because it "signals that Plaintiff intends to ask the witness about all manner of other things that are not even disclosed in the topic." (*E.g.*, Dkt. 126 at 8-9 (Topic 4), 12 (Topic 6), 27-28 (Topic 16).) The Court is not persuaded that the word "including" necessarily defeats the otherwise reasonable particularity of a topic. As discussed below, many of the disputed topics use the word "including" but are still reasonably particular. Again, the better course is to address Defendants' objections on a topic-by-topic basis.

Third, Defendants repeatedly argue that a protective order is warranted with respect to several topics because the topic is duplicative of other discovery. (*E.g.*, Dkt. 126 at 10-11 (Topic 5), 13 (Topic 6), 15-16 (Topic 7), 17-18 (Topic 8), 20-21 (Topic 11), 23 (Topic 12), 24-25 (Topic 13), 26 (Topic 15), 27-28 (Topic 16), 31 (Topic 17), 33 (Topic 18).) It is true that under some circumstances, a protective order is appropriate when deposition topics are duplicative of other discovery. *E.g.*, *Zayed v. Buysse*, No. CV 11-1042 (SRN/FLN), 2011 WL 13239532, at *5 (D. Minn. Oct. 19, 2011) (granting protective order because "the categories of information listed in Respondents' Fed. R. Civ. P. 30(b)(6) deposition notice are nearly identical to their contention interrogatories"), *aff'd sub nom. Zayed for Cook v. Buysse*, No. 11-CV-1042 (SRN/FLN), 2011 WL 13239488 (D. Minn. Dec. 2, 2011). But it is also true that the fact that a topic has been the subject of other forms of discovery does not necessarily warrant a protective

order. *See, e.g., Upsher-Smith Labs., Inc. v. Fifth Third Bank*, No. 16-CV-0556 (JRT/HB), 2018 WL 11424200, at \*13 (D. Minn. Apr. 23, 2018) (denying protective order where "there is no assurance the documents would answer all relevant questions on this topic, and parties are not restricted to a single discovery tool in gathering relevant information"). The Court declines to adopt a general rule that the fact that a party explored a topic through other discovery means the party cannot also obtain Rule 30(b)(6) testimony on that topic. Indeed, the purpose of a Rule 30(b)(6) deposition is to obtain testimony that binds a corporation, *see Prokosch*, 193 F.R.D. at 638, while other discovery might not. Further, it is true that a protective order is appropriate if, among other things, "the discovery sought is **unreasonably** cumulative or duplicative." Fed. R. Civ. P. 26(b)(2)(C)(i) (emphasis added). But "the fact that information sought may be cumulative to information already produced does not serve as an automatic bar to such discovery as being unreasonably cumulative." *AGA Med. Corp. v. W.L. Gore & Assocs., Inc.*, No. CV 10-3734 (JNE/JSM), 2011 WL 13135783, at \*3 (D. Minn. Dec. 13, 2011) (collecting cases).

Fourth, Defendants argue that the number of topics noticed by Plaintiff is excessive for "a single-plaintiff employment action." (Dkt. 126 at 6.) In support of this argument, Defendants cite an unpublished case from the District of Kansas as holding that "22 topics [were] excessive in a single-plaintiff mortgage dispute." (*Id.* (citing *Bowers v. Mortg. Elec. Registration Sys., Inc.*, Civil Case No. 10-4141-JTM, 2011 WL 6013092, at \*7 (D. Kan. Dec. 2, 2011)). Defendants' parenthetical description of *Bowers* is not entirely accurate. In *Bowers*, the court found "that the wide-ranging and broad

nature of the deposition topics subjects MERS to an undue burden," and after finding several topics not reasonably particular, found that the "remaining topics, while sufficiently reasonably particular, are otherwise so overly broad that they subject MERS to an undue burden in attempting to respond to the deposition notice," noting that many of them had "no application to the claims asserted in this case, but rather to the claims in other litigation, some theoretical problem with MERS or the industry in which it operates." 2011 WL 6013092, at *6-7. Those circumstances are not present here, and the fact that preparing for a Rule 30(b)(6) deposition may require a significant amount of work does not make the number of noticed topics here disproportionate to the needs of the case. *See Prairie River Home Care, Inc. v. Procura*, LLC, No. 17-CV-5121 (JRT/HB), 2019 WL 13248862, at *17 (D. Minn. Aug. 5, 2019) ("Nevertheless, 'the burden upon the responding party, to prepare a knowledgeable Rule 30(b)(6) witness, may be an onerous one, but we are not aware of any less onerous means of assuring that the position of a corporation, that is involved in litigation, can be fully and fairly explored.'") (quoting *Prokosch*, 193 F.R.D. at 639)). If Defendants need to designate more than one witness to address the topics, the Rule permits them to do so. *See* Fed. R. Civ. P. 30(b)(6) ("The named organization must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf . . ."). The Court denies the Motion for Protective Order insofar as it is based on a "too many topics" argument.

## 2. Remaining Disputed Topics

The Court turns to the topic-specific objections made by Defendants as to the remaining disputed topics, which the Court addresses on a topic-by-topic basis.

**Topic No. 4:** Chipotle's hiring of Bailey, including information disclosed on his application, the interview process, the reason(s) he was hired, any background review or investigation done, all information that was known by Chipotle about Bailey before his employment, and all steps taken to determine whether he was qualified for his role at Chipotle.

As stated in Section III.A, the Court denies the Motion for Protective Order as to this topic due to Defendants' failure to meet and confer. The Court also denies the Motion for Protective Order and grants the Motion to Compel as to Topic 4 for the following independent reasons.

First, even though Topic 4 was amended to remove the words "all facts," Defendants still argue that it lacks reasonable particularity because it seeks "all facts related to Bailey's hiring." (Dkt. 126 at 8; *see also* Dkt. 160-3 at 6 (amended Topic 4).) According to Defendants: "It would be impossible for Chipotle to select and prepare an appropriate corporate designee to testify about Bailey's hiring and onboarding process when it is entirely unclear what aspects of those processes Plaintiff intends to investigate." (Dkt. 126 at 8-9.) This is certainly a strained argument, given that Topic 4 identifies several specific aspects of Bailey's hiring and onboarding process. Further, Defendants have not explained why the way this topic is drafted prevents them from selecting and preparing a witness to discuss the "information disclosed on [Bailey's] application, the interview process, the reason(s) he was hired, any background review or investigation done, all information that was known by Chipotle about Bailey before his

24

employment, and all steps taken to determine whether he was qualified for his role at Chipotle." The Court concludes that this topic is reasonably particular, as it identifies specific and relevant categories of information related to the hiring of the employee whose conduct at the Ear of Corn Chipotle Restaurant forms the basis for Plaintiff's claims against Defendants. *See Sage as Tr. for Sage v. Bridgestone Ams. Tire Operations, LLC*, No. CV 18-3170 (DSD/BRT), 2020 WL 13043386, at *2 (D. Minn. Jan. 27, 2020) ("When determining whether a particular deposition topic is described with reasonable particularity, the Court must consider the topic in light of the scope of relevance."). The Court overrules Defendants' objection on this ground.

The Court also overrules Defendants' objection based on the use of the word "including." Topic 4 seeks information about "Chipotle's hiring of Bailey" and then lists subsets of such information. "Chipotle's hiring of Bailey" is a specific, discrete, and relevant subject, and the fact that Plaintiff gave examples of what she intends to explore does not (as Defendants argue) "signal[] that Plaintiff intends to ask the witness about all manner of other things that are not even disclosed in the topic." (*See* Dkt. 126 at 9.) Rather, it signals a good-faith effort by Plaintiff to further apprise Defendants of what type of information Plaintiff seeks.

Finally, Defendants argue that designating a corporate witness on Topic 4 would be "a knowing exercise in futility" by Plaintiff because the former General Manager of the Ear of Corn Restaurant, Isaac Straitiff, could not remember why he decided to hire Bailey. (*Id.* at 9-10.) Setting aside whether this is even a proper objection, the Rule requires corporations such as Defendants to designate a witness to "testify about

25

information known or reasonably available to the organization."  *See* Fed. R. Civ. P. 30(b)(6).  Straitiff's inability to recall certain facts does not necessarily mean Defendants do not have and cannot reasonably obtain responsive information.  *See QBE Ins. Corp. v. Jorda Enters., Inc.*, 277 F.R.D. 676, 689 (S.D. Fla. 2012) ("As a corollary to the corporation's duty to designate and prepare a witness, it must perform a reasonable inquiry for information that is reasonably available to it."); *3M Innovative Props. Co. v. Tomar Elecs.*, No. CIV 05-756 MJD/AJB, 2006 WL 2670038, at *10 (D. Minn. Sept. 18, 2006) ("In a 30(b)(6) notice, 3M set a list of areas that would be raised as topics for discussion.  Tomar had a duty to prepare its 30(b)(6) witness to be capable of providing information relevant to those topic areas.").  Moreover, while Defendants claim designating a witness would be futile based on Straitiff's lack of memory, Plaintiff is entitled to use Rule 30(b)(6) to explore and test whether Defendants have or can reasonably obtain responsive information and to obtain definitive testimony that binds Defendants on that point.  The Court overrules Defendants' "exercise in futility" objection.

Defendants also suggest that Plaintiff can and should obtain responsive testimony from Bailey instead of Defendants.  (*See* Dkt. 126 at 10.)  This suggestion ignores the basic premise of a Rule 30(b)(6) deposition, which is to bind a corporate entity—here, Defendants—and that the relevant issue is Defendants' knowledge of the hiring process, not Bailey's.  Further, as Defendants conceded at the September 30, 2025 hearing, Bailey's testimony would not bind Defendants.  Accordingly, the Court denies the Motion for Protective Order as to Topic 4 and grants the Motion to Compel and for

Sanctions with respect to Topic 4.  The Court will permit examination on Topic 4 at a second Rule 30(b)(6) deposition.

**Topic No. 5:** The reason Chipotle did not conduct a criminal background check before hiring Bailey.

Defendants included Topic 5 in their Motion for Protective Order (Dkt. 124 at 2, Dkt. 126 at 10-11), but Defendants' witness did give some testimony on Topic 5.  (*See* Dkt. 160-8 at 12:11-13.)  Still, Plaintiff argues that the witness was not adequately prepared on this topic because: "[H]er testimony on this Topic consisted of merely stating that Chipotle does not do criminal background checks on crew members.  She had zero understanding as to why and did no investigation into the specifics surrounding Chipotle's hiring of Mr. Bailey."[12]  (Dkt. 159 at 9 (citing Dkt. 160-8 at 171:3-6).)  Plaintiff also argues that the question of why Defendants do not perform criminal background checks on crew members is responsive to unobjected-to Topic 1, which sought testimony on: "Chipotle's policies and practices with respect to conducting criminal background checks on employees (both crew and managers) who work in retail locations.  The timeframe for this topic is three-fold: (1) historically; (2) as of 2021, and (3) today."  (*See id.* at 25 n.11; Dkt. 160-3 at 5.)

---

[12]   The Court notes that the Rule 30(b)(6) witness gave contradictory testimony on this point.  She first testified that "crew members are excluded from background checks" and that a General Manager is "not permitted" to do a criminal background check on a crew member.  (Dkt. 160-8 at 149:22-25, 150:7-10.)  After Plaintiff's counsel referred the witness to a Chipotle handbook that contradicted her testimony, the witness testified that "we don't conduct background checks on crew members **but we reserve the right to if we need to**."  (*Id.* at 150-19-152:1 (emphasis added).)  It should go without saying that a deposition witness should strive to give accurate and truthful testimony in the first instance.

Defendants now argue that Topic 1 does not include the rationale underlying the background check policy (*see* Dkt. 167 at 13 n.7), but notably, they failed to object on grounds of scope (or any other grounds) when Plaintiff's counsel asked the witness why Defendants did not conduct background checks on crew members when examining the witness as to Topic 1 (*see* Dkt. 160-8 at 147:14-24). Defendants have waived any objection that the rationale for the policies and practices at issue in Topic 1 is beyond the scope of that topic.

Plaintiff seeks an evidentiary sanction as to Topic 5 on the grounds that the witness's inability to testify as to why Defendants do not conduct criminal background checks on crew members constitutes a sanctionable failure to appear for the deposition. (Dkt. 159 at 24-28.) It is true that "producing an unprepared witness is tantamount to a failure to appear, which is sanctionable under Fed. R. Civ. P. 37." *Prairie River Home Care*, 2019 WL 13248862, at *18 (citation modified) (collecting authorities). But, as explained in Section III.A, Defendants did file a Motion for Protective Order as to Topic 5—albeit without meeting and conferring after they backtracked on their agreement to produce a witness on the topic. While the Court denies the Motion for Protective Order as to this topic due to Defendants' failure to meet and confer, under these circumstances, the Court finds that allowing Plaintiff to question a corporate witness at a second Rule 30(b)(6) deposition about the rationales underlying Defendants' policies and practices with respect to conducting criminal background checks on employees (both crew and managers) who work in retail locations during the time frames specified in Topic 1 is a better course (at this time) than imposing evidentiary sanctions. This testimony will be

binding on Defendants, and they must properly prepare their witness to answer these questions, which fall within the scope of Topic 1 and arguably within the scope of Topic 5. The Motion to Compel is granted and the Motion for Protective Order is denied insofar as the Court will permit examination on this subject and topic at a second Rule 30(b)(6) deposition.

> **Topic No. 6:** The management structure of the Rochester Chipotle location during Famuyide's employment, including: (1) the number of managers, their titles, responsibilities, and duties; (2) how that management structure compared to other Chipotle locations with similar size and revenue; (3) how the management structure and staffing compared to Chipotle's standard, expected, or ideal staffing for a store of this size and revenue; and (4) Chipotle's position on whether that store was adequately staffed with managers in line with Chipotle policies, procedures, or standards.

Topic 6 is another topic where Defendants withdrew their objection and then reversed their position in their Motion for Protective Order without meeting and conferring with Plaintiff. As stated above, the Court denies the Motion for Protective Order as to this topic based on Defendants' failure to meet and confer. *See* Section III.A. But the Court would independently deny the Motion for Protective Order and grant the Motion to Compel and for Sanctions for the following reasons.

Defendants make several arguments relating to this topic. First, they argue that it is "impermissibly vague" and lacks reasonable particularity because it uses the word "including," and seeks "all facts" relating to the topic (again, ignoring the amendment that removed the language "all facts" from the topic). (Dkt. 126 at 12; *see also* Dkt. 160-3 at 6-7 (amended Topic 6).) The Court overrules these objections because there is no evidence that the management structure of the Ear of Corn Chipotle Restaurant is so

29

complex that a witness could not be reasonably prepared to testify about it and because Topic 6 gives notice of the aspects of the management structure which Plaintiff intends to explore.

Defendants also argue that an employee with "actual personal knowledge of the management structure" has already testified about these matters. (Dkt. 167 at 18.) Chipotle did not cite specific portions of that employee's testimony to support this assertion or state that the employee's testimony is binding on Defendants—including as to paragraphs (2), (3), and (4) of Topic 6. To the extent Defendants are objecting to Topic 6 as duplicative of other discovery, the Court overrules that objection.

Finally, Defendants argue that the witness "answered questions responsive to Chipotle's standard for management structure and staffing." (Dkt. 167 at 18 (citing Dkt. 160-8 at 188:25, 189:1-8).) This ignores the fact that Defendants "put on the record that we are not presenting the witness on that topic." (Dkt. 160-8 at 188:22-24.) Consequently, the witness's testimony is not binding on Defendants. At the September 30, 2025 hearing, Defendants' counsel said they were willing to stipulate to the binding effect of that testimony, but Plaintiff has not agreed to that stipulation, so the Court rejects that proposal. Moreover, the witness testified that she lacked knowledge in response to many of counsel's questions. (*See id.* at 189:7-18.) This prevents the Court from deeming her testimony satisfactory under Rule 30(b)(6), as she was inadequately prepared on Topic 6.

The Court finds that Topic 6 is reasonably particular, overrules Defendants' other objections to this topic, and grants the Motion to Compel and for Sanctions insofar as the Court will permit examination on Topic 6 at a second Rule 30(b)(6) deposition.

> **Topic No. 8**: All sexual harassment and workplace violence training provided to the individuals who were managers of the Ear-of-Corn Rochester Chipotle location at any time during Famuyide's employment, whether that training was required, and how Chipotle monitored the completion of the training by these managers.

Defendant's Motion for Protective Order as to this topic is denied for failure to meet and confer. *See* Section III.A. The Court also denies the Motion for Protective Order and grants the Motion to Compel and for Sanctions for the independent reasons set forth below.

Defendants assert that the topic is not reasonably particular because they "understand[] this topic to mean 'all facts' about 'all sexual harassment and workplace violence training.'" (Dkt. 126 at 16.) Given Plaintiff's amendment of Topic 8 and the fact that the topic does not say "all facts," this "understanding" is questionable indeed. Further, the topic is limited in terms of location, number of people, and duration. The Court overrules this objection and finds Topic 8 is reasonably particular.

Chipotle also argues that this topic is duplicative of its responses to Interrogatory Nos. 10, 22, and 25 and its document production. (*Id.* at 16-17.) Interrogatory No. 10 seeks information about Famuyide's training (not the managers'), Interrogatory No. 22 seeks identification of "all steps Chipotle took to warn or protect employees when it hired a registered sex offender (Bailey) to work at the Rochester location," and Interrogatory No. 25 seeks "all changes Chipotle made to its workplace violence and/or sexual

harassment policies, practices or training after Famuyide reported sexual assault." (Dkt. 104-5 at 17, 30, 33.) Defendants' argument that Topic 8 is duplicative of these interrogatories lacks merit as they plainly do not seek the same information. As to Defendants' document production, "there is no assurance the documents would answer all relevant questions on this topic, and parties are not restricted to a single discovery tool in gathering relevant information," *Upsher-Smith Labs.*, 2018 WL 11424200, at *13, nor have Defendants shown this topic is unreasonably cumulative or duplicative of other discovery, *see AGA Med.*, 2011 WL 13135783, at *3. The Court overrules this objection.

Defendants also argue that the witness "answered questions about sexual harassment and workplace violence training provided to managers, training requirements, and monitoring of such training." (Dkt. 167 at 19 (citing Dkt. 160-8 at 39:8-15, 25, 40:1-4, 40:12-16, 41:18-25, 47:7-10, 48:21-23, 50:2-6).) Again, Defendants objected to presenting a corporate witness on Topic 8 during the deposition. (Dkt. 160-8 at 38:8-39:5.) The Court will not allow Defendants to unilaterally unwind their decision not to present a corporate witness on this topic simply because they are now content with the witness's testimony. Accordingly, the Court overrules Defendants' objections to Topic 8 and grants Plaintiff's Motion to Compel insofar as the Court will permit examination on Topic 8 at a second Rule 30(b)(6) deposition.

**Topic No. 11**: Chipotle's initial investigation into Bailey's sexual assault of Famuyide on November 23, 2021 (before February 2, 2022).

**Topic No. 12**: Chipotle's subsequent investigation into Bailey's sexual assault of Famuyide on November 23, 2021 after reception of Famuyide's letter (through counsel) informing Chipotle of investigation of potential claims on February 2, 2022.

The Court considers Topics 11 and 12 together.  Once again, Defendants import the phrase "all facts" into these topics and then argue the topics are not reasonably particular as a result.  (Dkt. 126 at 19, 22.)  The Court again rejects this argument, including because the topics of "Chipotle's initial investigation" and "subsequent investigation" into Bailey's sexual assault of Plaintiff are limited in time and scope and relevant to the issues in the case.  The Court overrules Defendants' objections and finds Topics 11 and 12 are reasonably particular.

Defendants also argue that both of these topics are duplicative of prior discovery, in particular Interrogatory No. 11 and Request for Production Nos. 1 and 2.  (Dkt. 126 at 20-22 (citations omitted).)  Interrogatory No. 11 asks Defendants to "[d]escribe in detail the training Bailey had at Chipotle on: (1) sexual harassment and (2) workplace violence"; Request for Production No. 1 seeks "All documents You relied upon in drafting Your Answer to the Complaint"; and Request for Production No. 2 seeks "All documents You relied upon in drafting Your Initial Disclosures and Answers to Plaintiffs First Set of Interrogatories."  (Dkt. 104-5 at 17; Dkt. 104-4 at 4.)  Interrogatory No. 11 plainly does not cover the same subject matter as Topics 11 and 12, and Defendants' reliance on Request for Production Nos. 1 and 2 is barely colorable.  The Court overrules the objections based on duplicative and cumulative grounds.

Defendants also argue that Plaintiff should be content to rely on the deposition testimony of Straitiff and the written statements of former employee Jacari Miller (whom the parties have been unable to contact or serve with a subpoena).  (*See* Dkt. 126 at 21; Dkt. 167 at 35 & n.20.)  Along the same lines, Defendants argue that the corporate

witness's testimony about what she did to prepare for the Rule 30(b)(6) deposition shows that there is no more information to be learned about the investigation. (Dkt. 167 at 35.) Because Defendants objected to Topics 11 and 12, it does not appear that Defendants prepared the witness to testify on those topics. The Court therefore declines to find there is no more information reasonably available about these topics. Moreover, if there is no more information, Plaintiff is still entitled to obtain binding testimony about Topics 11 and 12 and establish what Defendants did and did not do.

Accordingly, the Court denies the Motion for a Protective Order and grants the Motion to Compel and for Sanctions with respect to Topics 11 and 12. Plaintiff is permitted to examine a corporate witness or witnesses on both these topics at a second Rule 30(b)(6) deposition.

> **Topic No. 13:** Chipotle's knowledge of harassment by Bailey toward any female employees before his sexual assault of Famuyide on November 23, 2021.

Defendants argue that this topic is not reasonably particular because they "understand" the topic to mean "all facts" about "harassment by Bailey towards any female employees . . . ." (Dkt. 126 at 23-24.) Again, Defendants' insertion of "all facts" into the topic is unpersuasive. The Court concludes that this topic is reasonably particular as it is limited to Chipotle's knowledge of harassment by the employee whose conduct at the Ear of Corn Chipotle Restaurant forms the basis for Plaintiff's claims against Defendants, and is further limited to a relevant time period.

The Court also rejects Defendants' argument that the topic is not reasonably particular because Chipotle asks in its brief "what specific aspects of this subject matter

34

does Plaintiff intend to ask about?" (*See id.* at 24.)  The Court expects competent counsel to be able to anticipate what type of questions Plaintiff might ask with respect to Defendants' knowledge of Bailey's harassment of other female employees before November 23, 2021, including, at a minimum, whether Chipotle had any such knowledge; if they did, what they knew and how learned about it; and what action, if any did Defendants take in response to their knowledge.  There may be other questions, but Plaintiff is certainly not required to provide Defendants with a list of questions to make the topic reasonably particular.  And if issues arise relating to whether Defendants' witness was sufficiently prepared on this topic, the Court will address them at that time.

Defendants next argue that this topic is duplicative and cumulative because Chipotle has already described the complaints it received about Bailey in its written discovery.  (Dkt. 126 at 24.)  This argument is unavailing for several reasons.  First, Topic 13 is not limited to knowledge that Chipotle obtained via formal complaints about Bailey, but includes knowledge obtained by other means, such as instances of harassment witnessed by Chipotle managers.  Second, "there is no assurance the documents would answer all relevant questions on this topic, and parties are not restricted to a single discovery tool in gathering relevant information," *Upsher-Smith Labs.*, 2018 WL 11424200, at *13, nor have Defendants shown this topic is unreasonably cumulative or duplicative of other discovery, *see AGA Med.*, 2011 WL 13135783, at *3.  Finally, even if Chipotle has no further knowledge responsive to Topic 13, Plaintiff is still entitled to obtain binding testimony as to this topic and establish what Defendants did or did not know and did or did not do in response.

Accordingly, the Court denies the Motion for a Protective Order and grants the Motion to Compel and for Sanctions with respect to Topic 13. Plaintiff is permitted to examine a corporate witness or witnesses on this topic at a second Rule 30(b)(6) deposition.

**Topic No. 14:** The reason(s) Chipotle terminated Famuyide's employment.

Defendants' conduct with respect to Topic 14 is both puzzling and concerning. As to the puzzling aspect, it appears that Defendants could not decide whether they sought relief as to Topic 14. They included Topic 14 in their Motion for Protective Order (Dkt. 124 at 2), but made no argument about Topic 14 in their supporting memorandum (*see* Dkt. 126). Then, Defendants agreed at the Rule 30(b)(6) deposition to produce the witness with respect to Topic 14. (*See* Dkt. 160-8 at 12:11-13.) This is another reason— in addition to Defendants' failure to meet and confer as to Topic 14 after withdrawing their objection on July 7, 2025 and then seeking relief as to this Topic in their Motion for Protective Order—to deny the Motion for Protective Order as to this topic.

Although a witness was presented on Topic 14, Plaintiff argues, in part, that the witness was not adequately prepared because the witness could not testify as to why Plaintiff was terminated the second time. (Dkt. 159 at 26-27.) The Court's review of the transcript reveals that the witness was not sufficiently prepared on this topic. The witness testified that "I'm going to assume because she did not come back to work after work was offered to her that she was terminated in the system." (Dkt. 160-8 at 200:14-21.) A witness who is making assumptions is clearly not prepared. When pressed about this assumption, the witness testified: "I don't know what her term code is. I would have to

log into Workday to see what the date was and what she was terminated for after her auto-term was rescinded." (*Id.* at 200:23-201:4.)  This shows that the witness could have further investigated Plaintiff's terminations, but did not.  Worse yet, the witness's testimony that Plaintiff did not request a leave of absence (*id.* at 196:16-20) contradicted the statement in Defendants' Answer that "Defendants admit that Plaintiff requested a leave of absence" (Dkt. 39 ¶ 51).  When pressed, the witness testified that "there was no record of her making a request to the company for a leave of absence under any type of leave process that is overseen by our benefits team," but at the same time admitted she did not review any other information regarding whether Plaintiff requested a leave of absence in any other way, and that she did not know whether Chipotle offered Plaintiff a leave of absence.  (Dkt. 160-8 at 198:4 to 201:16.)  All of this testimony is concerning.

Also concerning are Defendants' arguments as to Topic 14.  Notwithstanding the admission in their answer that Plaintiff was offered a leave of absence (Dkt. 39 ¶ 51), Defendants now use the phrase "purported leave of absence" when referring to this topic and then suggest, relying on the witness's testimony, that this leave of absence was not within the scope of the topic nor responsive to any topic (Dkt. 167 at 14-15).  If Defendants made a mistake in their Answer when they admitted Plaintiff took a leave of absence, they should try to correct it by seeking leave to amend their Answer, not by trying to obfuscate the mistake.

As to whether the Court should allow Plaintiff to further question a corporate witness about the leave of absence and this topic, at the September 30, 2025 hearing, Mr. Treco suggested that Plaintiff was "separated" from employment rather than "terminated"

after her first termination was rescinded because she was offered the opportunity to return, she did not do so, and Defendants treated that as a resignation.  However, Mr. Treco also acknowledged at the September 30, 2025 hearing that "terminated" is at times "thrown around in labor employment to simply mean the end of employment."  As the Court told Mr. Treco at the hearing, this type of hair-splitting should not have resulted in Defendants' failure to put forth a prepared witness who could testify about these circumstances, particularly when this objection or distinction does not appear to have been made during the meet-and-confers.[13]  The Court also rejects the suggestion by Defendants that their witness's inability to testify about the circumstances around Plaintiff's termination (or separation) from Chipotle does not really matter because this information is in their interrogatory responses.  Unless discovery is unreasonably cumulative or duplicative—and this topic is not—Defendants do not get to dictate which discovery methods Plaintiff uses in this case.  The Court grants the Motion to Compel and for Sanctions insofar as Plaintiff may question Defendants as to Topic 14, at a second Rule 30(b)(6) deposition, including about the leave of absence and the circumstances around Plaintiff's end of employment with Defendants (regardless of whether it is described as a termination, a separation, or some other term indicating the end of employment).

---

[13]   During the September 30, 2025 hearing, the Court expressed its concern with how Defendants met and conferred with Plaintiff as to the Rule 30(b)(6) topics.  Even if Defendants had not withdrawn their objection to this topic (*see* Dkt. 160-4 at 1), the record could well support a conclusion that Defendants did not meet and confer in good faith as to this objection (or in general).  A lengthy meet-and-confer does not equate to good faith, particularly if one side does not propose any compromise.

**Topic No. 15:** The circumstances surrounding the reasons the following employees no longer work at Chipotle, including any disciplinary issues leading up to termination and/or any deficiencies in performance: Adam Judeh, Jacari Miller, Faith Sorenson, Issaac [sic] Straitiff, and Bailey. This includes facts known to Chipotle about Straitiff's need for detox and/or rehab.

The Court denies the Motion for Protective Order as to this topic for failure to meet and confer. *See* Section III.A. And as explained below, the Court would deny the Motion for Protective Order and grant the Motion to Compel and for Sanctions as to this topic in any event.

Defendants argue that its objections to Topic 15 were proper because Topic 15 "is based on a false premise," namely, the premise that Adam Judeh, Jacari Miller, and Isaac Straitiff were terminated for disciplinary reasons or performance issues. (Dkt. 126 at 25 & n.2.) They reiterate this argument in subsequent briefing, namely:

> This overreach is compounded by Plaintiff's confounding insistence that Chipotle provide a witness to testify about why Straitiff, Judeh, and Sorenson were terminated. It has been explained to Plaintiff repeatedly—and even through Chipotle's own document production—that these individuals were not terminated. Each resigned of them resigned or quit, and each of them explained this during their own depositions. Chipotle cannot designate a witness to testify about circumstances that never transpired.

(Dkt. 167 at 20.)

It is Defendants' arguments that are based on a false premise, that is, that Topic 15 assumes that Judeh, Miller, and Straitiff were terminated. While Topic 15 as originally drafted read: "The reasons Chipotle terminated the employment of: Adam Judeh, Jacari Miller, Issaac Straitiff, and Bailey," Plaintiff amended this topic after the meet and confer to read: "**The circumstances surrounding the reasons the following employees no longer work at Chipotle**, including any disciplinary issues leading up to termination

39

and/or any deficiencies in performance: Adam Judeh, Jacari Miller, Faith Sorenson, Issaac Straitiff, and Bailey." (Dkt. 160-3 at 8 (emphasis added).) This amendment removed any such "false premise." The fact that Defendants sought a protective order and made arguments based on the original language, rather than the amended, is concerning. Worse yet, Defendants repeated this tactic in their opposition to Plaintiff's Motion to Compel and for Sanctions, arguing "[t]his overreach is compounded by Plaintiff's confounding insistence that Chipotle provide a witness to testify about why Straitiff, Judeh, and Sorenson were terminated." (Dkt. 167 at 20.)

What is "confounding" is Defendants' insistence on seeking relief based on an outdated topic. At this point, it is unclear to the Court whether Defendants are intentionally reading a now-nonexistent "termination" requirement into the amended topic, are intentionally ignoring the amendment, or drafted their briefs without any care for their accuracy. What is clear is that these arguments should be rejected, and the Court does so.

As to Defendants' argument that they have already presented individual witnesses on this topic (Dkt. 126 at 25-27), that argument is rejected for the reasons stated above with respect to numerous other topics. Finally, Defendants argue that Plaintiff believes that their witness should have contacted Straitiff about his alcoholism. As there is no support for this assertion, the Court does not address it further. Defendants also suggest Plaintiff should contact the "single former employee [Straitiff] confided in about his alcohol abuse years prior to Plaintiff's employment" and rely on other witnesses' testimony. (Dkt. 167 at 19-20.) Again, that ignores the purpose of a Rule 30(b)(6)

40

deposition.  Further, this topic is not unreasonably cumulative or duplicative of the other discovery relied on by Defendants.

The Court overrules Defendants' objections to this topic, denies the Motion for Protective Order, and grants the Motion to Compel and for Sanctions as to Topic 15. Plaintiff will be permitted to depose Defendants on this topic through a corporate witness or witnesses, who must be prepared to "testify about information known or reasonably available to the organization."  *See* Fed. R. Civ. P. 30(b)(6).

> **Topic No. 16:** Chipotle's knowledge of instances of misconduct by Bailey at the Chipotle Rochester location, including the actions Chipotle took to address such misconduct.

As originally drafted, this topic read: "All instances of misconduct by Bailey at the Chipotle Rochester location, including the actions Chipotle took to address such misconduct."  (Dkt. 160-1 at 4.)  Once again, Defendants seek a protective order based on the original topic.  (*See* Dkt. 126 at 29 (quoting Topic 16 as "All instances of misconduct by Bailey at the Chipotle Rochester location, including the actions Chipotle took to address such misconduct.").)  This is reason enough to deny the Motion for Protective Order as to this topic, including insofar as Defendants' claim the topic is "impermissibly broad" because it uses "all instances of misconduct."  (*See* Dkt. 126 at 27.)

The Court also rejects Defendants' other breadth arguments.  Topic 16 seeks Defendants' knowledge of Bailey's misconduct.  Defendants claim that it is unclear "whether the topic is describing unlawful conduct, lawful conduct that violated Chipotle policy, lawful conduct that merely violated a social norm, etc."  (Dkt. 126 at 27.)  The Court rejects any assertion that Defendants (and their lawyers) do not understand the

meaning of "misconduct" in the employment context. If, in fact, they do not understand the term "misconduct," they should treat it as including unlawful conduct and conduct that violated any of Defendants' policies. Further, if Defendants were aware of instances when Bailey's conduct violated social norms (but was not unlawful or violative of their policies), they should prepare their witness on that subject as well. The Court concludes that this topic is reasonably particular.

Defendants also argue that "Chipotle has already produced and described documented instances of what one might loosely describe as measurable 'misconduct' insofar as it is measurable because it violated a Chipotle policy." (Dkt. 126 at 28 (citing Dkt. 104-4 at 17-19 (Response to Request for Production No. 13); Dkt. 104-5 at 12-13 (Response to Interrogatory No. 7)).) This argument fails at least because, as discussed repeatedly above, Plaintiff is not precluded from exploring a topic through a Rule 30(b)(6) deposition simply because Defendants provided some responsive written discovery on that topic. Defendants have not shown this topic is unreasonably cumulative or duplicative. Accordingly, the Court denies the Motion for a Protective Order and grants the Motion to Compel and for Sanctions as to Topic 16. Plaintiff will be permitted to question a corporate witness or witnesses on this topic at a second Rule 30(b)(6) deposition.

**Topic No. 17:** Chipotle's knowledge of workplace violence, self-harm, threats, and harassment in the Rochester Chipotle location from 2015 through 2021.

Yet again, the Motion for Protective Order relies on an out-of-date version of this topic that sought "All instances of workplace violence, self-harm, threats, and harassment

42

in the Rochester Chipotle location from 2015 through 2021." (*See* Dkt. 126 at 29.) Defendants ignore that Plaintiff amended this topic to read: "Chipotle's knowledge of workplace violence, self-harm, threats, and harassment in the Rochester Chipotle location from 2015 through 2021." (*See* Dkt. 160-3 at 8.) The Court denies the Motion for Protective Order because it is based on an out-of-date version of the topic.

As to reasonable particularity, this topic is limited to a single location and a specific time period. This, along with the relevance of the information sought to the claims in this case, renders the topic reasonably particular. Further, the fact that adequately preparing a witness may be onerous does not render a topic not reasonably particular. *See Prokosch*, 193 F.R.D. at 639. Indeed, if a large amount of information is responsive to this topic, that fact certainly is relevant to the claims in this lawsuit, which include allegations of Bailey's sexual harassment, sexual assault, "threatening and aggressive behavior," "increasingly aggressive" behavior, and "violent tendencies." (*E.g.*, Dkt. 1 ¶¶ 1, 28, 36, 71, 73-74.) The Court overrules Defendants' objections insofar as they are based on overbreadth and lack of particularity.

A few other points. Defendants argue that "by 'all instances' this topic means to say 'all facts regarding.'" (Dkt. 126 at 29.) This is extremely unpersuasive. If Defendants cannot convince a court based on the actual language of a topic, they should withdraw their objection rather than putting a questionable spin on the language.[14]

---

[14]    Defendants do the same for Topic 18. (Dkt. 126 at 29-31.) This argument undermines, rather than improves, the persuasiveness of Defendants' arguments.

Next, Defendants argue: "First, the term 'threat' is vague and ambiguous. Does this refer to threats of violence only? Or does it include statements about the consequences for not meeting certain workplace standards? Etc.?" (Dkt. 126 at 29.) The fact that Defendants can ask a series of rhetorical questions about a topic does not render it vague and ambiguous, and the Court gives little weight to Defendants' purported confusion about whether a "threat" in this context includes "statements about the consequences for not meeting certain workplace standards." *See StoneEagle Servs., Inc. v. UMB Bank, N.A.*, No. 4:15-MC-0904-NKL, 2015 WL 2452926, at *5 (W.D. Mo. May 22, 2015) ("A party responding to discovery should exercise reason and common sense to attribute ordinary definitions to terms and phrases utilized in the discovery requests."). If Defendants and their counsel truly did not understand this term, they could have and should have resolved their confusion through a good faith meet and confer with Plaintiff's counsel. The Court overrules this objection.

Defendants also argue that this topic is duplicative and cumulative because "through its interrogatory responses and document productions, and subject to objections raised in same, Chipotle has already identified various documents representing the extent of reports of threats or instances of workplace violence, sexual harassment, or physical harm at the Rochester Chipotle location that were reported to Chipotle's Respectful Workplace Team from January 1, 2020, through Famuyide's last day worked." (Dkt. 126 at 30-31.) This demonstrates that Defendants have a working knowledge of the meaning of "threats" in this context. It also ignores that Plaintiff may well wish to examine a corporate witness about these documents, and the basic principle that a party is not

44

normally restricted to a single form of discovery on a subject.  Rather, the party opposing

discovery must show "the discovery sought is unreasonably cumulative or duplicative."

Fed. R. Civ. P. 26(b)(2)(C)(i).  Defendants have not made this showing, and the Court

overrules this objection.

Accordingly, the Court denies the Motion for a Protective Order and grants the

Motion to Compel and for Sanctions as to Topic 17.  Plaintiff will be permitted to

question a corporate witness or witnesses on this topic at a second Rule 30(b)(6)

deposition.

> **Topic No. 18:** For any sexual assault that occurred or was alleged to have occurred in a Chipotle retail location from 2011 through 2021, the location of the assault, the date, whether anyone involved was an employee, a general description of the material factual background of the sexual assault, and whether a background check was performed by Chipotle on the person alleged to have committed the sexual assault.

Defendants continue to rely on the original language of this topic when seeking a

protective order, reproducing the topic as: "All instances of sexual assault in a Chipotle

retail location from 2011 through 2021."  (Dkt. 126 at 31.)  Defendants do not address the

operative form of Topic 18 (shown above), and the Court overrules Defendants'

objections based on breadth for this reason.

Moreover, the amended form of Topic 18 is reasonably particular.  It is limited to

a specific type of conduct (sexual assault), it is limited in time, and it seeks specific

information about those sexual assaults.  This is sufficient for Defendants to prepare a

witness.

Defendants also argue that this topic is outside the scope of discovery because "Chipotle is not pursuing an *Ellerth/Faragher* defense.[15]  (Dkt. 126 at 31-32; Dkt. 167 at 28-29.)  Plaintiff argues that this topic remains relevant to the foreseeability of Bailey's actions and the reasonableness of Defendants' actions.  (Dkt. 159 at 41; *see also* Dkt. 151 at 11 n.2.)  The Court agrees that this topic is within the scope of discovery regardless of any such defense, because the reasonableness of Defendants' policy of not normally requiring background checks on crew members and Defendants' knowledge of sexual assaults at retail locations are important issues in this case.  Defendants' arguments relating to admissibility are more appropriately addressed at summary judgment or trial.

For all these reasons, the Court denies the Motion for Protective Order and grants the Motion to Compel and for Sanctions as to Topic 18.  Plaintiff will be permitted to question a corporate witness or witnesses on this topic at a second Rule 30(b)(6) deposition.

---

[15]     The *Ellerth-Faragher* defense refers to the decisions by the United States Supreme Court, *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998), and *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998).  This affirmative defense to a claim of supervisor sexual harassment "consists of two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior and (b) that the plaintiff employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise." *Fuller v. Fiber Glass Sys., LP*, 618 F.3d 858, 864 (8th Cir. 2010) (citation modified). Defendants did pursue this defense in their Answer but now seek leave to amend to remove it.  (*See* Dkt. 139 at 7 (arguing "withdrawing Defendants' original Sixteenth Affirmative Defense is appropriate and will not unfairly prejudice Plaintiff because this defense is not applicable to any failure of Plaintiff to avail herself of the company's remedial measures regarding the alleged inappropriate behavior of Lionell Bailey, who was not a supervisory employee" (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998) (footnote omitted))).)

**Topic No. 19:** Chipotle's knowledge of the managers at the Rochester Chipotle location from January 2020 through December 2021 with respect to the following: their names, titles, dates of employment, management performance, disciplinary actions, and their responses to instances of harassment and/or workplace violence. This specifically includes Chipotle's knowledge of Straitiff's alcoholism and need for detox and/or rehab.

Defendants argue that this topic is duplicative of Interrogatory No. 18. (Dkt. 126 at 33.) This argument is overruled because Defendants did not provide a substantive response to Interrogatory No. 18. (Dkt. 104-5 at 26.) More importantly, as discussed above, discovery must be unreasonably duplicative or cumulative to warrant a protective order. *See* Fed. R. Civ. P. 26(b)(2)(C)(i). Defendants have not made that showing as to Topic 19.

Defendants next argue that the terms "complaints" and "concerns" are vague and ambiguous. (Dkt. 126 at 33.) The problem for Defendants is that the words "complaints" and "concerns" do not appear in amended Topic 19. They did appear in original Topic 19, which read "All complaints or concerns about management at the Rochester Chipotle location from January 2020 through December 2021." (Dkt 160-1 at 3.) While Defendants reproduced the correct version of Topic 19 in their brief, they appear to have recited their objections to the original topic in their brief rather than making argument based on the operative topic. (*Compare* Dkt. 160-2 at 33-34, *with* Dkt. 126 at 33-34.) Their error hardly persuades the Court that the operative version of Topic 19 is vague and ambiguous. The Court overrules those objections.

Defendants also "challenge" the relevance of the information sought by this topic. (Dkt. 126 at 33-35; Dkt. 167 at 34.) The Court finds that Defendants' knowledge of the

managers of the Chipotle location where Bailey sexually assaulted a coworker (Plaintiff) in November 2021 for a roughly two-year period before and shortly after that assault is relevant to Plaintiff's claims of negligent retention and supervision, including because Plaintiff alleged that "Chipotle failed to consistently staff the Rochester store with competent and professional managers who could ensure the safety of the work environment" (Dkt. 1 ¶ 119) as one way in which Defendants breached their duty of care. That objection is overruled. Again, arguments relating to admissibility are more appropriately addressed at summary judgment or trial.

Defendants further object on the grounds that preparing a witness on this topic might require them to gather information from former employees or third-party medical providers who treated Straitiff's alcoholism. Defendants do not explain how a topic seeking information about "**Chipotle's knowledge** of Straitiff's alcoholism and need for detox and/or rehab" requires them to contact third-party medical providers, nor do they offer any evidence that Plaintiff suggested they needed to do so to adequately prepare. To the extent Defendants profess concerns about revealing Straitiff's alcoholism to former employees (or the general public), those concerns ring hollow because Defendants publicly filed briefs referring to his alcoholism. (*See* Dkt. 126 at 33-34; Dkt. 167 at 19-20, 30.) Moreover, the Court expects that competent counsel can ascertain whether former employees knew about Straitiff's alcoholism without revealing that fact out of the gate. These objections are overruled.

Finally, Defendants suggest that this topic requires the witness to "memorize" information and that they are not expected to gather information on Plaintiff's behalf.

(Dkt. 126 at 34.)  This argument ignores the plain language of Rule 30(b)(6), which "requires the designee to testify about information 'known or reasonably available' to the organization," and ignores the law that the duty to prepare can include obtaining "information held by third-party sources if that information is reasonably available [to the organization]."  *Klein v. Affiliated Grp., Inc.*, No. 18-CV-949 DWF/ECW, 2019 WL 246768, at *9 (D. Minn. Jan. 17, 2019) (quoting *W. Virginia Pipe Trades Health & Welfare Fund v. Medtronic, Inc.*, No. 13-cv-1686 (JRT/FLN), 2017 WL 9325026, at *7 (D. Minn. Oct. 12, 2017)) (alterations in original).  It also ignores that "a prepared Rule 30(b)(6) witness is entitled to bring documents and summaries to the deposition to aid in testifying, rendering 'memorization' unnecessary."  *Starline Windows Inc. v. Quanex Bldg. Prods. Corp.*, No. 15-CV-1282-L (WVG), 2016 WL 4485564, at *2 (S.D. Cal. July 21, 2016); *see also Prairie River Home Care*, 2019 WL 13248862, at *19 (D. Minn. Aug. 5, 2019) (rejecting argument that Rule 30(b)(6) topics "put[] an impossible expectation on the witnesses to memorize lists of facts" because it "overstates the obligation that Rule 30(b)(6) imposes," and if the witness "was concerned that he could not hold all of the necessary information in his memory, he (or someone under his direction) could have assembled documents and/or prepared a list with key information to aid his memory").  These objections are overruled.

Accordingly, the Court denies the Motion for Protective Order and grants the Motion to Compel and for Sanctions with respect to Topic 19.  Plaintiff will be permitted to depose a corporate witness or witnesses on this topic at a second Rule 30(b)(6) deposition.

**Topic No. 21:** All initial steps Chipotle took to preserve evidence concerning the 2021 harassment and November 23, 2021 sexual assault of Famuyide by Bailey.

**Topic No. 22:** All subsequent steps Chipotle took to preserve evidence concerning the November 23, 2021 sexual assault of Famuyide by Bailey after reception of Famuyide's letter (through counsel) informing Chipotle of investigation of potential claims on February 2, 2022.

The Court considers Topics 21 and 22 together. Defendants argue that a protective order is warranted with respect to these topics because they impermissibly seek discovery about the discovery process. (Dkt. 126 at 35-36; *see also* Dkt. 167 at 29-32.) Defendants cite *Berry v. County*, No. 20-cv-2189, 2023 WL 1777467, at *6 (D. Minn. Feb. 6, 2023), for the proposition that "[a] deposition topic designed to discover a party's 'document retention and discovery practices' is improper when the party's document retention and discovery practices are not at issue in the lawsuit." (*Id.*) "While most courts acknowledge that 'discovery about discovery' can be appropriate under certain circumstances, those circumstances are limited to times when one party's discovery compliance has reasonably been drawn into question, [or] that there is 'an adequate factual basis' for an inquiry." *Speed RMG Partners, LLC v. Arctic Cat Sales Inc.*, No. 20-CV-609 (NEB/LIB), 2021 WL 5087362, at *11 (D. Minn. Jan. 5, 2021) (quoting *Gross v. Chapman*, No. 19 C 2743, 2020 WL 4336062, at *2 (N.D. Ill. July 28, 2020) (alterations in original).

Here, the Court finds that Defendants' discovery compliance has been reasonably called into question and that there is an adequate factual basis for this inquiry. Plaintiff has raised concerns regarding Defendants' preservation of messages sent by Chipotle employees. (Dkt. 105 at 12-21.) While that issue is addressed by a separate Order

50

granting Plaintiff's July 16, 2025 Motion to Compel, the Court notes that there is testimony from Straitiff that employees of the Ear of Corn Chipotle Restaurant communicated by text messages and by GroupMe. (Dkt. 104-12 at 51:20-25, 53:20-54:1, 55:13-24, 81:7-21, 204:14-205:1.) Defendants have not produced any such messages, instead attempting to minimize this testimony due to "Straitiff's faulty memory resulting from a traumatic brain injury and substance abuse," and describing the text messages as "hypothetical." (Dkt. 167 at 31.) Given Straitiff's testimony and the lack of any production of responsive text and GroupMe messages, the Court finds there are legitimate questions about whether Defendants complied with their discovery obligations as to text and GroupMe messages and also finds an adequate factual basis for Topics 21 and 22.

As to Defendants' arguments regarding spoliation, the Court need not decide in this Order whether Defendants engaged in spoliation to find that there is an adequate factual basis for an inquiry into Defendants' discovery. Indeed, the responsive testimony may obviate any concerns about Defendants' compliance with their discovery obligations. Finally, to the extent Defendants argue these topics may encroach on attorney work product, that concern is better addressed through proper objections to specific questions. It does not provide a basis for a wholesale ban on discovery into these topics.

Accordingly, the Court denies the Motion for Protective order and grants Plaintiff's Motion to Compel and for Sanctions with respect to Topics 21 and 22.

Plaintiff will be permitted to depose a corporate witness or witnesses on these topics at a second Rule 30(b)(6) deposition.

> **Topic No. 23:** Identify each consent decree entered into or issued by the EEOC relating to sexual harassment or sexual assault at Chipotle from 2015 through the present. For each such consent decree, please identify: the amount paid by Chipotle, the actions Chipotle was required to take following the decree/sanction, what geographic location the decree/sanction covered, and a description of the steps Chipotle took to comply with the decree/sanction.

The parties raise multiple issues with regard to this topic.  The Court begins with whether Defendants made misrepresentations to Plaintiff and the Court regarding consent decrees.  Plaintiff argues that "Chipotle consistently resisted discovery into this topic on the grounds that the terms and conditions of the Consent Decrees only apply to select geographic areas and have no application whatsoever to Ear of Corn in Rochester, Minnesota" and repeatedly represented to the Court that the Ear of Corn Chipotle Restaurant is not and has never been covered by any EEOC consent decree.  (Dkt. 159 at 27-30 (quoting various statements by Defendants).)  According to Plaintiff: "[T]he representations that the Consent Decrees are entirely limited to geographic areas not encompassing Minnesota are false.  Worse, this is the case for the most relevant Consent Decree in this case."  (*Id.* at 30.)  Plaintiff identifies the "most relevant Consent Decree" as the one arising from *EEOC v. Chipotle Mexican Grill, Inc.*, No. 8:20-cv-02128-T-30-AEP (M. D. Fla. July 15, 2021) ("the Jerome Consent Decree").  (*See id.*)  She seeks a sanction in the form of "an order finding that all of Chipotle's objections to producing documents and testimony regarding its EEOC Consent Decrees are waived."  (Dkt. 159 at 33.)

Defendants argue that "Plaintiff misunderstands what constitutes a nationwide consent decree." (Dkt. 167 at 20.)  They proceed to argue why the Jerome Consent Decree is not a "nationwide consent decree" by comparing it to a consent decree entered into by Walmart.  (*See id.* at 20-22.)  Defendants also contend that the Jerome Consent Decree "certainly did not impose obligations on the Ear of Corn restaurant staff or its management."  (*Id.* at 23.)

The Court rejects Defendants' arguments for multiple reasons.  First, the Jerome Consent Decree requires in paragraph 14 that "Defendant Chipotle Services, LLC," among other things, "**maintain** anti-discrimination policies and internal complaint procedures for complaints of discrimination, harassment and retaliation (collectively the 'Policies') **nationwide**," where those Policies must:

    a. Prohibit sexually harassing conduct at Chipotle, including but not limited to, unwanted sexually advances and unwanted sexual touching, and provide example of the prohibited conduct;

    b. Require managers/supervisors to monitor their locations to ensure compliance with company's antidiscrimination policies, and promptly escalate all verbal and written complaints of prohibited harassment or retaliation they receive and/or report prohibited harassment/retaliation they witness to the Respectful Workplace Hotline for investigation;

    c. Provide multiple avenues for employees to make complaints of sexual harassment including to any manager at the employee's store location, appropriate upper management officials, and the confidential Respectful Workplace hotline;

    d. Provide for discipline of managers and supervisors who fail to escalate complaints of harassment and/or retaliation in accordance with the Policies, including up to termination; and

  e. Assure employees that retaliation for reporting harassment will not be tolerated and provide for the appropriate discipline of employees who engage in retaliation.

(Dkt. 160-10 at 5 (emphases added).)  Chipotle Services, LLC's obligation to maintain these policies nationwide began 60 days after the effective date of July 15, 2021 (before Bailey sexually assaulted Plaintiff on November 23, 2021) and continued for 30 months after the effective date.  (*Id.* at 3 ¶ 8, 4 ¶ 11, 5-6 ¶ 14.)  As the Ear of Corn Chipotle Restaurant is located in the nation and was operating at the relevant time, the Jerome Consent Decree applied to that restaurant.

In an email to Plaintiff's counsel, Ms. Bulat responded to Plaintiff's contention that Defendants misled the Court and Plaintiff as follows:

> The Ear of Corn restaurant has never been covered by any consent decree. It is not referenced in the Jerome consent decree you cite and has never been referenced in any EEOC consent decree Chipotle has entered with the EEOC.
>
> You note that the Jerome consent decree required policy revisions and a commitment to follow Title VII's precepts. You omit that [sic] fact that Ms. Simpson testified yesterday that ***no policy revisions were required as a result of the Jerome consent decree*** because Chipotle's policies were already compliant. It is clear you have never negotiated a consent decree with the EEOC. The EEOC always requires the policy provisions even when no nationwide action or changes are required.
>
> Further, the commitment not to violate Title VII's requirements is already applicable to all employers in the country with 15 employees or more. The consent decree does nothing other than reiterate those requirements that already apply. Again, this is standard in any EEOC consent decree even when only one location is covered.

(Dkt. 160-12 at 1.)[16]

---

[16] Plaintiff describes certain statements in this letter as "unprofessional, personal attacks." (Dkt. 159 at 32.)  The Court agrees.  The Preamble to the Minnesota Rules of

Defendants' arguments miss the mark.  Defendants told the Court that the Ear of Corn Chipotle Restaurant "is not and has never been covered by any EEOC consent decree" (Dkt. 110 at 21 n.11) and that the Jerome Consent Decree "certainly did not impose obligations on the Ear of Corn restaurant staff or its management" (Dkt. 167 at 23).  But paragraph 14 of the Jerome Consent Decree imposes obligations on a "nationwide" basis—including the Ear of Corn Chipotle Restaurant.  According to Defendants, this does not matter because their policies were already compliant with those obligations.  (*See* Dkt. 160-12 at 1.)  Even if that is true, paragraph 14 imposes a requirement to "maintain" those policies.  (Dkt. 160-10 at 5.)  A requirement to "maintain" a policy is an ongoing requirement.

Defendants also argue that "[a]s a matter of routine practice, employers who enter into consent decrees with the EEOC—no matter whether it is on behalf of one charging party or a nationwide class—agree to comply with anti-discrimination laws and promulgate policies to support this compliance."  (Dkt. 167 at 23.)  That also may be true, but it does not alter the fact that the Jerome Consent Decree required Defendant Chipotle Services, LLC to "maintain" certain policies "nationwide," and therefore imposed that maintenance obligation on the Ear of Corn Chipotle Restaurant.  This obligation exists

---

Professional Conduct require a lawyer "to zealously protect and pursue a client's legitimate interests, within the bounds of the law, **while maintaining a professional, courteous, and civil attitude toward all persons involved in the legal system**."  (Minn. R. Prof. Conduct, Preamble (emphasis added).)  These Rules apply to all lawyers who practice in this District.  *See* D. Minn. LR 83.6(a).  This is a hard-fought case, but that does not excuse insulting or belittling comments to opposing counsel (which, in any event, add no persuasive value to a party's arguments).

regardless of whether the Jerome Consent Decree arose out of a "nationwide class" or a single charging party.

In sum, the Court finds that Defendants' statements that the Ear of Corn Chipotle Restaurant is not and has never been covered by any consent decree are simply wrong. Plaintiff seeks sanctions in the form of finding Defendants' objections waived due to these statements. The Court is inclined to make that finding based on the lack of merit to Defendants' argument that a requirement that Defendant Chipotle Services, LLC "maintain" certain policies "nationwide" somehow did not apply to the Ear of Corn Chipotle Restaurant. In any event, as set forth below, the Court overrules Defendants' objections for other independent reasons.

Yet again, Defendants argue Topic 23 is vague and ambiguous based on the original version of Topic 23, not the amended version. (Dkt. 126 at 36 (making arguments about "all consent decrees" directly below a restatement of the amended topic, which does not use the language "all consent decrees").) Yet again, the Court overrules the objection because it is not based on the language of the topic.

Defendants also argue that "'all consent decrees or sanctions' is vague and ambiguous," identifying a number of supposedly unclear aspects. (Dkt. 126 at 36-37.) Many of Defendants' questions here are answered by the amended topic. For example, Defendants ask if "consent decrees" includes "(a) the mere fact of a consent decree, or if it also includes (b) the terms of the consent decree, (c) the negotiation of those terms, (d) the facts of the litigation underlying the consent decree, (e) actions taken by Chipotle during a decree's monitoring period and/or (f) communications with the EEOC regarding

56

same." (*Id.* at 36.)  These questions are effectively answered by the fact that the amended topic states: "For each such consent decree, please identify: the amount paid by Chipotle, the actions Chipotle was required to take following the decree/sanction, what geographic location the decree/sanction covered, and a description of the steps Chipotle took to comply with the decree/sanction." (Dkt. 160-3 at 9-10.)  Defendants also argue: "It is unclear what the term 'sanctions' issued by the EEOC means and, therefore, what the scope of this term even is." (Dkt. 126 at 36.)  The Court finds it hard to believe that Defendants and their counsel do not have an understanding of what the term "sanction" means in the context of EEOC decrees.  *See StoneEagle Servs.*, 2015 WL 2452926, at *5. If a dispute arises as to the meaning of this term during questioning on Topic 23, the parties can contact the undersigned during the deposition and the Court will resolve the dispute.  The Court overrules the objections based on vagueness and overbreadth.

Defendants also argue that this topic seeks irrelevant information insofar as it seeks information about consent decrees involving "different restaurants overseen by different General Managers, different Field Leaders, and different Team Directors than those responsible for the Rochester Chipotle location." (Dkt. 126 at 37.)  According to Defendants, "consent decrees, and the obligations thereunder, are expressly limited to the precise restaurant or restaurants at issue." (*Id.*)  Having rejected this argument in connection with the Jerome Consent Decree, the Court rejects it again in connection with this objection.  Further, the Court is unwilling to rely on counsel's description of the scope of any consent decree given the disconnect between the plain language of the Jerome Consent Decree and Defendants' interpretation of that language.  Finally, the

Court finds that the scope of this topic is reasonably particular, including because information about what obligations the EEOC had imposed on Defendants from 2015 to the present with respect to sexual harassment and sexual assault is relevant to at least the negligent retention and supervision claims in this case. Defendants can make their arguments about whether any particular responsive consent decree applied to the Ear of Corn Chipotle Restaurant or imposed any relevant obligations on them at summary judgment or trial.

Defendants next make an "all facts" argument based on "all consent decrees" language. (Dkt. 126 at 37-38.) This objection is easily overruled as the amended topic does not use the words "all facts" or "all consent decrees."

Defendants also object on the grounds that "at a minimum, corporate representative [sic] would be required to review all consent decrees over a 10 year period (documents that can span 20 pages and contain countless terms); and review all materials related to actions taken by Chipotle during the compliance and monitoring period (e.g., training materials, annual reports)." (Dkt. 126 at 38.) This objection is overruled because the witness may rely on documents or other memory aids, and the fact that preparation may be onerous does not render the topic not reasonably particular. *See Prokosch*, 193 F.R.D. at 639; *Prairie River Home Care*, 2019 WL 13248862, at *19; *Starline Windows*, 2016 WL 4485564, at *2. These objections are overruled.

Finally, Defendants argue that "steps taken to comply with each consent decree would ultimately veer into information protected by the attorney-client privilege or work product doctrine." (Dkt. 126 at 39.) This concern is better addressed through appropriate

objections at the deposition in response to specific questions, not through a protective order precluding any inquiry into this topic. This objection is overruled.

For all these reasons, the Court denies the Motion for Protective Order and grants the Motion to Compel and for Sanctions as to Topic 23. Plaintiff will be permitted to depose a corporate witness or witnesses on this topic at a second Rule 30(b)(6) deposition.

> **Topic No. 24:** The total number of complaints of sexual harassment in the workplace by Chipotle employees at retail locations, from January 1, 2017 through December 31, 2021.

Defendants argue "[t]his topic seeks a numerical figure that is in no way related to the claims and defenses asserted in this action," including because Defendants operated between 2,400 to 3,000 restaurants with between 69,000 to 100,000 employees during that time frame. (Dkt. 126 at 39-40.) According to Defendants, this topic is outside of the scope of discovery, including because it encompasses sexual harassment by customers and third parties and is not limited to substantiated complaints. (*See id.*) Plaintiff, on the other hand, argues that "[t]his number is directly relevant to whether Chipotle's precautions are reasonable, and depending on the amount, could be compelling evidence that Chipotle had a rampant issue of sexual assault in the workplace that it should have addressed."

The Court finds that the information sought by this topic—a single number—is within the scope of discovery and proportional to the needs of the case. There is testimony that 100% of complaints that come in through a hotline or are reported by a manager are investigated and that Defendants document the sexual harassment

59

complaints that they investigate in a database. (Dkt. 114-1 at 36:8-37:15.) Defendants first argue that responding to this topic would be burdensome for an employee to "search through these old records to identify claims of sexual harassment that are comparable to that which is alleged here." (Dkt. 126 at 39-40.) After Plaintiff referenced this database in her brief (Dkt. 159 at 41), Defendants responded that this argument "ignores the points above, oversimplifies the nature of the information that is sought, and demonstrates a material misunderstanding of how Chipotle keeps its records." (Dkt. 167 at 28.) If there is something about how Defendants keep their records that renders this request unduly burdensome, Defendants should have explained that something in their brief. But nothing in the record before the Court indicates that obtaining this information would be difficult, much less particularly burdensome. (*See* Dkt. 121-1 at 31:11-37:5, 53:1-59:19 (describing Chipotle's Ethicspoint database).)

As to the probative value of the number, the Court finds it is probative insofar as it demonstrates Defendants' awareness of how often its employees reported sexual harassment, which is relevant to Plaintiff's claims in this case. That probative value, when balanced against the minimal burden associated with obtaining such information from a database, weighs in favor of permitting discovery. To the extent Defendants wish to make arguments about why that number is not probative, they have offered no evidence that the number would be meaningfully different if unsubstantiated complaints or complaints of harassment by customers or third parties were removed. Unsupported attacks on the probative value of this information do not support a conclusion that the discovery sought by Topic 24 is disproportionate to the needs of the case. Finally, the

60

Court recognizes that Plaintiff limited her nationwide written discovery to instances of sexual assaults.  (Dkt. 105 at 26 & n.8.)  That does not render a topic seeking the total number of complaints of sexual harassment in the workplace by Chipotle employees at retail locations, from January 1, 2017 through December 31, 2021 disproportionate to the needs of the case.

Accordingly, the Court denies the Motion for Protective Order and grants the Motion to Compel and for Sanctions as to Topic 24.

\* \* \*

In sum, as to the disputed topics, the Court denes the Motion for Protective Order entirely and grants the Motion to Compel and for Sanctions except insofar as Plaintiff seeks evidentiary sanctions.

### 3.    Second Rule 30(b)(6) Deposition and Other Sanctions

Having denied the Motion for Protective Order entirely and granted the Motion to Compel and for Sanctions except insofar as Plaintiff seeks evidentiary sanctions, the Court turns to the appropriate scope of relief.  First, as set forth above, the Court has ordered Defendants to designate and make available for a second Rule 30(b)(6) deposition a corporate witness or witnesses on Topics 4-6, 8, 11-19, and 21-24.  That witness or witnesses must be adequately prepared, consistent with Rule 30(b)(6) and the applicable case law.  Failure to produce a sufficiently prepared witness or witnesses will result in additional, more severe sanctions under Rule 37(b)(2).  Second, the Court awards Plaintiff the reasonable expenses incurred in making her Motion to Compel and for Sanctions because the Court granted that motion.  *See* Fed. R. Civ. P. 37(a)(5)(A).

61

Defendants were on notice that Plaintiff sought such sanctions (*see* Dkt. 159 at 47) and had the opportunity to respond in their brief (Dkt. 167) and at the September 30, 2025 hearing.  As to the exceptions to such an award, Defendants have not argued that Plaintiff failed to meet and confer, and in any event, the Court finds Plaintiff met that requirement. (*See* Dkt. 161.)  It should be evident from the Court's discussion of each disputed topic above, but in case it is not, the Court expressly finds that Defendants' objections were not substantially justified.  *See* Fed. R. Civ. P. 37(d)(3).  Rather, most of their objections were based on the original (rather than the operative) version of the topic or selective rewriting of the topic so Defendants could make certain objections (including claiming topics sought "all facts" when they did not or used the words "including' when they did not).  Moreover, many of Defendants' arguments were based on what could only be a fundamental misunderstanding of a Rule 30(b)(6) deposition's purpose or a disingenuous attempt to rewrite the discovery rules so Defendants could dictate how Plaintiff obtained (or did not obtain) discovery.  The Court could go on as to why Defendants' objections were not substantially justified, but need not, as Defendants' response to the Motion to Compel and for Sanctions focuses on evidentiary sanctions and does not address whether reasonable expenses would be appropriate if the Court granted Plaintiff's motion.  There are no other circumstances that would make an award of reasonable expenses unjust.  Consequently, the Court awards Plaintiff her reasonable expenses, including attorneys' fees, incurred in bringing her Motion to Compel and for Sanctions.  This award is against Defendants and their lead counsel, Martenson, Hasbrouck & Simon LLP.

Plaintiff must serve on Defendants a statement of the reasonable expenses (including attorneys' fees and costs) she incurred in connection with the Motion to Compel and for Sanctions within fourteen (14) days of the date of this Order.  If Defendants do not agree to the amount, they must file their objections on CM/ECF (along with Plaintiff's statement) within seven (7) days after receiving the amount from Plaintiff.  Plaintiff may respond to Defendants' filing within seven (7) days after the filing.  The Court will decide the amount of fees and costs based on the papers, unless the Court determines that a hearing is necessary.

Third, the Court sets the terms of the second deposition and otherwise sanctions Defendants for their failure to meet and confer as to Topics 5, 6, 8, 14, and 15 before filing the Motion for Protective Order.[17]  To begin, the second Rule 30(b)(6) deposition will take place in person, in Minneapolis, Minnesota, at the offices of Plaintiff's counsel (or another location of Plaintiff's choosing).  Given the number of topics remaining, Plaintiff will be permitted at least 7 hours on the record with the corporate witness(es).  Defendants will be responsible for all costs associated with the deposition, including the court reporter and video recording of the deposition.  The deposition must take place no more than 30 days after the date of this Order, and once the parties have identified the date, they must file a letter on CM/ECF informing the Court of the date so the Court can make itself available to resolve any disputes that arise at the deposition.  To the extent

---

[17]     The fact that Defendants offered a witness as to Topics 5 and 14 at the deposition itself does not change the fact that their Motion sought relief as those topics without meeting and conferring.  Moreover, their witness was inadequately prepared at least as to Topic 14.

Plaintiff seeks relief arising out of the deposition, whether it relates to the deposition itself or additional discovery, Plaintiff may file a motion seeking such relief no later than 14 days after the deposition concludes.

Fourth, as further sanction, the Court awards Plaintiff her attorneys' fees and costs incurred in connection with counsel's travel for the August 12, 2025 deposition, including her attorney's hourly rate for travel time, hotel costs, flight costs, and other reasonable expenses.[18]  This award is against Defendants and their lead counsel, Martenson, Hasbrouck & Simon LLP.  The Court finds this relief is an appropriate sanction for Defendants' violation of Local Rule 7.1(a) by failing to meet and confer as to Topics 5, 6, 8, 14, and 15.  *See* D. Minn. LR 1.3(a) ("[T]he Court may impose appropriate sanctions as needed to protect the parties and the interests of justice.").  Here, the interests of justice require that the second Rule 30(b)(6) deposition take place in a location that minimizes the inconvenience and cost to Plaintiff and that Plaintiff be put in the same position she would have been had Defendants not moved as to already agreed-to topics or had informed Plaintiff that they were reversing their withdrawal of objections to those topics.  (*See* Dkt. 159 at 19 ("Had Famuyide known about Chipotle's backtracking, she likely would not have incurred the costs of travelling to California for the deposition,

---

[18]     The Court recognizes that Plaintiff's counsel does not normally bill for travel. (*See* Dkt. 159 at 19 n.3.)  However, an attorney's time has monetary value, and Defendants' last-minute Motion for Protective Order and decision to seek relief as to agreed-upon topics violated the meet-and-confer requirement, impeded the Rule 30(b)(6) deposition, wasted Plaintiff's counsel's time, and demonstrated a complete lack of professional courtesy.  The Court finds awarding Plaintiff the cost of her counsel's travel time an "appropriate sanction[]" under LR 1.3.

instead opting to take the partial deposition via zoom and/or immediately moving to compel.").)  This relief is also awarded pursuant to the Court's inherent authority to manage the proceedings before it, as well as Rule 30(d)(2), which allows a court to "impose an appropriate sanction—including the reasonable expenses and attorney's fees incurred by any party—on a person who impedes, delays, or frustrates the fair examination of the deponent."  Fed. R. Civ. P. 30(d)(2). Here, Defendants' last-minute reversal as to Topics 6, 8, and 15 constitutes such conduct, including because it delayed examination as to those previously agreed-to Topics.

Plaintiff must serve on Defendants a statement of the reasonable expenses (including attorneys' fees and costs) she incurred in connection with counsel's travel for the Rule 30(b)(6) deposition in California within fourteen (14) days of the date of this Order.  If Defendants do not agree to the amount, they must file their objections on CM/ECF (along with Plaintiff's statement) within seven (7) days after receiving the amount from Plaintiff.  Plaintiff may respond to Defendants' filing within seven (7) days after the filing.  The Court will decide the amount of fees and costs based on the papers, unless the Court determines that a hearing is necessary.

Finally, the Court turns to the remedy for how Defendants generally have conducted themselves with respect to the Rule 30(b)(6) deposition.  As to the briefing, Defendants' arguments lack merit.  As discussed in detail above, many were not even based on the actual language of the topic.  Perhaps the discrepancies between the operative topic and Defendants' arguments were due to sloppiness and hasty drafting. Perhaps they were an intentional attempt to obfuscate the issues.  It does not really

matter, because neither would be acceptable.  The Court also notes Ms. Bulat's dismissive response when Plaintiff's counsel brought the July 7, 2025 letter withdrawing Defendants' objections to Topics 5, 6, 8, 14, and 15 to her attention at the Rule 30(b)(6) deposition.  (Dkt. 160-8 at 12:14-20 ("I don't know what document you're referring to but, no, the witness is being presented on the topics I just listed.").)  Given that the July 7, 2025 letter was drafted by Mr. Treco (Ms. Bulat's colleague at Martenson, Hasbrouck, & Simon LLP), her immediate dismissal of its contents is concerning.  This conduct and the fact that the Motion for Protective Order sought relief as to agreed-to topics is not excused by Defendants' internal "miscommunications" and forgetfulness.

The Court notes that Ms. Bulat and Mr. Treco of Martenson, Hasbrouck & Simon LLP, who are lead counsel for Defendants and who engaged in the Rule 30(b)(6) deposition-related conduct giving rise to sanctions, are admitted pro hac vice in this matter.  As further remedy for Defendants' violation of Local Rule 7.1(a) and conduct in connection with the Rule 30(b)(6) deposition, and pursuant to the Court's inherent authority, the Court orders that Defendants' local counsel, Lewis Brisbois Bisgaard & Smith LLP, must participate in the preparation and presentation of all aspects of this case going forward.  *See Cronin v. Sanuwave Health, Inc.*, No. 23-CV-1295 (SRN/ECW), 2024 WL 3518142, at *14 (D. Minn. July 24, 2024).  This participation includes reviewing all correspondence between counsel, participation in all meet-and-confers, reviewing all of Defendants' court filings before they are made, signing all filings, and local counsel's in-person appearance at all depositions and court proceedings going forward.  If the Court holds a proceeding by audio or video conference, local counsel

66

must participate. The Court trusts that local counsel's participation will ensure that this matter is litigated in a manner that complies with the Federal and Local Rules and that "secure[s] the just, speedy, and inexpensive determination of" this action and its proceedings. *See* Fed. R. Civ. P. 1.

## IV.   ORDER

For all these reasons, and based on the files, records, and proceedings herein, **IT IS ORDERED** that:

1.   Defendant's Motion for Protective Order is **DENIED**.

2.   Plaintiff's Motion to Compel and for Sanctions is **DENIED** insofar as Plaintiff seeks evidentiary sanctions and otherwise **GRANTED**.

3.   Defendants must designate a corporate witness or witnesses for a second Rule 30(b)(6) deposition on Topics 4-6, 8, 11-19, and 21-24. The second Rule 30(b)(6) deposition will take place in person, in Minneapolis, Minnesota, at the offices of Plaintiff's counsel (or another location of Plaintiff's choosing). Plaintiff will be permitted at least 7 hours on the record with the corporate witness(es). Defendants will be responsible for all costs associated with the deposition, including the court reporter and video recording of the deposition. The deposition must take place no more than 30 days after the date of this Order, and once the parties have identified the date, they must file a letter on CM/ECF informing the Court of the date so the Court can make itself available to resolve any disputes that arise at the deposition. To the extent Plaintiff seeks relief arising out of the deposition, whether it relates to the deposition itself or additional

discovery, Plaintiff may file a motion seeking such relief no later than 14 days after the deposition concludes.

4.  Plaintiff is awarded the reasonable expenses she incurred in bringing her Motion to Compel and for Sanctions and opposing Plaintiff's Motion for Protective Order.  This award is against Defendants and their lead counsel, Martenson, Hasbrouck & Simon LLP.  Plaintiff must serve on Defendants a statement of the reasonable expenses (including attorneys' fees and costs) she incurred in connection with the Motion to Compel and for Sanctions within fourteen (14) days of the date of this Order.  If Defendants do not agree to the amount, they must file their objections on CM/ECF (along with Plaintiff's statement) within seven (7) days after receiving the amount from Plaintiff.  Plaintiff may respond to Defendants' filing within seven (7) days after the filing.  The Court will decide the amount of fees and costs based on the papers, unless the Court determines that a hearing is necessary.

5.  The Court also awards Plaintiff her attorneys' fees and costs incurred traveling for the August 12, 2025 deposition, including her attorney's hourly rate for travel time, hotel costs, flight costs, and other reasonable expenses.  This award is against Defendants and their lead counsel, Martenson, Hasbrouck & Simon LLP.  Plaintiff must serve on Defendants a statement of the reasonable expenses (including attorneys' fees and costs) she incurred in connection with counsel's travel for the Rule 30(b)(6) deposition in California within fourteen (14) days of the date of this Order.  If Defendants do not agree to the amount, they must file their objections on CM/ECF (along with Plaintiff's statement) within seven (7) days after receiving the amount from Plaintiff.

Plaintiff may respond to Defendants' filing within seven (7) days after the filing.  The Court will decide the amount of fees and costs based on the papers, unless the Court determines that a hearing is necessary.

6.      Defendants' local counsel, Lewis Brisbois Bisgaard & Smith LLP, must participate in the preparation and presentation of all aspects of this case going forward. This participation includes reviewing all correspondence between counsel, participation in all meet-and-confers, reviewing all of Defendants' court filings before they are made, signing all filings, and local counsel's in-person appearance at all depositions and court proceedings going forward.  If the Court holds a proceeding by audio or video conference, local counsel must participate.

Dated: March 18, 2026                    _s/Elizabeth Cowan Wright_____
                                         ELIZABETH COWAN WRIGHT
                                         United States Magistrate Judge