**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Eniola Famuyide,

      Plaintiff,

v.

Chipotle Mexican Grill, Inc., and
Chipotle Services, LLC,

      Defendants.

Case No. 23-cv-01127 (DWF/ECW)

**ORDER**

---

This matter is before the Court on Defendants' Motion for Leave to Take Deposition of Lionell Bailey (Dkt. 130) and Motion for Leave to Amend Answer and Affirmative and Other Defenses to Plaintiff's Complaint ("Motion to Amend") (Dkt. 136), both filed on August 12, 2025.  For the reasons stated below, the Court denies Defendants' Motion for Leave to Take Deposition of Lionell Bailey, and grants in part and denies in part Defendants' Motion to Amend.

## I.    BACKGROUND

Plaintiff filed a Complaint in this matter on April 20, 2023.  (Dkt. 1.)  The Complaint alleges that Defendants Chipotle Mexican Grill, Inc. and Chipotle Services, LLC hired a registered sex offender, Lionell Bailey, who sexually harassed and sexually

assaulted[1] Plaintiff in the Chipotle restaurant where she worked.  (*Id.* at 1.)[2]  On May 15, 2023, Defendants filed a Motion to Compel Arbitration and to Dismiss, or, in the Alternative, Stay These Proceedings Pending Arbitration (Dkt. 7), which was denied by United States District Judge Donovan W. Frank on August 31, 2023 (Dkt. 37).

On September 14, 2023, Defendants filed their Answer.  (Dkt. 39.)  Defendants subsequently appealed the Order denying their Motion to Compel Arbitration and to Dismiss, or, in the Alternative, Stay These Proceedings Pending Arbitration.  (Dkt. 42.)  The Eighth Circuit affirmed the denial on August 4, 2024.  (Dkt. 52.)

On October 24, 2024, the Parties submitted a Joint Rule 26(f) Report proposing that "Motions seeking to amend the pleadings must be filed and served by 30 days from the date the parties file this report."  (Dkt. 63 at 8.)  After confirming this deadline during the Rule 16 conference on January 6, 2026, the Court issued a scheduling order adopting this proposal and setting November 24, 2024 as the deadline for motions to amend.  (Dkt. 71; Dkt. 72 at 4.)  This scheduling order also required fact discovery to be complete by April 15, 2025.  (*Id.* at 3.)  However, on April 9, 2025, the parties jointly moved to

---

[1]   On January 23, 2024, Bailey pleaded guilty to criminal sexual conduct in the third degree in violation of Minn. Stat. § 609.344, subd. 1(a) (use of coercion to accomplish sexual penetration) in connection with his conduct towards Plaintiff on November 23, 2021.  (*See* Dkt. 133-5.)  Notwithstanding his guilty plea, Defendants refer to an "alleged assault" throughout their briefs and in their proposed amended answer.  (*See, e.g.*, Dkt. 132 at 7; Dkt. 138 at 1, 5; Dkt. 139-2 at 5.)  Given Bailey's guilty plea, the Court does not use the word "alleged" when describing his criminal sexual conduct as to Plaintiff.

[2]   Citations to page numbers are to the CM/ECF pagination unless otherwise indicated.

amend the scheduling order.[3]  (Dkt. 76.)  The Court granted the motion and issued a new

Scheduling Order, which required the parties to "commence fact discovery procedures in

time to be completed on or before **July 29, 2025**."  (Dkt. 78 at 2.)

On May 29, 2025, Defendants deposed Plaintiff.  (*See* Dkt. 138 at 2.)

On June 23, 2025, counsel for Defendants emailed counsel for Plaintiff regarding

their intention to file a motion seeking leave to depose Lionell Bailey, who was

incarcerated at MFC-Faribault at that time.  (Dkt. 133-1 at 2, Dkt. 133-8 at 1.)

Defendants' counsel stated their intent to move for leave to depose Bailey on June 26,

2025 in that letter and proposed dates of July 10, 17, and 24, 2025.  (Dkt. 133-1 at 1.)  On

June 26, 2025, and again on July 3, 2025, Plaintiff's counsel informed Defendants'

counsel that Plaintiff opposed Bailey's deposition.  (Dkt. 133-3 at 2.)  Defendants'

counsel sent another email to Plaintiff's counsel regarding their intent to depose Bailey

on July 7[4] and asked Plaintiff's counsel to state whether Plaintiff maintained her

objection by July 10, 2025 "so we can timely notify the Court of any remaining disputes

on this issue."  (Dkt. 133-6.)  On July 23, 2025, Defendants' counsel followed up with

---

[3]    This motion did not seek amendment of the November 24, 2024 deadline to file
motions to amend the pleadings.  (*See* Dkt. 76 at 5.)

[4]    In their meet and confer statement in support of their Motion to Amend,
Defendants assert that "Counsel for Defendants attempted to initiate a good faith
conferral by transmitting to Plaintiff's counsel a letter on July 7, 2025, explaining in
detail the reasons for amending the Affirmative Defenses and inviting Plaintiff's counsel
to discuss.  To date, Plaintiff's counsel has not responded to this letter."  (Dkt. 140 at 1.)
No such letter has been filed with the Court.  To the extent that Defendants were referring
to the July 7, 2025 letter filed at Docket 133-4, that letter does not mention Defendants'
intention to amend their answer.  (*See* Dkt. 133-4.)

Plaintiff's counsel because they had not yet received a response, and wished to raise the dispute with the Court. (Dkt. 133-6.) On July 28, 2025, Plaintiff's counsel responded that Plaintiff remained opposed to Bailey's deposition. (Dkt. 133-7.)

On August 12, 2025, Defendants filed their Motion for Leave to Take Deposition of Lionell Bailey and their Motion to Amend. (Dkts. 130, 136.) Plaintiff filed her Opposition to these motions on August 26, 2025 (Dkts. 150, 151) and the Court heard argument on these motions on September 30, 2025 (Dkt. 169). The Motions are ripe for decision.

## II.    LEGAL STANDARD

Rule 16(b)(4) of the Federal Rules of Civil Procedure provides that "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). Similarly, Local Rule 16.3 requires a party moving to modify a scheduling order to "establish good cause" for the proposed modification.

Scheduling orders pursuant to Rule 16(b)(1) "assure[ ] that at some point both the parties and the pleadings will be fixed. . . ." Fed. R. Civ. P. 16(b), advisory committee's note to 1983 amendment. Moreover, "Rule 16(b) assures that a magistrate judge's scheduling order 'is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded without peril." *Archer Daniels Midland Co. v. Aon Risk Servs., Inc.*, 187 F.R.D. 578, 582 (D. Minn. 1999) (citation modified).

"The primary measure of good cause is the movant's diligence in attempting to meet the order's requirements." *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716-17 (8th Cir. 2008) (quoting *Rahn v. Hawkins*, 464 F.3d 813, 822 (8th Cir. 2006)); *see*

*also* Fed. R. Civ. P. 16(b), advisory committee's note to 1983 amendment ("[T]he court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension."). "The good cause standard is an exacting one, for it demands a demonstration that the existing schedule cannot be reasonably met despite the diligence of the party seeking the extension." *Scheidecker v. Arvig Enters.*, 193 F.R.D. 630, 632 (D. Minn. 2000) (citation modified).

While the prejudice to the nonmovant resulting from modification of the scheduling order may also be a relevant factor, generally, the Court will not consider prejudice if the movant has not been diligent in meeting the scheduling order's deadlines. *See Bradford v. DANA Corp.*, 249 F.3d 807, 809 (8th Cir. 2001) (concluding that there was "no need to explore beyond the first criterion, [diligence,] because the record clearly demonstrate[d] that Bradford made only minimal efforts to satisfy the [scheduling order's] requirements").

### III.    ANALYSIS

The Court begins with Defendants' Motion for Leave to Take Deposition of Lionell Bailey and then turns to their Motion to Amend.

### A.    Motion for Leave to Take Deposition of Lionell Bailey

Defendants seek to depose Lionell Bailey, who pleaded guilty to criminal sexual conduct in the third degree in violation of Minn. Stat. § 609.344, subd. 1(a), in connection with his assault of Plaintiff (his coworker at the time) in a Chipotle bathroom on November 23, 2021.  (Dkt. 130 at 1; Dkt. 133-5.)  Bailey is currently incarcerated at Minnesota Correctional Facility, Faribault.  *See* Sentencing Tr. at *6, *State of Minnesota*

*v. Lionell Bailey*, No. 55-CR-21-7299 (Minn. Dist. Ct., Jan. 23, 2024); *see also* Dkt. 133-8. Pursuant to Federal Rule of Civil Procedure 30(a)(2)(B), a party must obtain leave of court to take a deposition if the deponent is confined in prison. Here, Defendants did not seek leave of the Court to take Bailey's deposition until August 12, 2025, two seeks after the deadline for completion of fact discovery. (*See* Dkt. 78 at 2 (requiring fact discovery to be complete by July 29, 2025); Dkt. 130 (motion filed on August 12, 2025).)

Defendants did not directly address the Rule 16(b)(4) good cause standard in their memorandum in support of this Motion. (*See* Dkt. 132.) However, Defendants claim the Motion is timely under the circumstances because they promptly brought their motion after the dispute "ripened to a point that could be considered by the Court." (Dkt. 132 at 10.) Defendants suggest that Plaintiff is responsible for the fact that "the dispute did not ripen faster than it did" because Plaintiff did not respond to certain meet and confer communications quickly enough. (*Id.* at 10-12.)

Plaintiff responds that Defendants had been on notice of Plaintiff's opposition to the motion since June 26, 2025. (Dkt. 150 at 3; Dkt. 152 ¶ 3.) Further, Plaintiff argues that Defendants have been aware of Bailey's role in this case for the duration of this suit, and there is no reason that Defendants could not have sought his deposition sooner. (*Id.* at 2-3.)

At the September 30, 2025 hearing, counsel for Defendants asserted that it was not until after the May 29, 2025 deposition of Plaintiff that Defendants determined that they needed to depose Bailey. The Court asked counsel to clarify whether "until Ms. Famuyide's deposition, Chipotle was content not to depose Mr. Bailey." Counsel for

Defendants responded "No, Your Honor, I don't want to say they were content, it was as far as finalizing the strategy decision, it was after the deposition of Ms. Famuyide." Defendants later asserted that "the first discussion about deposing Mr. Bailey occurred after Ms. Famuyide's deposition."

The Court finds that Defendants have not demonstrated good cause to modify the scheduling order to allow for the deposition of Lionell Bailey. The Complaint identifies Bailey as the person who sexually harassed and sexually assaulted Plaintiff and states that criminal charges were pending at that time. (Dkt. 1 ¶¶ 35-39, 48, 71-72.) Bailey entered his guilty plea to criminal sexual conduct in the third degree on January 23, 2024. (Dkt. 133-5 at 21.) Defendants have not asserted that they did not know about his guilty plea until Plaintiff's deposition on May 29, 2025, nor have they said they experienced any delay in learning about the guilty plea that would justify the timing of this Motion. Instead, Defendants give somewhat inconsistent statements as to when they determined they needed to depose Bailey. Based on Defendants' counsel's statement at the September 30, 2025 hearing that they "finaliz[ed]" the "strategy decision" to depose Bailey after Plaintiff's deposition, suggesting that they had discussed the need to depose Bailey before May 29, 2025. This would not be surprising, as Defendants describe Bailey's anticipated testimony as to Plaintiff's allegations that Bailey harassed her and others in the workplace as a "core contention in this lawsuit." (Dkt. 132 at 6.) However, Defendants' counsel later asserted during the September 30, 2025 hearing that no discussion about deposing Bailey took place until after Plaintiff's May 29, 2025 deposition. If so, the failure of Defendants' counsel to discuss whether they might need

7

to depose Bailey before Plaintiff's deposition hardly shows diligence, given Defendants' description of Plaintiff's allegations of his harassment as a "core contention."

Moreover, Defendants did not identify in their brief what about Plaintiff's deposition caused counsel to think for the first time that they may need to depose Bailey. Defendants' counsel struggled to do so at the September 30, 2025 hearing, finally identifying Plaintiff's testimony that she had "voluntarily" gone to the bathroom where Bailey sexually assaulted her and had locked the bathroom door, and then identifying perceived discrepancies between the Complaint and Plaintiff's deposition testimony as to when Plaintiff shift ended, who approached who and where, and whether that testimony aligned with video evidence or what people other than Plaintiff said occurred. Defendants' counsel also identified Plaintiffs' testimony about how she felt threatened as new information.  The Court is not convinced that it never occurred to Defendants' counsel before Plaintiff's deposition that some of Plaintiff's testimony might give rise to the need to depose Bailey, who perpetrated the sexual assault underlying this lawsuit, or that Defendants' counsel might need to structure discovery to allow time to do so given his incarcerated status.

Even if it is true that Defendants never contemplated deposing Bailey until after Plaintiff's deposition, and that new facts revealed during Plaintiff's deposition triggered the need for Defendants to depose Bailey, Defendants still did not act diligently in the two months following Plaintiff's May 29, 2025 deposition to meet the July 29, 2025 deadline for completion of fact discovery.  First, Defendants did not advise Plaintiff's

counsel of their intent to seek leave to depose Bailey until June 23, 2026, almost a month after Plaintiff's deposition.  (Dkt. 133-1.)  Defendants give no explanation for this delay.

Second, Defendants have not shown diligence as to the over six-week delay in filing this Motion after receiving notice of Plaintiff's opposition to the deposition, which occurred orally on June 26, 2025, when Plaintiff's counsel informed Defendants' counsel during a meet-and-confer that Plaintiff opposed the motion, and was confirmed in writing on July 3, 2025.  (Dkt. 152 ¶ 3; *see also* Dkt. 133-3 at 2.)  Defendants argue that they brought this dispute to the Court in a timely manner because they continued to meet and confer with Plaintiff as to Bailey's deposition.  (*See* Dkt. 132 at 10-11.)  Plaintiff responds that her objection was clear as of June 26, 2025, and was made clear again on July 3, 2025.  (Dkt. 150 at 3.)  Even if this Court were persuaded that Plaintiff somehow left open the possibility that she would agree to Bailey's deposition in the July 3, 2025 letter,[5] Defendants still were not diligent during this six-week period.  It was Defendants'

---

[5]    Defendants argue that the July 3, 2025 letter "did, however, suggest that there was an opportunity to resolve the dispute, noting that it was not clear what subject matter Bailey would be questioned about."  (Dkt. 132 at 11.)  Plaintiff's counsel's July 3, 2025 letter states:

- "We previously informed you that we oppose this deposition during the meet and confer phone conference on June 26, 2025, and you requested our position in writing."

- "Ms. Famuyide opposes the deposition of Mr. Bailey in prison and therefore does not waive a hearing on the motion. We do not believe that Bailey has information regarding nonprivileged matters that are relevant to the parties' claims and defenses in this case that cannot be obtained via other means of discovery."

responsibility to timely raise this issue with the Court regardless Plaintiff's conduct. *See Architectural BusStrut Corp. v. Target Corp.*, No. 19-CV-968 (DSD/ECW), 2021 WL 2646808, at \*6 (D. Minn. Mar. 8, 2021) ("That said, despite any actions or requests by Target, it was incumbent upon ABC to protect its interest and to act diligently in bringing the present motion."); *AGA Med. Corp. v. W.L. Gore & Assocs., Inc.*, No. CV 10-3734 (JNE/JSM), 2012 WL 12888665, at \*7 (D. Minn. Oct. 5, 2012) (examining diligence under Rule 16 and finding that "even presuming that AGA was working in good faith to diligently provide information to Gore in order to obtain its stipulation to the proposed amendment and Gore was intentionally delaying the process by seeking more information, it was AGA's obligation, and not Gore's, to protect its own interests").

Citing *Tri-Marketing, Inc. v. Mainstream Marketing Services, Inc.,* No. CV 09-0013 (DWF/RLE), 2010 WL 11537450 (D. Minn. Feb. 16, 2010), Defendants contend that it would have been "premature" to bring the Motion earlier. (Dkt. 132 at 11-12.) In *Tri-Marketing*, the court concluded that the movant had not met their meet and confer

---

- "The burden and expense of the proposed deposition do not outweigh its likely benefit, therefore, should Chipotle decide to pursue a motion seeking leave to depose Lionell Bailey, Ms. Famuyide will object for the reasons set forth above."

(Dkt. 133-3 at 1, 3.)

The fact that the letter also pointed out that "Chipotle has not provided any information as to the purpose of deposing Bailey" (*id.* at 3) hardly suggests that Plaintiff's opposition was equivocal or open to further discussion. Defendants' hope that they could persuade Plaintiff to change her mind through continued correspondence does not amount to diligence.

obligations[6] regarding a motion to compel discovery where the "sole effort at a 'meet and confer,'" before or after filing the motion, was sending an email "outlining its objections to various discovery responses." 2010 WL 11537450 at *3. Here, the parties met and conferred regarding Bailey's deposition on the phone on June 26, 2025, during which Plaintiff stated her opposition. (Dkt. 152 ¶ 3.) Plaintiff's opposition was reiterated in the July 3, 2025 letter. (Dkt. 133-3.) The Court recognizes the tension between trying to reach compromise on a disputed discovery issue and timely filing a motion seeking relief, but ultimately, it is for the party seeking relief to ensure they meet case deadlines. *See Architectural BusStrut*, 2021 WL 2646808, at *6; *AGA Med. Corp.*, 2012 WL 12888665, at *7. Defendants' July 7, 2025 request that Plaintiff state "whether you intend to maintain your objection by July 10 so we can timely notify the Court of any remaining disputes on this issue" suggests Defendants were aware of their responsibility, yet Defendants did not follow up with Plaintiff until July 23, 2025, and did not file their Motion until August 12, 2026, two weeks after fact discovery closed.[7]

---

[6] *Tri-Marketing* predates the meet-and-confer requirements of Local Rule 7.1(a), which were added in 2012. Instead, the court in *Tri-Marketing* applied the meet and confer requirements of Local Rule 37.1, which was abrogated as superfluous following the adoption of Local Rule 7.1(a). *See* 2012 Advisory Committee's Note to D. Minn. LR 7.1; 2012 Advisory Committee's Note to D. Minn. LR 37.1. This does not alter the fact that the parties never met and conferred in *Tri-Marketing*, while here, the meet and confer requirement was satisfied by the parties' telephone discussion on June 26, 2025.

[7] Moreover, as Plaintiff points out, Plaintiff's consent to Bailey's deposition would not have eliminated Defendants' obligation to bring a motion, as leave of court is required to depose an incarcerated person. *See* Fed. R. Civ. P. 30(a)(2)(B).

In sum, even if the Court accepts that Defendants never contemplated the need to depose Bailey until Plaintiff's deposition on May 29, 2025, Defendants did not act diligently to seek leave to depose Bailey during the almost four weeks between that deposition and asking Plaintiff if she would consent to Bailey's deposition on June 23, 2025, nor did they act diligently after learning of Plaintiff's opposition on June 26, 2025 (confirmed in writing on July 3, 2025).  Defendants have not shown that they could not reasonably have brought a motion for leave to depose Bailey in time to meet the July 29, 2025 deadline for completion of fact discovery.  *Scheidecker*, 193 F.R.D. 630, 632 (D. Minn. 2000) ("The good cause standard is an exacting one, for it demands a demonstration that the existing schedule cannot be reasonably met despite the diligence of the party seeking the extension.") (citation modified).  "It hardly bears mentioning that carelessness is not compatible with a finding of diligence and offers no reason for a grant for relief."  *E.E.O.C. v. Hibbing Taconite Co.*, 266 F.R.D. 260, 265 (D. Minn. 2009) (citation modified); *see also C.H. Robinson Co. v. Zurich Am. Ins. Co.*, Civ. No. 02-4794 (PAM/RLE), 2004 WL 1765320 at *1 (D. Minn. Aug. 05, 2004) ("Carelessness does not excuse dilatoriness and 'offers no reason for a grant of relief.'") (quoting *N. Star Mut. Ins. Co. v. Zurich Ins. Co.*, 269 F. Supp. 2d 1140, 1144 (D. Minn. 2003)); *Rosati v. Cleveland-Cliffs, Inc.*, 259 F. Supp. 2d 861, 875 (D. Minn. 2003) ("Carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief.") (citation modified).  Defendants' lack of diligence means they have not shown good cause to amend the scheduling order to permit Bailey's deposition.  *See Sherman*, 532 F.3d at 716-17;  Fed. R. Civ. P. 16(b)(4).  Because Defendants have not shown good

cause, the Court need not consider any potential prejudice to Plaintiff.  *See Bradford*, 249 F.3d at 809.  The Court denies the Motion for Leave to Take Deposition of Lionell Bailey for lack of good cause.

**B.      Motion to Amend**

The Court next considers Defendant's Motion to Amend.  Generally, motions to amend pleadings are governed by Rule 15 of the Federal Rules of Civil Procedure, which provides that courts should freely give leave to amend when justice so requires.  Fed. R. Civ. P. 15(2).  However, because Defendants have brought this Motion after the deadline for such motions set by the Court's scheduling order, Defendants must also satisfy the requirements of Rule 16, which requires a showing of good cause to modify a scheduling order.  Fed. R. Civ. P. 16(a)(4).

Defendants seek to amend two aspects of their Answer: to "enhance and clarify" Defendants' Tenth Affirmative Defense, and to withdraw Defendant's Sixteenth Affirmative Defense.  (Dkt. 138 at 7.)  The Court considers each proposed amendment in turn.

**1.      Defendants' Tenth Affirmative Defense**

Defendant's Tenth Affirmative Defense originally stated:

> No act or omission of the Defendants proximately caused or contributed to any of the injuries or damages allegedly sustained by Plaintiff, and, therefore, Plaintiff does not have any right of recovery against Defendants.

(Dkt. 39 at 4.)  Defendants propose amending this language to the following:

> No act or omission of the Defendants proximately caused or contributed to any of the injuries or damages allegedly sustained by Plaintiff, and, therefore, Plaintiff does not have any right of recovery against Defendants. *Specifically,*

*Plaintiff admits that she was not performing work duties when the alleged assault occurred; was not acting under the authority of a supervisor when the alleged assault occurred; and in the events leading up to the alleged assault was acting of her own free will and not under threat of violence or force when she acquiesced to the assailant's request to leave the employee area of the restaurant and go to the bathroom, where the assault is alleged to have occurred. Accordingly, Plaintiff's actions constitute a superseding intervening cause with respect to the assault and battery that she alleges Defendants' negligence caused.*

(Dkt. 138 at 5 (additions in italics).)  Defendants argue that this amendment is based on new information that Defendants learned during Plaintiff's deposition.  (*Id.* at 6-7.) Specifically, Defendants point to the fact that the Complaint alleges that Bailey "coerced" Plaintiff into the men's bathroom (Dkt. 1 ¶ 37), and that in her deposition, Plaintiff testified that Bailey "didn't use words of violence or threaten [her] physically" when he asked her to follow him to the bathroom (Dkt. 95 at 174).  (Dkt. 138 at 6-7.)  Defendants cite *Green Plains Otter Tail, LLC v. Pro-Env't, Inc.*, No. 16-CV-370 (DWF/LIB) 2017 WL 9885436 *7 (D. Minn. Dec. 21, 2017) for the proposition that new information that alerts a defendant to a potential affirmative defense can provide good cause to modify a scheduling order.  (Dkt. 138 at 7.)

Plaintiff responds that no such new information exists here because her deposition testimony is consistent with the allegations in the Complaint, and also consistent with her statements in a police report that was produced to Defendants early in the case, and therefore her deposition does not provide good cause to modify the scheduling order. (Dkt. 151 at 2.)

The Court agrees that Plaintiff's deposition testimony is consistent with information already known to Defendants.  The Complaint does not allege that Bailey

used words of violence or threatened her to follow him into the bathroom. Rather, the Complaint alleges that Bailey repeatedly sexually harassed Plaintiff beginning "almost immediately after her employment began" and that on November 23, 2021, "Bailey again asked Famuyide if she wanted to have sex with him. She said no. He continued to harass her throughout the day, becoming increasingly aggressive and persistent with his sexual advances. Famuyide attempted to ignore him or tell him 'no,' to no avail" and that afternoon, "Bailey successfully coerced Famuyide into the men's bathroom." (*Id.* ¶¶ 22, 36-37.)

This allegation is consistent with Plaintiff's deposition testimony on this topic, which was as follows:

Q. So it's your testimony he comes and goes five times asking for sex. Can you recall the words he used to ask for sex on any of the five interactions you had?

A. Well, he asked me, "Would you like to have sex?" And I said, "No." And then he's like "C'mon, c'mon, c'mon." And then I said, "No." And he would just repeat that. He would be, like, "Do you want to have sex?" and he was like, "Aw, c'mon. Do you want to have sex?" And I said, "No."

Q. Okay. And then what happened next?

A. And then he kept asking me and he was like -- he told me to follow him. He was like "C'mon, c'mon." And I didn't want to leave. He told me -- because we were the two people on the line so he -- he told me to follow him. I thought I -- I followed him and then he led me to the bathroom and he took me into the bathroom.

Q. So he – you're on the line and on the line, he says, "Follow me"?

A. Yes. And he -- and each time he asked he got more aggressive, so I -- it was -- I had no choice. I felt like I had no choice.

Q. How was he asking -- why do you think he was aggressive?

15

A. I don't know. I couldn't -- but he was just aggressive and -- he was aggressive.

Q. What about his questions and comments made you think he was being aggressive?

A. I don't know. It was a feeling. He was just up in my face and it was very uncomfortable. If I moved back, he moved towards me.

. . .

Q.   Okay.  Why did you follow him to the bathroom?

A.   He was getting aggressive and I didn't - at that time I -- I didn't -- I don't know, honestly. It's just I was feeling uncomfortable in a position where I didn't have a choice but to follow him.

Q.   What made you think you didn't have a choice but to follow him to the bathroom?

A.   Because he was aggressive and he was -- and it was just -- he was known for being violent and I . . .

Q.   Anything else?

A.   No.

Q.   Now, you said he was being aggressive, but the -- how was he being aggressive that made you felt like you had to go with him to the bathroom?

MS. DATTILO:  Objection. Asked and answered.

A.   He was aggressive and in my face. And it was just his demeanor.

Q.   And so that would, again, be on the line where he was being aggressive and in your face?

Q.   And how is he in your face? His -- was his face in your face?

A.   Yes.

Q.   How -

A.   It was very close.

16

Q.   How close is his face to your face when you felt like he was getting in your face?

A.   Very close.

 Q.   Closer than a foot?

A.   Yes.

Q.   Closer than 6 inches?

A.   Close enough where he could -- he could whisper in my ear and I could feel his breath.

…

Q.   And so when he asked you to follow you - for you to follow him to the bathroom, he didn't threaten you if you didn't, did he?

A.   He didn't use words of violence or threaten me physically, but the -- but he was still -- I felt very uncomfortable, very intimidated.

Q.   And he didn't say anything bad was going to happen to you if you didn't follow him to the restroom, did he?

A.   No.

(Dkt. 95 at 168-74.)

The Court concludes that this testimony is consistent with the allegation in the

Complaint that Bailey coerced Plaintiff into the bathroom.[8]  (*See* Dkt. 1 ¶ 37.)  The Court

---

[8]     The Court also finds that Plaintiff's deposition testimony is consistent with her statements in the Rochester Police Department Report, including:

- [Bailey] has been sexually harassing me and wanting to have sex with me.
- I have always told him no to his advances and he just laughs it off.
- I have told him no several times.
- He has always waited a week or so and then asked me again.
- Today he asked me again if I wanted to.
- I told him no.

17

notes that Minnesota's criminal sexual conduct statute defines "coercion" as "the use by the actor of words or circumstances that cause the complainant reasonably to fear the infliction of bodily harm upon the complainant or another, or the use by the actor of confinement, or superior size or strength, against the complainant to accomplish the act. Proof of coercion does not require proof of a specific act or threat."  Minn. Stat. §§ 609.341, subd. 14, 609.342, subd. 1(c)(i).  The fact that Defendants may have initially read "coerced" in the Complaint to suggest words of violence or physical threats, when the Complaint does not allege those specifics, does not establish good cause under Rule 16.

Likewise, the fact that Defendants learned additional details about the nature of the coercion does not automatically establish good cause to modify the scheduling order to allow for this amendment.  *See Cargill, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, No. 21-CV-2563 (JNE/DTS), 2024 WL 2154017 (D. Minn. Apr. 23, 2024) ("The discovery of new and helpful information does not necessarily establish good cause.").  It is true that "[g]ood cause to allow amendment may exist where a party learns of information during the course of litigation that provides the basis for a new claim, and

---

- He took me to the bathroom.
- I don't know why but I went to the Men's room with him.
- I thought that if I gave him what he wanted he would leave me alone because he wouldn't take no for an answer.

(Dkt. 109 at 1.)  The Court recognizes that this police report was not produced until December 3, 2024, after the deadline November 25, 2024 deadline to amend the pleadings had passed.  (*See* Dkt. 72 at 4, Dkt. 151 at 2.)  Still, the timing of its production (eight months before Defendants filed their Motion to Amend) is relevant to Defendants' diligence in seeking relief from the scheduling order as to the proposed amendment.

that information only comes to light too late for the party seeking to amend its pleadings to comply with the deadline in a scheduling order." *Unity Healthcare, Inc. v. County of Hennepin*, No. CV 14-114 (JNE/JJK), 2015 WL 12977020, at *5 (D. Minn. Mar. 10, 2015), *aff'd,* No. 14-CV-114 JNE/JJK, 2015 WL 1585565 (D. Minn. Apr. 9, 2015). However, that is not the case here.  Defendants do not suggest that Plaintiff's deposition provided the basis for a new claim or affirmative defense.  Rather, Defendants frame their proposed amendments as "enhanc[ing] and clarify[ing]" their existing affirmative defense and assert that they do not need this amendment to assert a superseding cause defense. (Dkt. 138 at 4-5, 7.)  At the September 30, 2025 hearing, counsel for Defendants stated that "our purpose in amending this affirmative defense was to set forth the factual basis for the affirmative defense."  Defendants also conceded at the hearing that the statement in Defendants' proposed amendment that Plaintiff "was acting of her own free will" when she acquiesced to Bailey's request to go to the bathroom was "an editorialization" of Plaintiff's testimony.  Defendant cites no authority that good cause exists to amend a pleading for these reasons, when they do not seek to add a new defense and instead seek to "enhance," "clarify," and "editorializ[e]" an already-existing defense.

Further, as Plaintiff points out, Defendants' proposed amendment goes beyond the information Defendants purportedly learned during Plaintiff's deposition, including the language that Plaintiff "was not performing work duties when the alleged assault occurred" and "was not acting under the authority of a supervisor when the alleged assault occurred."  (*See* Dkt. 151 at 10-11 (citing Dkt. 138 at 5).)  At the hearing, the Court asked "[w]hat is the specific new information that underpins the not performing

work duties and not acting under the authority of a supervisor?" Counsel for Defendants conceded that Plaintiff was on the clock at that time, but stated, "I don't think it's disputed and was admitted in her deposition that she wasn't acting under the authority of the supervisor when she decided to go to the restroom which is how the amendment to the affirmative defense reads." Defendants did not provide any citation to the deposition transcript, and it is not clear to the Court what, if anything, Defendants are referring to other than the testimony regarding Bailey's coercion discussed above. It is also not clear to the Court what, if anything, led Defendants to believe anything different prior to Plaintiff's deposition, particularly given that it was not disputed that Plaintiff was not acting under the authority of a supervisor when she went to the restroom. Accordingly, the Court concludes that Defendants have failed to establish good cause for these amendments. Moreover, Defendants have not explained the approximately two-month delay between Plaintiff's deposition on May 29, 2025 and their decision to seek relief from the Court as to the proposed amendment. The Court therefore denies Defendants' Motion to Amend with respect to Defendants' Tenth Affirmative Defense.

### 2. Defendant's Sixteenth Affirmative Defense

Defendants seek to withdraw their Sixteenth Affirmative Defense, which originally stated:

> Plaintiff's claims are barred, in whole or in part, because at the time of the alleged events set forth in the Complaint, Defendants exercised reasonable care to prevent and promptly correct any alleged inappropriate behavior, including but not limited to, maintaining policies, practices, and procedures against the conduct alleged and Plaintiff unreasonably failed to avail herself of the remedial measures therein.

20

(Dkt. 39 at 5.) Defendants state that they wish to withdraw this defense because it is inapplicable to this case because Bailey was not a supervisor of Plaintiff. (Dkt. 138 at 2,7.) Plaintiff does not oppose this amendment. (Dkt. 151 at 11 n.2.) The Court concludes that good cause exists to allow this withdrawal. *See Forslund v. Stryker Corp.*, No. CIV. 09-2134 JRT/JJK, 2011 WL 1868181 at *2-3 (D. Minn. May 12, 2011) (contrasting cases where parties sought to *add* claims after the deadline set by the scheduling order with the present case, in which a party sought to withdraw a claim, and finding good cause for late withdrawal because it promoted the "just, speedy, and inexpensive determination" of the action). The Court also concludes that modifying the scheduling order to permit Defendants to withdraw this defense will not prejudice Plaintiff. *See id.* Accordingly, the Court grants Defendant's Motion to Amend with respect to Defendant's Sixteenth Affirmative Defense. To the extent the parties make arguments regarding the effect of this withdrawal on the scope of discovery (*see* Dkt. 151 at 11 n.2), the Court addresses that issue by separate Order.

## IV.    ORDER

For all these reasons, and based on the files, records, and proceedings herein, **IT IS ORDERED** that:

1.    Defendants' Motion for Leave to Take Deposition of Lionell Bailey (Dkt. 130) is **DENIED**; and

2.    Defendant's Motion for Leave to Amend Answer and Affirmative and Other Defenses to Plaintiff's Complaint (Dkt. 136) is **GRANTED** with respect to the withdrawal of Defendant's Sixteenth Affirmative Defense and otherwise **DENIED.**

Dated: March 18, 2026                    _s/Elizabeth Cowan Wright_____
                                         ELIZABETH COWAN WRIGHT
                                         United States Magistrate Judge